IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| BARBARA ELIZABETH LAWSON, *et al.*, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | CASE NO.: 4:06-CV-42 (WLS) |
| LIFE OF THE SOUTH INSURANCE COMPANY, | : : : | |
| Defendant. _____ | : : | |

## ORDER

Presently pending before the Court is Defendant's Motion to Compel Arbitration and to Dismiss This Civil Action. (Doc. 63). For the reasons articulated below, Defendant's Motion to Compel Arbitration and to Dismiss This Civil Action (Doc. 63) is **DENIED**.

## BACKGROUND

On December 30, 2002, Plaintiffs Barbara Elizabeth Lawson and Jerry Lawson purchased a 2000 Chevrolet Blazer from a car dealership in Morrow, Georgia. (Doc. 63-2 at 2). Two (2) written agreements relevant to the instant Motion were entered into during the course of this transaction.

First, Plaintiffs took out an installment loan with Chase Manhattan Bank to finance the vehicle purchase. (Doc. 63-2). The terms of the installment loan were provided in a retail installment sales contract ("RISC") that was signed by Plaintiffs. (Doc. 63-2 at 3). Notably, the RISC contained an arbitration agreement. (Doc. 63-2 at 5). Also of note, Defendant was not a signatory to the RISC. (*See generally* Doc. 63-2).

The second relevant agreement was an insurance certificate evidencing Plaintiffs' purchase of an optional credit life insurance policy from Defendant to cover the balance of the car loan in the event of Plaintiffs' death.  (Doc. 1-3 at 1 to 2).  The terms of the insurance certificate, which was signed by Plaintiffs, do not include an arbitration provision.  (*See generally* Doc. 1-3).  The one-time premium payment was included in the overall vehicle loan, as indicated in the RISC's "Itemization of the Amount Financed" clause and in the RISC's "Optional Credit Insurance" clause.  (Doc. 63-2 at 2 to 3).

Based on the terms of the insurance certificate, if the vehicle loan was paid off early, then Plaintiffs were eligible for a refund of any unearned premium on the credit life insurance policy. (Doc. 1-3 at 2).  Plaintiffs' Complaint alleges that Defendant failed to provide such a refund following Plaintiffs' voluntary prepayment of their car loan.  (Doc. 1-2 at ¶ 16).  In their Complaint, Plaintiffs refer to the "loan" or "indebtedness" underlying the optional credit insurance policy seven times in their Facts section and four times in their Class Representation Allegations section.  (*See* Doc. 1-2 at ¶¶ 11-15, 17, 22, 27(a), and 33).

## DISCUSSION

**I.   PARTIES' ARGUMENTS**

Defendant's Motion to Compel Arbitration and to Dismiss This Civil Action (Doc. 63) argues that Plaintiffs should be compelled, under the arbitration provision of the RISC, to arbitrate their claims against Defendant.[1]  Although Defendant concedes that it is not a signatory

---

[1] The RISC's arbitration provision provides:

> A "Dispute" means any controversy or claim (other than a claim relating to our right to repossess the vehicle by self help, if permitted, or by judicial process) arising from or relating to the Contract.  The term Dispute includes, but is not limited to, the negotiation or breach of this Contract, or any aspect of the sale of the vehicle involving any Buyer, Co-Buyer, Seller or assignee, agent, employee, surety bonding company or insurer of any of these persons.  The term Dispute also includes all tort, common law, constitutional, statutory and equitable claims arising from the transaction to which this Contract relates or arising from our enforcement of this Contract

2

to the RISC, Defendant argues that the theory of equitable estoppel should apply here because Plaintiffs' claims against Defendant "clearly 'make[] reference to' and 'presume[] the existence of'" the RISC. (Doc. 79 at 11) (quoting MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)) (alterations in original). For this reason, Defendant argues, Plaintiffs should be equitably estopped from preventing arbitration.

Plaintiffs argue that equitable estoppel does not apply here because Plaintiffs' claims do not rely upon the terms of the RISC. (Doc. 73 at 9-16). Plaintiffs also respond by arguing, time and again, that "Georgia law prohibits the arbitration of insurance disputes." (*E.g.*, Doc. 73 at 2). Plaintiffs base this argument upon O.C.G.A. § 9-9-2(c)(3), which provides that arbitration is not available in "[a]ny contract of insurance." (*E.g.*, Doc. 73 at 1). Plaintiffs therefore argue that Defendant is "attempt[ing] to circumvent Georgia law by doing indirectly what it cannot do directly." (Doc. 73 at 6). Defendant, time and again, observes that the RISC is not a "contract of insurance," and thus is not subject to the prohibition of O.C.G.A. § 9-9-2(c)(3). (*E.g.*, Doc. 79 at 6). Defendant also observes that O.C.G.A. § 9-9-2(c)(3) makes no reference to "insurance disputes," as Plaintiff claims. (*E.g.*, Doc. 85 at 6).

Furthermore, Plaintiffs argue that, under O.C.G.A. §§ 33-31-8 and 33-24-9, "The Insurance Commissioner must approve the form of all contracts between insureds and an insurer before they can be enforced." (Doc. 73 at 6). Plaintiffs argue that because the RISC was not approved by the Insurance Commissioner, it is not enforceable if Defendant seeks to advance under the arbitration provision of the RISC. (Doc. 73 at 7). Defendant counters that because the

---

and any question regarding whether a matter is subject to arbitration under this Contract to Arbitrate Disputes. … If any Dispute arises, either you or we may choose to have the Dispute resolved by binding arbitration under the rules then in effect of the National Arbitration Forum ("NAF"). … The election to arbitrate may be made even if an action has been filed in court, so long as no judgment has been rendered.

(Doc. 63-2 at 5).

3

RISC is not an insurance contract, the arbitration provision in the RISC need not have been approved by the Georgia Insurance Commissioner prior to Defendant's use of the arbitration provision. (Doc. 79 at 7-9).

## II.     COURT'S ANALYSIS

### A.     Warning to Parties Regarding Unsupported Legal Assertions

The Parties' briefings and subsequent oral hearing on the instant Motion led the Court to believe that close questions of Georgia state law had been raised. This prompted the Court to Order additional briefing from the Parties. (*See* Doc. 88). The Parties' respective responses (Docs. 91-93), however, did not provide clarification to the Court. But before certifying a question to the Georgia Supreme Court, the Court conducted its own independent research.

Troubling the Court was Plaintiffs' abject refusal to provide proper citation to certain legal assertions made in Plaintiffs' various briefs. For instance, Plaintiffs' repeated assertion that "Georgia law prohibits the arbitration of insurance disputes" (*e.g.*, Doc. 73 at 2) is generally unaccompanied by legal authority, and the rare citation is to a state statutory provision prohibiting arbitration in "[a]ny contract of insurance," *not* any insurance *dispute*. *See* O.C.G.A. § 9-9-2(c)(3). None of the main cases cited by Plaintiffs, particularly McKnight v. Chicago Title Insurance Co., stand for the proposition that Georgia law prohibits the arbitration of insurance *disputes*. Rather, in McKnight the Eleventh Circuit carefully limited itself to the statutory language in stating that "Georgia courts refuse to enforce arbitration provisions in insurance *contracts*" – not *disputes*. McKnight v. Chicago Title Ins. Co., 358 F.3d 854, 857 (11th Cir. 2004) (emphasis added); *see also* McGowan v. Progressive Preferred Ins. Co., 637 S.E.2d 27, 29 (Ga. 2006) (Georgia Supreme Court expressly stating that "[a]rbitration clauses … are impermissible in *contracts* between insurers and insureds" (emphasis added) – not insurance

4

*disputes*). A second example of Plaintiffs' failure to cite legal authority: in their supplemental brief submitted in compliance with the Court's Order for additional briefing, Plaintiffs state without any accompanying citation that "[a]n incorporated contractual term has the same meaning, force and effect as if the term were written directly into the main contract itself." (Doc. 91 at 2).

The Court expended its limited judicial resources determining whether Plaintiffs' unsupported legal assertions carried any truth based in existing law, because those assertions, if founded, seemed potentially dispositive to the questions presented. What the Court found in its independent research turned out to be quite beneficial to Plaintiffs. The Court, however, never should have undertaken such a time-consuming and potentially quixotic quest – Plaintiffs should have provided legal authority supporting *all* of their legal assertions *in the first instance*.[2] Because the instant Motion will be denied, thus preserving the above-captioned matter before this Court through another round of written briefings, the Court warns both Parties that future failures to provide proper legal citation may not be met with the same level of judicial attention as was effectively provided to Plaintiffs in this occurrence. While it is indeed the Court's duty to stay appraised of the current law, the Court is not obligated to scour the federal and state reporters finding precedent for a Party's unsupported legal assertions. Plaintiffs particularly are warned that rote repetition of an unsupported legal assertion does not magically make it become law. Defendant, too, is warned that relevant authority, whether availing or not, is not to be ignored.

---

[2] The Court is well aware that arguments for establishing new law are permitted under Federal Rule of Civil Procedure 11 and that such arguments may not necessarily have supporting case law. But Plaintiffs' briefs state that their unsupported legal assertions are established law in Georgia, thus implying that authority exists.

### B.    Intersecting Federal and State Statutes Regarding Arbitration

The federal and state statutory laws relevant to Defendant's Motion to Compel Arbitration (Doc. 63) involves the intersection of three statutes.  *See* McKnight v. Chicago Title Ins. Co., 358 F.3d 854, 856 (11th Cir. 2004).  First is the Federal Arbitration Act ("FAA"), which provides the general rule:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2; *see* McKnight at 856-57.  The United States Supreme Court describes the FAA as "a congressional declaration of a liberal federal policy favoring arbitration agreements."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  This strong policy in support of arbitration, however, stands only "notwithstanding any state substantive or procedural policies to the contrary."  *Id.*

Second, the State of Georgia's Arbitration Act limits the application of arbitration agreements in certain contexts.  Georgia's Arbitration Act states that it:

> [S]hall apply to all disputes in which the parties thereto have agreed in writing to arbitrate and shall provide the exclusive means by which agreements to arbitrate disputes can be enforced, *except the following, to which this part shall not apply*: ... (3) *Any contract of insurance*.

O.C.G.A. § 9-9-2(c) (emphasis added); *see* McKnight at 857.  This places the Georgia Arbitration Act in conflict with the FAA, at least in the context of contracts of insurance.  While the federal rule, expressed in the FAA, that arbitration provisions in contracts involving commerce will be enforced is generally preemptory of state law to the contrary, McKnight at 857

6

(citing Volt Info. Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)), exceptions do exist. Id.

One such exception is the rule found in the third relevant statute. The federal McCarran-Ferguson Act ("MFA") reverse-preempts the FAA by leaving the regulation of the insurance industry to the states:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ... unless such Act specifically relates to the business of insurance.

15 U.S.C. § 1012(b); see McKnight at 857. Because the FAA does not itself specifically relate to the business of insurance, "[i]f [a] state has an anti-arbitration law enacted for the purpose of regulating the business of insurance, and if enforcing, pursuant to the Federal Arbitration Act, an arbitration clause would invalidate, impair, or supersede that state law, a court should refuse to enforce the arbitration clause." McKnight at 857. The Eleventh Circuit has concluded that O.C.G.A. § 9-9-2(c)(3) "is a law enacted to regulate the business of insurance, within the meaning of the McCarran-Ferguson Act," and is thus "excepted from preemption by the Federal Arbitration Act." Id. at 859. The Georgia Supreme Court is also in accord. Love v. Money Tree, Inc., 614 S.E.2d 47, 49-50 (Ga. 2005) ("[W]e conclude that the MFA prohibits the FAA from preempting OCGA § 9-9-2(c)(3).").

**C.   Georgia Prohibition Against Arbitration of Insurance Disputes**

In Love v. Money Tree, Inc., the Georgia Supreme Court faced facts similar to those here. The Love plaintiffs took out a loan from a lender, the defendant. Love v. Money Tree, Inc., 614 S.E.2d 47, 48 (Ga. 2005).[3] The loan documents contained an arbitration clause. Id. Concurrent with signing the loan agreement, the plaintiffs purchased automobile insurance

---

[3]   See also the facts section of the underlying Georgia Court of Appeals decision at Love v. Money Tree, Inc., 598 S.E.2d 846, 847 (Ga. App. 2004).

7

through the lender by signing a separate "Voluntary Insurance Election Form," which did not contain an arbitration clause. *Id.* The insurance purchase was financed by the lender, with the cost being included in the loan documents. *Id.* After the plaintiffs defaulted on their loan, the lender attempted to compel arbitration. *Id.*

After analyzing the intersection of the FAA, MFA, and O.C.G.A. § 9-9-2(c)(3), the Georgia Supreme Court ruled that arbitration was not available to the parties. Love at 49-50. Interestingly, in interpreting O.C.G.A. § 9-9-2(c)(3) the Georgia Supreme Court did not limit itself to a strict construction of the statutory phrase "[a]ny contract of insurance." Rather, the Georgia Supreme Court used the term oft-repeated here by Plaintiffs: *insurance dispute*. The Georgia Supreme Court described O.C.G.A. § 9-9-2(c)(3) as "a State law that prohibits the arbitration of *disputes involving insurance*," and stated that it is the province of the courts to decide "the issue whether Georgia law forbids the arbitration of an *insurance dispute*." Love at 50 (emphasis added). In the opinion's introductory paragraph, the Georgia Supreme Court stated that it would address whether the MFA "prohibits the enforcement of a clause in the parties' loan agreement that requires any *disputes* to be resolved by arbitration," and in the final paragraph the Georgia Supreme Court held "that the MFA precludes the FAA from requiring the arbitration of *disputes involving insurance*." *Id.* at 48, 50 (emphasis added).

Given the posture of the Georgia Supreme Court in Love v. Money Tree, Inc., it is abundantly clear to this Court that Georgia law prohibits the arbitration of insurance disputes. *See* Love v. Money Tree, Inc., 614 S.E.2d 47, 48-50 (Ga. 2005). Because the instant Motion to Compel Arbitration (Doc. 63) is in regard to a dispute over the terms of an insurance certificate signed in Georgia, and because the Motion is brought in Georgia by an insurer attempting to compel arbitration against its insured, the Court finds that this is an insurance dispute governed

by Georgia law. Because the Georgia Supreme Court has stated that Georgia law prohibits the arbitration of disputes involving insurance, Defendant's Motion to Compel Arbitration (Doc. 63) is **DENIED**.

### D.     Construction of Contemporaneous Contracts

Additionally, in Love the Georgia Supreme Court faced a factual scenario where an arbitration clause was contained in the loan documents but no arbitration clause was found in the contemporaneously signed insurance agreement. Love v. Money Tree, Inc., 614 S.E.2d 47, 48 (Ga. 2005). While the insurance payment was only a portion of the overall loan, the Georgia Supreme Court construed the loan document as an insurance contract subject to O.C.G.A. § 9-9-2(c)(3). *Id.* ("[A] clause in the parties' loan agreement that requires any disputes to be resolved by arbitration" is unenforceable under the MFA "[b]ecause the application of the FAA would impair a statute of this State regulating the business of insurance"). The Georgia Supreme Court, however, did not overtly explain the application of law that caused the loan document to become an insurance contract. *See generally id.* at 48-50.

This Court presumes that the Georgia Supreme Court applied its long-held legal principle that "[w]here instruments are executed at the same time in the course of the same transaction, they should be read and construed together." Hardin v. Great N. Nekoosa Corp., 229 S.E.2d 371, 374 (Ga. 1976) (citing Dyal v. Foy & Shemwell, Inc., 126 S.E. 783 (Ga. 1925)). Application of this legal principle rendered the Love loan documents as one and the same with the insurance agreement, allowing for application of O.C.G.A. § 9-9-2(c)(3) to the arbitration provision in the loan documents. The same construction also applies here, where the RISC and insurance certificate were signed on the same day as part of the same transaction. (Doc. 63-2 at 3 (signature on RISC dated "12-30-02"); Doc. 1-3 at 1 (effective date of signed insurance

9

certificate printed "12/30/02")).  Under Georgia law, therefore, the RISC is construed as a contract of insurance, leaving it subject to O.C.G.A. § 9-9-2(c)(3)'s prohibition against arbitration and the MFA's preemption of the FAA.  Thus, Defendant's Motion to Compel Arbitration (Doc. 63) is **DENIED**.

### E.  Prohibition Against Doing Indirectly That Which a Party Cannot Do Directly

Finally, Defendant is an insurance company attempting to compel arbitration with its insured regarding a term in its insurance certificate.  (*See* Doc. 63).  The arbitration clause is not contained in the insurance certificate.  (*See* Doc. 1-3).  Rather, Defendant is attempting to utilize the arbitration clause in the RISC, to which Defendant is not a signatory.  (*See* Doc. 63-2; Doc. 64).

Defendant is certainly correct that "'there are certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration.'"  MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999) (quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993)); *see also* Autonation Fin. Servs. Corp. v. Arain, 592 S.E.2d 96, 99-102 (Ga. App. 2003) (discussing and applying MS Dealer to find party equitably estopped from preventing arbitration).  Plaintiff, however, is also correct in asserting that the law prevents Defendant from compelling arbitration of the instant dispute.  Both the United States Supreme Court and the Georgia Supreme Court have ascribed to "the maxim[] that what cannot be done directly cannot be done indirectly."  Cummings v. Missouri, 71 U.S. 277, 288 (1866) ("*Quando aliquid prohibetur et omne, per quod devenitur ad illud.*"); *see* Ford Motor Co. v. Abercrombie, 207 Ga. 464, 473 (Ga. 1951) ("There is a maxim of law[,] … *[q]uando aliquid prohibetur ex directo, prohibitur et per obliquum* … which means[] that when anything is prohibited directly it is also prohibited indirectly" (citation omitted).).

Georgia's statutory law does not permit Defendant to compel arbitration directly through an arbitration clause in its insurance contracts.  *See* O.C.G.A. § 9-9-2(c)(3).  It would violate the legal maxim to permit Defendant to compel arbitration indirectly through the RISC's arbitration clause.  Therefore, Defendant's Motion to Compel Arbitration (Doc. 63) is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and to Dismiss This Civil Action (Doc. 63) is **DENIED**.  Accordingly, Plaintiffs' action shall proceed.

**SO ORDERED**, this  31st   day of March, 2010.

/s/ W. Louis Sands_____
**THE HONORABLE W. LOUIS SANDS,
UNITED STATES DISTRICT COURT**