IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| BARBARA ELIZABETH LAWSON<br>and JERRY LAWSON,<br>Individually and on behalf of a class<br>of all persons similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>LIFE OF THE SOUTH INSURANCE<br>COMPANY, a corporation,<br><br>     Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.  4:06-cv-00042 |

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE OR DISMISS PLAINTIFF'S CLASS ACTION ALLEGATIONS OR, IN THE ALTERNATIVE, TO DENY CLASS CERTIFICATION

Jerry A. Buchanan
Benjamin A. Land
BUCHANAN & LAND, LLP
P. O. Box 2848
Columbus, Georgia 31902
Phone:  706-323-2848

Lee E. Bains, Jr.
Jeffrey M. Grantham
Lorrie L. Hargrove
C. Andrew Kitchen
Thomas J. Butler
MAYNARD, COOPER & GALE, P.C.
2400 Regions/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618
Phone:  205-254-1000
Fax:  205-254-1999

ATTORNEYS FOR DEFENDANT, LIFE OF THE SOUTH INSURANCE COMPANY

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

I. A MOTION TO STRIKE OR DISMISS PLAINTIFF'S CLASS ACTION
ALLEGATIONS IS AN APPROPRIATE PROCEDURAL VEHICLE
FOR ADDRESSING THE CLASS ACTION ISSUES........................................... 2

II. THE MIDDLE DISTRICT OF GEORGIA HAS ALREADY DENIED
CLASS CERTIFICATION IN TWO VIRTUALLY IDENTICAL CASES. .......... 4

A. Plaintiff alleges the same purported class as was alleged in *Bishop*
and *Adams*, and the complaints are virtually identical. .............................. 5

B. The *Bishop* and *Adams* Decisions ............................................................. 5

C. LOTS's Insurance Certificates Have Significant Variations. ..................... 7

1. Some Contracts Have Notice Provisions; Those Provisions
Vary ...................................................................................................... 7

2. The Contracts Vary As To *Who* is Obligated to Make the
Refund .................................................................................................. 8

3. The Contracts Vary as *To Whom* the Refund Will Be Given ......... 9

4. Some Contracts Require the Refund be Made "Promptly"
or Give A Number of Days for the Refund to be Made................. 9

5. The Contracts Vary as to the Formula for Calculating
Refunds ............................................................................................... 10

6. The Contracts Vary as to the Minimum Refund Amount............. 10

D. Just as in *Bishop* and *Adams*, Variations in the Contracts Support
the Dismissal of Plaintiff's Class Action Allegations in this Case........... 10

E. Just as in *Bishop* and *Adams*, Variations in State Law Also Support
the Dismissal of Plaintiff's Class Action Allegations in this Case........... 11

III. IN THE ALTERNATIVE TO THE MOTION TO STRIKE, A MOTION
TO DENY CLASS CERTIFICATION IS AN APPROPRIATE
PROCEDURAL VEHICLE FOR DETERMINING WHETHER A CIVIL
ACTION MAY BE MAINTAINED AS A CLASS ACTION. ............................. 12

IV. THERE ARE ADDITIONAL REASONS THAT CLASS
CERTIFICATION SHOULD BE DENIED....................................................... 14

i

A.     Applicable Substantive Law ...................................................... 15

B.     Individualized Inquiries .......................................................... 16

C.     Recent Controlling Decisions Rejecting Class Certification ................... 18

CONCLUSION ............................................................................................... 20

02342969.10

Defendant Life of the South Insurance Company ("Defendant" or "LOTS"), respectfully submits this brief in support of Defendant's Motion to Strike or Dismiss Plaintiff's Class Action Allegations ("Motion to Strike") or, in the Alternative to Deny Class Certification ("Motion to Deny Class Certification").

## INTRODUCTION

Class certification should be denied in this case based on two Middle District of Georgia decisions denying class certification in virtually identical cases seeking refunds of unearned insurance premiums. Bishop's *Prop. & Invs., LLC v. Protective Life Ins. Co.*, 255 F.R.D. 619 (M.D. Ga. 2009) ("*Bishop*"); *Adams v. Monumental Gen. Cas. Co.*, 2009 WL 383625 (M.D. Ga. 2009) ("*Adams*"). The complaints in *Bishop, Adams*, and this civil action are substantively identical. Plaintiffs' counsel in *Bishop* and *Adams* are Plaintiff's counsel in this case. Apparently recognizing the logic of the Court's opinions, Plaintiffs' counsel did not appeal the district court's denial of class certification in *Bishop* and *Adams*.

This Brief establishes four points. First, a motion to strike or dismiss Plaintiff's class action allegations is an appropriate procedural vehicle for addressing the class action issues. Second, Plaintiff's class action allegations should be stricken based on this Court's *Bishop* and *Adams* decisions in substantively identical cases. Third, in the alternative to the Motion to Strike, a motion to deny class certification is an appropriate procedural vehicle for determining whether a civil action may be maintained as a class action. Fourth, there are additional reasons that class certification should be denied beyond those reasons discussed in the *Bishop* and *Adams* decisions, including recent controlling decisions reversing district courts that had certified class actions. *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159 (11th Cir. 2010) ("*Sacred Heart*"); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ("*Vega*"); *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541 (2011).

1

**ARGUMENT**

I.    **A MOTION TO STRIKE OR DISMISS PLAINTIFF'S CLASS ACTION ALLEGATIONS IS AN APPROPRIATE PROCEDURAL VEHICLE FOR ADDRESSING THE CLASS ACTION ISSUES.**

Rule 23(d)(1)(D), Fed. R. Civ. P., provides that, "[i]n conducting an action under this rule, the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Rule 23(c)(1)(A), Fed. R. Civ. P., provides that, "[a]t an early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action."

This Court has granted a defendant's motion to strike plaintiffs' class action allegations. *Lumpkin v. E.I. DuPont De Nemours & Co.*, 161 F.R.D. 480 (M.D. Ga. 1995) ("*Lumpkin*").[1]  In the procedural context of defendant's motion to strike, this Court recognized that the "'plaintiff bears the burden of advancing a prima facie showing that the class action requirements of [Rule 23] are satisfied or that discovery is likely to produce substantiation of the class allegations.'" *Id.* at 481 (citation omitted).[2]  This Court also explained that the United States Supreme Court had ruled that, "'[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'"  *Id.* (quoting *Gen. Tele. Co. of Sw. v. Falcon*, 457

---

[1] In *Lumpkin*, defendant filed its motion "prior to responding to the discovery served on it by Plaintiffs." 161 F.R.D. at 481. The defendant urged the court to deny class certification "based solely on Plaintiffs' pleadings and discovery responses and prior to providing any discovery responses itself." *Id.*

[2] The Eleventh Circuit has repeatedly held that "a plaintiff still bears the burden of establishing every element of Rule 23." *Vega*, 564 F.3d at 1267; *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008); *Valley Drug Co. v. Geneva Pharma., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003); *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997); *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002), *cert. denied*, 537 U.S. 884 (2002), abrogated on different grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) ("*Sikes*"); *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. Unit A July 27,1981).

U.S. 147, 160 (1982)).  In granting defendant's motion to strike class action allegations, this Court ruled that, "awaiting further discovery will only cause needless delay and expense.  The record fails to show any basis for further pursuit of a class action."  *Id.*

The Eleventh Circuit recently reversed a district court's certification of a class action alleging breach of contract and unjust enrichment, concluded that "the complaint, as pled, cannot sustain class action certification as a matter of law", and remanded the case "with the instruction that the plaintiff's claims proceed individually."  *Vega*, 564 F.3d at 1260.  The Eleventh Circuit also explained that, "Rule 23 demands an early consideration of class certification, including its practical implications for case manageability".  *Id.* at 1279 (citing Fed. R. Civ. P. 23(c)(1)(A)).

The Sixth Circuit recently affirmed a district court order granting defendant's motion to strike plaintiff's class action allegations.  *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011).  The Sixth Circuit ruled that the district court's order granting defendant's motion to strike was not "premature" in light of Rule 23(c)(1)(A) because "'[e]ither plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1).'"  *Id.* at 949 (citations omitted).  The Sixth Circuit also explained that, "we cannot see how discovery or for that  matter more time would have helped [plaintiffs]" because of the "central defect in this class claim. . .  [Plaintiffs'] claims are governed by different States' laws . . . and no proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification."  *Id.*  Of course, that same "central defect" exists here.

District courts within the Eleventh Circuit and around the country have routinely granted defendants' motions to strike plaintiffs' class action allegations and rejected plaintiffs' arguments that they should be permitted to conduct additional discovery.  *See, e.g., Dennis v.*

*Whirlpool Corp.*, No. 06-80784, D.E. 38 at 4-5 (S.D. Fla. March 13, 2007) ("*Dennis*") (granting

defendant's motion to dismiss or strike plaintiff's class allegations, explaining that a "court may

strike class allegations as soon as 'practicable'" under Rule 23(c)(1)(A), and quoting this Court's

*Lumpkin* decision for the proposition that "'awaiting further discovery will only cause needless

delay and expense'").[3]

Based on this case authority, Defendant's Motion to Strike is an appropriate procedural

vehicle for addressing the class action issues in this case.

## II.   THE MIDDLE DISTRICT OF GEORGIA HAS ALREADY DENIED CLASS CERTIFICATION IN TWO VIRTUALLY IDENTICAL CASES.

The identical class certification issues in this case have already been decided twice by the

Middle District of Georgia and no amount of discovery will change that dispositive point.   In

both *Bishop* and *Adams*, this Court reviewed virtually identical motions for class certification in

virtually identical class actions seeking refunds of unearned insurance premiums, filed by the

same Plaintiffs' counsel as is in this case, and denied class certification in both cases.  This Court

---

[3] The *Dennis* opinion is attached to Defendant's Submission in Support of Its Motion to Strike or Dismiss Plaintiff's Class Action Allegations or, in the Alternative, to Deny Class Certification ("Submission") as Exhibit 1.  *See also Markey v. La. Citizens Fair Plan*, No. 06-5473, 2008 WL 5427708, at *1, 2, 5 (E.D. La. Dec. 30, 2008) (granting defendant's motion to strike plaintiff's class allegations, explaining that "courts have routinely applied Rule 23(d)(1)(D), or its predecessor Rule 23(d)(4), to motions to strike class allegations", and ruling that plaintiffs "have not shown how additional discovery would alleviate the need to undertake a case-by-case inquiry" as to each member of the purported class); *Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-cv-00018, 2006 WL 3359482, at *1, 4-5 (N.D. Ohio Nov. 17, 2006) (granting defendant's motion to strike plaintiff's class allegations and rejecting plaintiff's position that "she should have more time to conduct discovery on issues related to class certification."); *Bennett v. Nucor Corp.*, No. 3:04CV00291SWW, 2005 WL 1773948, at *2, n.1 (E.D. Ark. July 6, 2005) (granting defendant's motion to strike plaintiff's class allegations, ruling that "[a] motion to strike class allegations is governed by Rule 23, not Rule 12(f)," and finding that "further discovery regarding the class certification issue would be futile."); *Hovsepian v. Apple, Inc.*, No. 08-5788-JF (PVT), 2009 WL 5069144, at *2, 6  (N.D. Cal. Dec. 17, 2009) ("[u]nder Rules 23(c)(1)(A) and 23(d)(1)(D) . . . this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained."); *In re Yasmin and Yaz (Drospirenone) Mktg.*, 275 F.R.D. 270, 274 (S.D. Ill. 2011) (granting defendant's motion to strike or dismiss plaintiff's class allegations, rejecting plaintiff's argument that defendant's motion was "premature", and explaining that "no amount of time or discovery can cure the[] deficiencies" in plaintiff's class allegations); *Aguilar v. Allstate Fire and Cas. Ins. Co.*, No. 06-4660, 2007 WL 734809, at *3 (E.D. La. March 6, 2007); *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2012 WL 641946, at *7 (S.D. Ohio Feb. 28, 2012); *Williams v. Chesapeake La., Inc.*, No. 10-1906, 2011 WL 1868750, at *1, 3-4 (W.D. La. May 13, 2011).

need not waste judicial resources and time on class certification issues that have already twice been decided, and should strike Plaintiff's Class Action Allegations.

> **A.      Plaintiff alleges the same purported class as was alleged in *Bishop* and *Adams*, and the complaints are virtually identical.**

The three complaints in this case, *Bishop,* and *Adams* are filed by the same Plaintiffs' counsel, and are cut and pasted from the same form complaint, with virtually identical classes, claims, and theories.[4]  Given the almost word-for-word identical nature of the complaints in the three cases, this Court should follow the sound reasoning of the Middle District of Georgia, discussed below, and strike Plaintiff's Class Action Allegations in this case.

> **B.      The *Bishop* and *Adams* Decisions**

In both *Bishop* and *Adams*, as in this case, Plaintiffs who had obtained single-premium insurance through a defendant insurance company brought a purported class action to recover refunds of unearned premiums after early loan payoff.

In *Bishop,* this Court described the case as having a fundamental issue:  "whether a class can be certified consisting of persons who have never requested a refund."  *Bishop,* 255 F.R.D. at 621.  The answer was a resounding "no,"  with the Court concluding:  "when an insured has not requested a refund and Defendant is not aware that one is owed, each insured's entitlement to a refund will depend upon the individual circumstances of the insured's case," thus making individual issues predominate over common ones and precluding class certification.  *Id.* at 621-22.  The Court further recognized the fundamental problem with certifying such a class when the event that triggers the need for a refund – the early payoff – "is not something that is within Defendant's control."  *Id.* at 623.

---

[4] Complaints in this case, *Bishop* and *Adams* are attached to the Submission as Exhibits 2, 3, and 4.  A chart comparing the identical language of the three complaints is attached to the Submission as Exhibit 5.

The Court concluded that class treatment was inappropriate because the "**insurance contracts are not uniform as to what triggers the duty to make the refund**," with some contracts requiring the insured to notify the insurer that the loan had been paid off early and others not requiring that notice, and that the contracts without notice provisions gave rise to the question of whether an implied duty exists to make the refunds and the extent of that implied duty. *Id.* at 624 (emphasis added). The Court further concluded that individual state law of the fifty states in that nationwide class action would need to be reviewed to determine whether any such implied duty existed. *Id.* at 625. The Court further stated that the issue of when a duty to refund arises would possibly not be an obstacle to certification "if the individual insurance contracts and/or each applicable state's law" "answered [that] question[] in a uniform manner, **but they do not**." *Id.* (emphasis added). Thus, variations in the contracts and the applicable state law ultimately defeated class certification.

Three days after denying class certification in *Bishop*, the Middle District of Georgia denied class certification in *Adams,* concluding that "the reasoning it employed in *Bishop* applies with equal force [in *Adams*], that individual issues predominate over common issues, and that class certification is therefore not appropriate [in *Adams*] under either Rule 23(b)(2) or Rule 23(b)(3)." *Adams,* 2009 WL 383625, at *4.

Given the identical nature of the class sought, the theories pursued, and the claims made in this case and in *Bishop* and *Adams,* the variation in LOTS's contracts and in the applicable state laws, *see* pp. 7-11, 12, 15-16, *infra,* this Court should reach the same conclusion as reached in *Bishop* and *Adams* – class certification simply is not appropriate in this case -- and strike Plaintiff's Class Action Allegations.

**C.      LOTS's Insurance Certificates Have Significant Variations.**

This is not a "single form" contract case.  LOTS's insurance certificates, like those in *Bishop* and *Adams,* vary between states, within states, and over time.

**1.      Some Contracts Have Notice Provisions; Those Provisions Vary**

LOTS's contracts, like the contracts of Protective and Monumental Life, vary as to whether or not they have notice provisions and as to what those notice provisions say.

Some of the contracts have express provisions in bold requiring the *insured's* notice to LOTS as a condition to triggering LOTS's refund obligation:

> **To receive a refund or credit of any unearned premium that may be due because of the early payoff of your loan, you must give us written notice. Notice must be mailed to us at 100 West Bay Street, Jacksonville, FL 32202, or to the agent that sold you this insurance.**[5]

Some of the contracts with that notice provision have different language and also contain the following additional language:     "**We have the right to require proof of the date of termination of the loan.**"[6]  Some states have contracts with this same notice provision, but *not* in bold.[7]

Some contracts have a different notice provision:

> If you repay your debt before the scheduled termination of your loan, or if the loan terminates early for any reason, you must contact us to obtain a refund of unearned premiums on your Certificate.  **You will not receive a refund of unearned premiums if you fail to contact us.**[8]

Some of the contracts include a notice provision in bold on the first page of the insurance certificate, directly below the "Schedule of Insurance" box, placing the burden of notifying LOTS of an early loan payoff on the Insured:

---

[5] *See e.g.,* Submission, Exhibit 6 at 01362.

[6] *See e.g.,* Submission, Exhibits 7 at 01635; 8 at 01337; 9 at 01367.

[7] *See e.g.,* Submission, Exhibit 11 at 01329.

[8] *See e.g.,* Submission, Exhibit 12 at 01708 (emphasis added).

7

**NOTICE: . . . IT IS THE OBLIGATION OF THE INSURED TO NOTIFY THE INSURER OF ANY EARLY PAYOFF OF THE INDEBTEDNESS WHICH IS COVERED BY THIS INSURANCE.**[9]

Some insurance certificates, however, even from the same states, do not have this disclosure.[10] Some of them have this disclosure, but in addition to being capitalized, it is also underlined.[11] Some, in addition to making this disclosure, further state: "IN THE EVENT OF EARLY PAYOFF, REFER TO WHEN INSURANCE STOPS-REFUNDS ON PAGE 4 OF 4," which refers to yet another notice disclosure.[12] Some insurance certificates, even from the same states, do not have either of the disclosures.[13]

Some contracts place the burden of providing notice to LOTS of an early termination of the insurance (due to early payoff or otherwise) on the *creditor*.[14]

Some of LOTS's insurance certificates simply state the following language regarding a refund, without containing any of the afore-mentioned "notice" provisions:

> If your insurance stops before the end of the term of coverage shown in the Schedule, you will be given a refund or credit to your account of the unearned premiums.[15]

### 2.      The Contracts Vary As To *Who* is Obligated to Make the Refund

The contracts also vary as to who is contractually obligated to make the refund. Some say LOTS.[16] Some say the Creditor.[17] Some say that LOTS will make the refund to the

---

[9] *See e.g.,* Submission, Exhibits 13 at 01448; 14 at 01503; 15 at 01263.

[10] *See e.g.,* Submission, Exhibits 16 at 01452; 17 at 01530.

[11] *See e.g.,* Submission, Exhibit 18 at 01582; *but see* Submission, Exhibit 19 at 01608 (certificate with no disclosure from the same state).

[12] *See e.g.,* Submission, Exhibits 20 at 01359 and 01362; 21 at 01326 and 01329; 22 at 01418 and 01421; 23 at 01612 and 01615.

[13] *See e.g.,* Submission, Exhibit 24 at 01605.

[14] *See e.g.,* Submission, Exhibits 25 at 01384; 26 at 01541.

[15] *See e.g.,* Submission, Exhibits 27 at 01333; 28 at 01309; 29 at 01388.

[16] *See e.g.,* Submission, Exhibits 30 at 01284; 31 at 01615.

[17] *See e.g.,* Submission, Exhibits 32 at 01288; 33 at 01262; 34 at 01265.

Creditor, but then the Creditor must make the refund to the debtor/insured.[18]   Some contracts say that LOTS will make the refund to the Creditor, but then the Creditor must make the refund to the debtor/insured "within 10 days" of the Creditor receiving the refund from LOTS.[19]   Some contracts suggest that either LOTS or the Creditor will make the refund.[20]

### 3.   The Contracts Vary as *To Whom* the Refund Will Be Given

Some contracts specifically state that the refund will not go to the debtor, but rather to the creditor.[21]   Others state the refund will go either to the debtor or the creditor to credit the debtor's account.[22]   Still others state the refund will go to the debtor.[23]

### 4.   Some Contracts Require the Refund be Made "Promptly" or Give A Number of Days for the Refund to be Made.

Some contracts state that the refund shall be made "promptly."[24]   Others do not.[25]   Different states will interpret the word "promptly" in different ways, particularly given the differing factual scenarios that could arise thereunder.[26]   Some contracts require the refund to be made within 30 days after notice is given of the early payoff.[27]

---

[18] *See e.g.,* Submission, Exhibits 35 at 10716; 36 at 01934.

[19] *See e.g.,* Submission, Exhibits 37 at 01494; 38 at 02250.

[20] *See e.g.,* Submission, Exhibit 39 at 01421 ("If your insurance stops . . . you will be given a refund or credit to your account of the unearned premiums.").

[21] *See e.g.,* Submission, Exhibit 40.

[22] *See e.g.,* Submission, Exhibits 41 at 01597; 42 at 01581.

[23] *See e.g.,* Submission, Exhibits 31 at 01615; 43 at 01265.

[24] *See e.g.,* Submission, Exhibits 31 at 01615; 25 at 01384; 44 at 01270.

[25] *See e.g.,* Submission, Exhibits 6 at 01362; 45 at 01301.

[26] The Middle District of Georgia has specifically stated, in dismissing an unearned premium purported class action, that usage of the word "promptly" in contracts creates many problems for class certification.  *See Holaway v. Protective Life Ins. Co.,* 2007 WL 2904162, at *1 (M.D. Ga. Oct. 3, 2007).

[27] *See e.g.,* Submission, Exhibit 31 at 01615.

### 5.  The Contracts Vary as to the Formula for Calculating Refunds

Frequently, each state's credit insurance statutes mandate certain formulas to be used for unearned premiums.[28]  The statutory-based formula for the refund varies by state, causing the contracts to vary widely as to these formulas.

### 6.  The Contracts Vary as to the Minimum Refund Amount

Each state's credit insurance statutes typically establish a minimum refund amount so that if the calculated unearned premium is less than the specified amount, no refund is due to the insured.  Some LOTS' contracts says that refunds under $10 will not be made;[29] for others that minimum is $5;[30] still others $3;[31] still others $2,[32] and still others $1. [33]

In sum, LOTS's insurance contracts vary not only as to whether a notice provision is included and as to what that notice provisions says, but also as to who is obligated to make the refund, to whom it will be paid, how the refund will be calculated; whether a refund below a certain amount will be made; and whether it needs to be paid "promptly."   All of these differences defeat class certification.

### D.  Just as in *Bishop* and *Adams*, Variations in the Contracts Support the Dismissal of Plaintiff's Class Action Allegations in this Case.

Just as in *Bishop* and *Adams,* LOTS's "insurance contracts are not uniform as to what triggers the duty to make the refund.  Some contracts require the insured to notify Defendant that the insured has paid off the underlying loan early, thus terminating the insurance."  *Bishop,* 255 F.R.D. at 624.  Plaintiff seeks to imply such a duty for the class members with contracts not

---

[28] *See* Submission, Exhibit 71.

[29] *See e.g.,* Submission, Exhibits 6 at 01362; 46 at 01498; *see generally* Submission, Exhibit 72.

[30] *See e.g.,* Submission, Exhibits 47 at 01464; 27 at 01333.

[31] *See e.g.,* Submission, Exhibits 48 at 01451; 49 at 01502.

[32] *See e.g.,* Submission, Exhibits 50 at 01325; 51 at 01421.

[33] *See e.g.,* Submission, Exhibits 52 at 01597; 53 at 01902.

10

containing notice provisions, but "implied duties must be substantially similar and uniformly ascertainable. They are not." *Id.* at 625. Plaintiff, as in *Bishop* and *Adams*, "would have this Court imply a duty on Defendant to discover when the insured paid off his loan to a third party early, and yet impose no duty upon the insured who, having paid off the loan early, is in the best position to inform [LOTS] that his loan has terminated and thus he is entitled to a refund." *Id.* at 626. The examination of such a duty requires an "individualized case by case analysis, one that quite simply is not amenable to a uniform or formulaic application." *Id.* "[W]hen an insured has not requested a refund and [LOTS] is not aware that one is owed, each insured's entitlement to a refund will depend upon the individual circumstances of the insured's case. Therefore, individual issues will predominate over common ones, making class certification inappropriate." *Id.* at 621-22.

   **E.   Just as in *Bishop* and *Adams*, Variations in State Law Also Support the Dismissal of Plaintiff's Class Action Allegations in this Case.**

   Perhaps the insurance contracts in this case (and in *Bishop* and *Adams*) are so varied because the laws that govern them are so varied. "In determining whether common legal issues predominate over individual ones, the Court must analyze whether the laws of different states apply, and if they do, whether that law is uniform." *Bishop,* 255 F.R.D. at 624. It is a *plaintiff's* burden to show uniformity among the laws of 50 states sufficient to allow class certification. *Id.*[34]

---

[34] The Eleventh Circuit recently emphasized that it is not only the plaintiff's burden to show uniformity in state laws, but that "in cases implicating the law of all fifty states, '[t]he party seeking certification . . . must . . . provide an *extensive analysis* of state law variations to reveal whether these pose insuperable obstacles.'" *Sacred Heart*, 601 F.3d at 1180 (citations omitted); *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004) ("[t]he burden of showing uniformity or the existence of only a small number of applicable standards (that is, 'groupability') among the laws of the fifty states rests squarely with the plaintiffs. . . . [A] plaintiff must prove through 'extensive analysis' that there are no material variations among the laws of the states for which certification is sought.") (citation omitted).

Every State except Arizona requires insurance policies be construed as if relevant statutes are included in their terms.[35]   The state statutes governing credit insurance vary widely in how they treat notice provisions, who they require to make the refund, formulas for calculating refunds, and minimum refund amounts, among other differences.   *See* pp. 15-16, *infra*.   Such wide variation dooms Plaintiff's proposed class.   *See Bishop*, 255 F.R.D. at 624 ("[C]lass certification is impossible where the fifty states truly establish a large number of different legal standards governing a particular claim." quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004) ("*Klay*")).

### III.   IN THE ALTERNATIVE TO THE MOTION TO STRIKE, A MOTION TO DENY CLASS CERTIFICATION IS AN APPROPRIATE PROCEDURAL VEHICLE FOR DETERMINING WHETHER A CIVIL ACTION MAY BE MAINTAINED AS A CLASS ACTION.

Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure provides that, "[a]t an early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action."

The Former Fifth Circuit has explained that, "[e]ither the plaintiff or the defendant may move for a determination pursuant to Rule 23(c)(1)."   *Gore v. Turner*, 563 F.2d 159, 165 (1977) (citing *United States v. U.S. Steel Corp.*, 520 F.2d 1043, 1052 (5th Cir. 1975)).[36]   Other Circuit Courts have affirmed district court orders granting defendants' motions to deny class certification.   The Seventh Circuit has explained that, "[o]ne opposing a class action may move for an order determining that the action may not be maintained as a class suit."   *Cook County*

---

[35] *See* Submission, Exhibit 68.

[36] Former Fifth Circuit decisions rendered before October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).   *See generally Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) (recognizing that in some instances "the propriety *vel non* of class certification can be gleaned from the face of the pleadings" and that in other instances the district court should "permit some discovery and/or an evidentiary hearing to determine whether a class may be certified."); *see also Vega*, 564 F.3d at 1260 ("the proposed class, as pled, is not amenable to Rule 23 certification").

*Coll. Teachers Union v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972) ("*Cook County*") (affirming district court's order granting defendant's motion to dismiss the purported class action), *cert. denied*, 409 U.S. 848 (1972).  Similarly, the Ninth Circuit recently affirmed the district court's order granting defendant's motion to deny class certification "prior to the pretrial motion deadline and discovery cutoff."  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 937 (9th Cir. 2009).  The Ninth Circuit explained that "federal courts have repeatedly considered defendants' motions to deny class certification" and concluded that, "Rule 23 does not preclude a defendant from bringing a 'preemptive' motion to deny certification."  *Id*. at 939-40.[37]

District courts within the Eleventh Circuit have considered and granted defendant's motions to deny class certification.  *Saunders v. Bell South Adver. & Publ'g Corp*, 1998 WL 1051961, at *1, n.1 (S.D. Fla. Nov. 10, 1998) ("*Saunders*") (granting defendant's motion to dismiss class action and rejecting plaintiff's argument that defendant's motion was "procedurally improper").[38]  "[D]istrict courts throughout the nation have considered defendants' 'preemptive' motions to deny [class] certification."  *Vinole*, 571 F.3d at 940 (collecting cases).  Federal district courts have "[r]epeatedly . . . interpreted this Rule [23(c)(1)] to permit either party in a titular

---

[37] *See also John v. Nat'l. Sec. Fire and Cas. Co.*, 501 F.3d 443, 445-45 (5th Cir. 2007) (affirming district court's order granting defendant's motion to dismiss plaintiff's class allegations in a breach of contract claim against an insurance company); *Strange v. Norfolk and W. Ry. Co.*, 809 F.2d 786, 1987 WL 31160, at *3 (4th Cir. 1987) (unpublished) (affirming district court's order granting defendant's initial motion that a class action was inappropriate, rejecting plaintiff's argument that such a ruling was "premature" because "he had not completed discovery to determine whether there was a proper class", and explaining that "[t]he court was not required to wait until [plaintiff] sought class certification."); 7B C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1785, p. 89 (2d ed. 1986) ("Either plaintiff or defendant may move for a determination . . . under Rule 23(c)(1)").

[38] In *NAACP v. Cracker Barrel Old Country Store, Inc.*, Civil Action No. 4:01-CV-325-HLM (N.D. Ga.) ("*Cracker Barrel*"), plaintiffs filed a purported class action.  Defendant filed a Rule 23(c) motion for denial of class certification.  The magistrate judge issued a Report and Recommendation ("R&R") that the defendant's motion for denial of class certification should be granted.  *Cracker Barrel I*, D.E. 61 (N.D. Ga. Aug. 16, 2002).  The district court adopted the R&R, rejected plaintiff's argument that defendant's motion was "premature" because "more discovery is necessary before the court can determine whether class certification is appropriate", and granted defendant's Rule 23(c) motion for denial of class certification.  *Cracker Barrel II*, D.E. 113 at 59, 63 (N.D. Ga. Oct. 1, 2002).  The *Cracker Barrel I* and *Cracker Barrel II* opinions are attached to the Submission as Exhibits 54 and 55, respectively.

class action suit to move for a class determination." *Wilson v. Seven Seventeen HB Phila. Corp. No. 2*, 2001 WL 484193, at *2 (E.D. Pa. March 7, 2001) (granting defendant's motion to deny class certification with prejudice).[39]

In the procedural context of a defendant's motion to deny class certification, a plaintiff bears the burden of proving its right to maintain a class action. *Cook County*, 456 F.2d at 885 ("The burden was on the [plaintiff], the party seeking to utilize the class action, to establish its right to do so. It was obliged in its complaint to allege facts bringing the action within the appropriate requirements of the Rule").[40]

## IV. THERE ARE ADDITIONAL REASONS THAT CLASS CERTIFICATION SHOULD BE DENIED

In addition to the reasons discussed in the *Bishop* and *Adams* decisions, there are many other reasons that class certification should be denied in this civil action. Those additional reasons were detailed in extensive briefing and submissions filed in the *Bishop* case. Rather than replicating those arguments in this brief, LOTS respectfully attaches those *Bishop* filings to its

---

[39] *See also Brown v. Milwaukee Spring Co.*, 82 F.R.D. 103, 104 (E.D. Wis. 1979) ("*Brown*") (granting defendants' motion to deny class certification and explaining that, "the defendants may test the propriety of the action by means of a motion for denial of class certification"); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 334 n.9 (N.D. Ill. 2002) ("*Trans Union*") (granting defendant's motion that an action for statutory damages could not be maintained as a class action and explaining that, "even before a plaintiff moves for class certification 'a defendant may test the propriety of the action by a motion for denial of class certification'") (internal quotations and citations omitted); *Bell v. Lockheed Martin Corp.*, No. 08-6292 (RBK/AMD), 2011 WL 6256978, at *3, 9 (D.N.J. Dec. 14, 2011) ("*Bell*") (granting defendant's motion to dismiss plaintiff's class allegations and rejecting plaintiff's argument that defendant's motion was premature because plaintiff had not had "the ability to fully develop their claims through discovery."); *Campbell v. A.C. Peterson Farms, Inc.*, 69 F.R.D. 457, 464-67 (D. Conn. 1975) ("*Campbell*") (granting defendant's motion to dismiss class action claim)

[40] *See also Saunders*, 1998 WL 1051961, at *1; *Cracker Barrel II* at 41; *Bell*, 2011 WL 6256978, at *4 ("even in a motion to deny class certification, a Plaintiff bears the burden of providing prima facie evidence that the requirements of Rule 23 are satisfied"); *Brown*, 82 F.R.D. at 104 ("plaintiff has the burden of establishing her right to maintain a class action"); *Trans Union*, 211 F.R.D. at 347 n.9 ("The burden of establishing the propriety of a class action remains with the plaintiff"); *Campbell*, 69 F.R.D. at 465 ("burden of proof rests on the plaintiff"); *see also* nn.2, 34, *supra*.

14

Submission and incorporates them by reference.[41]   In this final section of this brief, LOTS provides a cursory overview of those additional reasons that class certification must be denied.

Two fundamental issues involving choice of law issues and individualized determinations compel the denial of class certification because of Plaintiff's failure to satisfy her burden of proving predominance and superiority under Rule 23(b)(3) and the Rule 23(a)(2) commonality and 23(a)(3) typicality requirements.[42]

### A.      Applicable Substantive Law

Based on binding precedent construing federal constitutional principles and Georgia's choice of law rules, this Court may not apply the substantive law of Georgia to the common law claims (and related claims for prejudgment interest) by out-of-state purported class members involving out-of-state transactions with the out-of-state defendant LOTS.[43]   Credit life insurance and credit disability insurance are heavily regulated at the state level by state governmental agencies in each state.[44]   There is a 50 state patchwork of state statutes and regulations governing credit insurance, including notice provisions, requirements for lenders to make refunds to customers/insureds of unearned credit insurance premiums upon an early loan payoff, formulas for calculating refunds, and minimum refund amounts, as well as general state statutory provisions dealing with prejudgment interest.[45]   There are also significant state variations in the common law principles underlying Plaintiff's breach of contract claims and LOTS's defenses.[46]

---

[41] *See* Submission, Exhibits 56-79.

[42] *See* Submission, Exhibit 56 (pp. 70-79, 85-90).

[43] *See* Submission, Exhibits 56 (pp. 30-49), 62-65.

[44] *See* Submission, Exhibits 56 (pp. 41-46), 66-72.

[45] *See* Submission, Exhibits 56 (pp. 41-49), 66-72.

[46] *See* Submission, Exhibits 56 (pp. 46-55), 62-64, 73-79.

Plaintiff alleges that the proposed class in this case includes hundreds of thousands of individuals who live throughout the United States.[47]

In an unbroken line of authority, the Former Fifth Circuit and the Eleventh Circuit have routinely rejected plaintiffs' motions for certification of a nationwide class action based on common law claims because of the complicated choice of law issues.[48]  Based on federal constitutional principles (and the case precedent interpreting those constitutional principles) and Georgia's choice of law rules, this Court must apply the laws of 50 states to the breach of contract claims by out-of-state purported class members involving out-of-state transactions.[49]

**B.    Individualized Inquiries**

In addition to the varying governing state laws, this Court would be required to conduct an individualized insured-by-insured inquiry for the alleged "hundreds of thousands" class members to determine whether a particular insured is a potential class member, whether LOTS

---

[47]  Complaint for Damages (Pacer Doc. No. 1-2) ("Complaint") ¶¶ 22, 26 ("The class is defined as all those individuals during the time period (a) who are residents of the United States. . . Plaintiffs estimate the number of class members is in the hundreds of thousands."); Submission, Exhibit 2.

[48]  *See* Submission, Exhibit 56 (pp. 18-22); *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 882 (5th Cir. 1973); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988); *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023-24 (11th Cir. 1996), abrogated on different grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) ("*Andrews*"); *Sikes*, 281 F.3d at 1352, 1367 n.44; *Klay*, 382 F.3d at 1246, 1261-67.  Other Circuit Courts of Appeals and district courts within the Eleventh Circuit have also routinely rejected certification of nationwide class actions based on common law claims.  *See* Submission, Exhibits 56 (pp. 22-26), 62-64.

State courts, which are not bound by Eleventh Circuit or United States Supreme Court precedent interpreting Rule 23 of the Federal Rules of Civil Procedure, could, of course, reach a different result on the class certification issue.  *Smith v. Bayer Corp.*, ___ U.S. ___, 131 S. Ct. 2368, 2379, 2382 (2011) (ruling that "[t]he issues in the federal and state [purported class actions] differed because the relevant legal standards differed" and explaining that "A federal court and a state court apply different law.  That means they decide distinct questions. . . . Once removal takes place, Federal Rule 23 governs certification."); *see, e.g., Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 698 S.E. 2d 19 (2010) ("*Resource Life*"); *J.M.I.C. Life Ins. Co. v. Toole*, 280 Ga. App. 372, 634 S.E. 2d 123 (2006) ("*J.M.I.C.*").  The *Resource Life* opinion did not cite a single Eleventh Circuit or United States Supreme Court decision in its class certification analysis and the *J.M.I.C.* opinion cited only one for a non-determinative issue.  Although plaintiff cited the *J.M.I.C.* decision in support of its motion for class certification in *Bishop* (*Bishop* D.E. 228), this Court nevertheless denied class certification.  *Bishop*, 255 F.R.D. at 627.

[49]  *See* Submission, Exhibits 56 (pp. 30-56), 62-65.

owes a refund to a particular insured, and the amount of any refund with any prejudgment interest.[50]

It would be necessary to review the certificate and loan history of every single insured in order to determine if a particular insured is a potential class member and might be entitled to a refund and whether any of LOTS's defenses would bar or limit recovery.[51]  LOTS's credit insurance contracts vary significantly among accounts within states, between states, and over time so it would be necessary to view the particular facts for each insured in light of the contractual terms of the insured's particular certificate and the applicable substantive law.[52]  In addition, in a large number of states, refunds are often made by lenders; thus, it would also be necessary to determine whether each insured had already received a refund from the lender.[53] The amount of premium that is deemed "unearned" and thus the amount of refund also varies according to state law, so there would also be the related individualized calculation on an insured-by-insured basis of any refund amount (including any available prejudgment interest), according to the laws of the 50 states.[54]

Those individualized inquiries would entail obtaining information about each insured not just from LOTS, but from countless lenders scattered across the United States, about critical issues, including whether a loan was paid off early and whether the lender had already made a refund of unearned premiums.[55]  The particular facts for each insured must be viewed in light of

---

[50] *See* Submission, Exhibit 56 (pp. 56-69).

[51] *See* Submission, Exhibit 56 (pp. 60-69).

[52] *See* Submission, Exhibit 56 (pp. 60-69); pp. 4-12, *supra*.

[53] *See* Submission, Exhibits 56 (p. 64), 58-61, 69.

[54] *See* Submission, Exhibits 56 (pp. 65-69), 66-72.

[55] *See* Submission, Exhibits 56 (p. 60-69), 58-61, 69.

the contractual terms of the insured's particular certificate and the applicable substantive law.[56]

Those individualized insured-by-insured inquiries preclude certification of this purported class

action under a well-established line of Eleventh Circuit authority.[57]

### C.    Recent Controlling Decisions Rejecting Class Certification

Since this Court's decisions in *Bishop* and *Adams*, there have been two recent Eleventh

Circuit decisions that reversed district courts for granting class certification as to a Rule 23(b)(3)

class and that fully support the dismissal of class action allegations in this case.  *Sacred Heart*,

601 F.3d 1159; *Vega*, 564 F.3d 1256.  In *Sacred Heart*, the Eleventh Circuit rejected a six-state

class action alleging breach of contract because there were at least 33 different contractual

variants.  601 F.3d at 1171, 1176 (explaining that "common questions rarely will predominate if

the relevant terms vary in substance among the contracts" and that "powerful variations in the

contractual terms alone are fatal to the class.").  Similarly here, there are massive variations in

LOTS's contractual clauses related to unearned premium refunds; such variations are fatal to

class certification.

The Eleventh Circuit also accepted defendant's argument that extrinsic evidence would

be necessary as part of its defense to the breach of contract claims.[58]  Aside from this being an

individualized inquiry, *Sacred Heart* recognizes the inherent difficulty in applying different state

---

[56] *See* Submission, Exhibits 56 (pp. 30-49, 56-69), 66-79; pp. 4-12, *supra*.

[57] *See* Submission, Exhibits 56 (pp. 56-59); *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235-36 (11th Cir. 2000); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997); *Andrews,* 95 F.3d at 1023; *Sikes*, 281 F.3d at 1366; *Klay*, 382 F.3d at 1255, 1264-67; *see generally Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989) (class certification is inappropriate if the federal courts must assess "essentially unique factual circumstances").

[58]  *Sacred Heart*, 601 F.3d at 1176-77 ("Even the most common of contractual questions – those arising, for example, from the alleged breach of a form contract – do not guarantee predominance if individualized extrinsic evidence bears heavily on the interpretation of the class members' agreements.").  The Eleventh Circuit noted that different states treat extrinsic evidence differently.  *Id.* at 1177 ("A related difficulty inheres in the application of multiple states' laws to the extrinsic evidence."), citing *Bowers v. Jefferson Pilot Fin. Ins. Co.,* 219 F.R.D. 578, 583-84 (E.D. Mich. 2004) (denying class certification because there was significant variation in the laws of the relevant states with respect to the use of extrinsic evidence).

laws on whether such extrinsic evidence can even be used in the first place.[59]  The Eleventh Circuit also found significant variations in the law applicable to defendant's waiver defense to plaintiff's breach of contract claim even though the law of only six states was applicable.  *Id.* at 1183.[60]  Such variations in state law, along with the variations in the contracts, made the district court's certification of the class an abuse of discretion.  *Id.*

In *Vega*, the Eleventh Circuit reversed the district court's certification of a Rule 23(b)(3) single-state class on the basis that:  (1) a breach of contract action could not be certified because there was no common contract; and (2) an unjust enrichment claim could not be certified because of the necessity with that claim for a court to examine the "individualized equities attendant to each class member."  *Vega*, 564 F.3d at 1272-74.[61]  Given the wide variation in LOTS's contractual provisions and the state's laws applied to them, as well as the necessity to delve into each purported class member's individual transactions and course of dealing with LOTS, this Court should deny class certification based on the authority of *Sacred Heart* and *Vega*.

A Rule 23(b)(2) class is also inappropriate because: (1) Plaintiff's request for relief relates exclusively or predominately to money damages, (2) Plaintiff's claims for breach of contract and prejudgment interest seek individualized relief rather than a group remedy, and (3) Plaintiff's breach of contract claim seeking compensatory damages may not be certified under

---

[59] In *Bishop,* this Court stressed the need to examine extrinsic evidence to determine whether an implied duty to refund when no notice of early payoff has been received exists under the contract and various state laws, and if that duty had been breached for each individual.  *See Bishop,* 255 F.R.D. at 626 ("The nature and extent of this duty will necessarily depend upon the specific language in the insurance contracts, the circumstances surrounding the insurance transactions, and an individualized evaluation of whether implying such a duty is consistent with the reasonable expectation of the parties.).  *See* Submission, Exhibits 56 (pp. 52 -53), 76-78.

[60] LOTS's Answer includes a waiver defense.  D.E. 2, p. 2.

[61] The Eleventh Circuit held that, "courts, including ours, have found unjust enrichment claims inappropriate for class action treatment."  *Vega,* 564 F.3d at 1274.  The Complaint in this civil action includes an unjust enrichment claim.  Complaint ¶ 45(b); Submission, Exhibit 2.

Rule 23(b)(2).[62]  *See Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. at 2557 (Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.").

## CONCLUSION

Defendant respectfully requests that this Court enter an Order striking or dismissing Plaintiff's Class Action Allegations.  In the alternative, Defendant requests that this Court deny class certification.

Respectfully submitted,

/s/ *Lee E. Bains, Jr.*
Lee E. Bains, Jr.
One of the attorneys for defendant, Life of the
South Insurance Company

---

[62] *See* Submission, Exhibit 56 (pp. 79-83).

02342969.10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of May, 2012, the foregoing Brief in Support of Defendant's Motion to Strike or Dismiss Plaintiff's Class Action Allegations or, in the Alternative, to Deny Class Certification has been filed with the Clerk of this Court and that the Court's electronic filing system will send notification of such filing to all counsel/parties of record.

/s/ *Lee E. Bains, Jr.*
OF COUNSEL

02342969.10