IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| BARBARA ELIZABETH LAWSON and JERRY LAWSON, Individually and on behalf of a class of all persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LIFE OF THE SOUTH INSURANCE COMPANY, a corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) CASE NO. 4:06-cv-00042 |

**DEFENDANT LIFE OF THE SOUTH INSURANCE COMPANY'S
RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION
TO DETERMINE THE SUFFICIENCY OF ADMISSION RESPONSES**

Defendant Life of the South Insurance Company ("LOTS" or "Defendant") respectfully submits this response in opposition to Plaintiff's Motion to Determine the Sufficiency of Admission Responses (Pacer Doc. 137). Plaintiff's motion should be denied in all respects, as her requests are contrary to the very purpose of Fed. R. Civ. P. 36 – to save time and obtain admissions of facts to which there is no dispute. Instead, Plaintiff's poorly drafted requests served in this multi-state class action involving numerous certificates with varying language and a multitude of state laws and regulations, neither facilitate the proof nor narrow the issues for trial.

**I. INTRODUCTION**

LOTS responded to each request for admission ("RFA") by providing a response in the nature of an admission, a denial, an objection or an inability to admit or deny. The Plaintiff's disappointment with LOTS' responses is the result of her own creation. Despite the explicit holding in *Bishop's Prop. & Invs., LLC v. Protective Life Ins. Co.*, 255 F.R.D. 619 (M.D. Ga.

1

2009) ("*Bishop*"); *Adams v. Monumental Gen. Cas. Co.*, 2009 WL 383625 (M.D. Ga. 2009) ("*Adams*") *Adams v. Monumental General* that each insureds' entitlement to a refund will depend upon the *individual circumstances* of each insured's particular case, Plaintiff's requests attempt to force LOTS to respond to flawed generalizations that are not consistent with the realities of the varying individual issues present in this class action.

LOTS' responses are not meant to "obfuscate the issues, complicate the litigation, increase trouble and expense for the Plaintiff and both delay and prolong litigation and trial" as Plaintiff suggests. (Pacer Doc. 137 p. 5). Instead, Plaintiff decided to serve requests at the outset of discovery that were neither simple nor direct, nor phrased in such a manner that LOTS could answer them with a simple admission or denial without explanation. Just as the numerous variations in credit insurance certificates and state law ultimately create individual issues for certification purposes, they also make it difficult – if not impossible – to respond to Plaintiff's RFA's with an unqualified "yes" or "no."

Each of LOTS' RFA responses the Plaintiffs complain about satisfy Fed. R. Civ. P. 36's requirements. The Plaintiffs have failed to carry their burden, and the Motion should be denied in full.

## II. ARGUMENT & CITATION OF AUTHORITY

Rule 36 is "not a discovery device." *T. Rowe Price Small-Cap Fund v. Oppenheimer & Co.,* 174 F.R.D. 38, 42 (S.D.N.Y. 1997); *Lakehead Pipe Line Co., v. American Home Assurance Co.,* 177 F.R.D. 454, 457- 458 (D. Minn. 1997) (responding party is not required to provide a factual basis for its denials because Rule 36 requests are not a discovery device). The Eleventh Circuit described Fed. R. Civ. P. 36 as "[e]ssentially … a time-saver, designed 'to expedite the trial and to relieve the parties of the cost of proving fact that *will not be disputed at trial*.'" *Perez*

2

*v. Miami-Dade Co.,* 297 F.3d 1255, 1268 (11th Cir. 2002) (quoting 8A Charles Alan Wright, Arthur R. Mller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2252) (2nd ed. 1994) (emphasis by Eleventh Circuit). The former Fifth Circuit determined "Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove. … Accordingly, requests for admissions as to central facts in dispute are beyond the proper scope of the rule." *Pickens v. Equitable Life Assurance Soc. of U.S.*, 413 F.2d 1390, 1393 (5th Circ. 1969) (citation omitted).[1]

A responding party may admit, deny, respond with qualifications, or express an incapacity to substantively respond after a reasonable inquiry. Fed. R. Civ. P. 36; *Lakehead Pipe*, 177 F.R.D. at 457; *Michael v. Wes Banco Bank, Inc.,* No. CIVA 5:04CV46, 2006 WL 1705935, at *2 (N.D.W.Va., June 16, 2006). In response to a motion to determine the sufficiency of admission responses, the court is not authorized to "prospectively render determinations concerning the accuracy of a denial to a Request for Admission, or to order that the subject matter of the request be admitted because the opposing party's unequivocal denial is asserted to be unsupported by the evidence." *Lakehead*, 177 F.R.D. at 458. That is exactly what Plaintiff seeks this Court to do.

### 1. Denied as Written is a Proper Response

Plaintiff cites to no case authority that the response "denied as written" is an improper response. Contrary to Plaintiff's statement that such response causes confusion as to whether it is "merely an objection to the way Plaintiff drafted it," such statement simply constitutes a denial and should be treated as such. The response is particularly appropriate, where, as here, the requests are vague and ambiguous, and drafted in such a manner that LOTS cannot answer them

---

[1] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

3

with a simple admission or denial without an explanation. *See Williams v. State Farm Fire and Cas. Co.,* 2008 WL 4826144 *1 (Nov. 5, 2008 E.D. La.) (accepting denied as written as an appropriate response.)  Plaintiff purposefully sought to confuse or trick LOTS by: (1) serving requests that used vague and ambiguous terms such as "substantially the same" (RFA 1), "ultimately owed" (RFA 3), "only information" (RFAs 10, 28), "no effort" (RFA 16) and "notified" (RFA 22), and by seeking to compel conclusions of law relating to legal issues such as scope of agency, the meaning of "possession, custody or control," the relationship between LOTS, automobile dealers and lenders and LOTS' obligations regarding refunds, including contractual interpretation of insurance policies, express and implied notice requirements, whether a refund was previously made by another party, whether the loan terminated because of a claim for insurance benefits was paid and whether the refund exceeded the various state law minimum refund amounts.  The response "denied as written" is a denial and should be treated as such.  No further response is required by LOTS.

### 2.     LOTS' Answers are Responsive to the Poorly Drafted Requests

Plaintiff complains that for RFAs 1, 2, 3, 5, 10, 12, 15, 19, 35, 36, 37, and 39, LOTS admits or denies the substance of the request and then gives an explanation. LOTS also admits or denies (in some form) RFAs 4, 7, 21, 22, 24, 33, and 34, but also provides an explanation. LOTS responses, including explanations, are acceptable under Fed. R. Civ. P. 36, as this rule "permit[s] the following responses to a request for admission: (1) an objection on the grounds that the matter demanded to be admitted is beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1); (2) an admission; (3) a denial; (4) a detailed explanation why the matter can be neither admitted nor denied; or (5) a good faith qualified admission that admits certain matters, if possible, but denies or gives a qualified answer to the rest." *Michael,* 2006 WL 1705935 at *2.

4

02355361.1

Plaintiff's insinuation that LOTS' qualified responses are improper is unsupported. Specifically, qualified responses are entirely permissible under Fed. R. Civ. P. 36. *See Johnstone v. Cronlund,* 25 F.R.D 42, 44 (E.D. Pa. 1960) (a qualification is permitted if the request, although containing some truths, "standing alone out of context of the whole truth . . . convey[s] unwarranted and unfair inferences."); *see also Merix Pharm. Corp., v. EMS Acquisition Corp.,* 2010 WL 3781013, *5-6 (N.D. Ill., Sept. 21, 2010) (recognizing the propriety of a responding party, after each denial or partial denial, providing an appropriate explanation for its denial). LOTS qualifications or explanations, the very matters that Plaintiff complains about, explain why LOTS is unable to conclusively admit or deny the RFA outright. LOTS' qualifications provide clarity and lucidity to poorly drafted requests, particularly in a large, multi-state class action, and do not obfuscate, frustrate or compound the references and should not be struck.

### a. RFAs 1, 2, 3, 5, 10, 12, 15, 19, 35, 36, 37, 39

Plaintiff's requests are not stated in clear and concise terms as required under Fed. R. Civ. P. 36. Requests for admissions must be capable of simple responses without extensive conditions and qualifications. These requests pose incomplete hypothetical questions with multiple parts and assumptions -- nothing close to a clear and concise request which would render a simple response as required under the Federal Rules.

Nonetheless, LOTS provided proper qualified responses to these RFAs. The Plaintiff's Motion implies that LOTS should revise its responses as drafted and provide the answer the plaintiff desires. Each of these requests – casted in twelve different ways - relate to the same issue of LOTS' purported refund-related obligations. However, as LOTS described in its Memorandum in Support of its Motion to Strike (Pacer Doc. 143), each insured's entitlement to a refund will depend upon the individual circumstances of the insured's case. *See also Bishop,*

255 F.R.D. at 621.  Because of the individual nature of the credit insurance refund process, the requests contain unspecified variables and conditions, including the varying language in LOTS credit insurance contracts such as notice provisions, who is obligated to make the refund, to whom the refund will be given, the timing of the refund, the formula for calculating refunds, the minimum refund amount, as well as whether another party – such as the creditor – previously made the refund.[2]  Accordingly, LOTS was required to provide qualifying language to explain its response and remind the Plaintiff that such questions were vague and confusing as long as she was unwilling to concede the individual nature of the underlying transactions.

As written, LOTS was left to assume whether the proffered hypothetical situations arose from circumstances that Plaintiff knew would impact the answer, such as whether the creditor or producer had previously made the refund, whether LOTS received notice of the termination of the underlying debt, whether the refund was greater than the particular state's minimum refund amount and whether a claim had been paid on the certificate.  Simply because Plaintiff does not like LOTS' responses because they highlight the individual issues in this case, it does not allow her to seek to compel responses of her choosing.

### b.     RFAs 13, 21, 22, 33, 34

The only reason LOTS was "confused" by these Requests was because Plaintiff failed to draft them in simple and concise terms so they could be denied or admitted with minimal explanation or qualification.

As LOTS explained in its response, RFA 13 uses the vague term "form policy" that is subject to differing interpretations by the parties, as evidenced by the fact LOTS uses numerous

---

[2] *See* Motion to Strike (Pacer Doc. 143 pp. 7-11)

different certificates in each state where it issues credit insurance.[3] As such, LOTS provided a proper response explaining the Plaintiff's certificate was issued using a form approved for use only in Georgia.

With respect to RFA 21, again, the problem arises from the Plaintiff's choice of words. As LOTS explained to the Plaintiff, it is unclear whether she is asking about a particular instance, or if LOTS "obtains" loan termination dates in the regular course of its business. Moreover, Plaintiff provides no guidance as to what she means by "obtains," such as whether it is in the form of a report, written communication, oral communication, etc. LOTS properly explained its qualified response by giving a specific example of being copied on correspondence from the lender when a loan has terminated before the policy expiration date. This request is a prime example of an RFA that cannot be capable of a simple response, but instead requires extensive conditions and qualifications. Thus, LOTS' response is proper under these circumstances.

LOTS' response to RFA 22 admitting it is sometimes copied on letters from lenders to their customers confirming their loans were paid, is a proper response to the confusing request relating to whether an undefined group of "some lenders" have "notified" LOTS when an insured terminates his/her loan early.

Requests 33-34 are prime examples of complicated requests that require lengthy responses Plaintiff does not want to accept. Like any computer system, the Stone Eagle system utilized by LOTS is more complicated than plaintiff assumes, and whether it can or cannot accomplish certain functions including generating "reports" is a complex and technical issue that simply is not suitable for an RFA. Nonetheless, LOTS properly explained its qualification by

---

[3] LOTS Motion to Strike (Pacer Doc. 143, pp. 7-10 and corresponding exhibits)

explaining certain functions of the system, but that it did not produce the monthly and annual "reports" as suggested by the Plaintiff. Moreover, Plaintiff is asking the Court to make a factual determination regarding the accuracy of the denial, something that falls outside the scope of Fed. R. Civ. P. 36. *See Michael,* 2006 WL 1705935 at *3 (denying motion for ruling on the sufficiency of admission responses because "...the Court will not question the basis for a Defendant's denials...").

          c.        RFAs 2, 4-5, 7, 24-25

RFA 2 was not drafted in a manner so that it could be answered yes, no, LOTS does not know or a simple explanation as to why LOTS cannot answer. As previously explained, LOTS utilizes different certificates containing different language in "each jurisdiction" which it "administers" credit insurance. Thus, as stated in the response, while the specifically enumerated factors provide some of the information LOTS needs when considering whether a refund of unearned premium is owed, other unlisted considerations, such as the varying language in LOTS' credit insurance certificates (including notice provisions), who is obligated to make the refund, to whom the refund will be given, the timing of the refund, the formula for calculating refunds, the minimum refund amount, as well as whether another party – such as the creditor – has made the refund, required LOTS to provide a more detailed response to a request that was anything but simple.

RFAs 4 & 5 are problematic because, among other reasons, their use of the vague and ambiguous phrase "LOTS's contractual obligations." LOTS' "obligations" are governed by a host of individual considerations, such as the varying terms of LOTS' numerous certificates approved on a form-by-form and state-by-state basis, the particular state laws that govern each contract and individual factual circumstances such as whether another party – such as the

creditor – made the refund. The varying contractual language (including differences in who LOTS makes the refund to and notice provisions), as well as the differences in state law regarding refunds were highlighted in LOTS' Motion to Strike. (Pacer Doc. 143 pp. 7-12). Moreover, the *Bishop* decision highlights the fact the Plaintiff simply does not want to admit, that entitlement to a refund "will depend upon the individual circumstances of the insured's case." *Id.* at 621-22. Accordingly, LOTS' response was entirely proper.

As for RFA 7, LOTS did not "admit what was not asked," but instead carefully parsed the lengthy request containing multiple ambiguous and vague terms, such as "agent," "obligated," "maintain," "information regarding the credit insurance" and "available" and responded with a proper denial. This confusing request not only calls for admissions of conclusions of law, but also fails to appreciate the relationship between LOTS and the entities, such as automobile dealers, that sell credit insurance.[4] The master policies produced to the Plaintiff further describe this relationship.[5] LOTS qualified response is proper under the circumstances of Plaintiff's request.

Similarly, RFAs 24 and 25 create confusion by using terms subject to legal interpretation such as "agents" and "possession, custody and control." RFA 24 cross-references Interrogatory 8. As explained in its response to Interrogatory 8, LOTS does not receive, retain, or enter into the Stone Eagle-based system any information related to the lender holding the finance contract with the insured, nor does it receive, retain, or enter into the Stone Eagle-based system any information – including the loan termination date (LTD) – related to the loan itself.

---

[4] *See e.g.* LOTS' Response to Plaintiffs' Motion to Compel, Exh. G, Hart Aff. (Pacer Doc. 146); *Corbin v. Regions Bank,* 258 Ga.App. 490 (2002)( "*Corbin*")

[5] Response to Plaintiffs' Motion to Compel, Exh. C, Docs. Produced Chart (Pacer Doc. 146)

9

Accordingly, LOTS' qualified denial is entirely proper and Plaintiff does not have the right to ask this Court to determine its factual accuracy.

Similarly, LOTS properly stated in its response to RFP 25 that the request relates to knowledge or information held by third parties LOTS does not control. Plaintiff's motion does not seek clarification, but, in reality, improperly request the Court to question the basis for LOTS' denial. The complex relationship between a credit insurance company and a lender arising from an automobile transaction is also discussed in LOTS' response to Plaintiff's Motion to Compel (Pacer Doc. 146, pp. 13-16). Likewise, *Corbin* illustrates why there is no relationship between a lender and a credit insurer and further confirms the reasons that LOTS cannot know which of the nation's thousands of lenders currently holds the car note for its insureds by simply examining its certificates. Accordingly, LOTS' responses are proper and should not be struck.

### 3. LOTS Denial and Qualifying Reference to the Documents is Proper

Plaintiff's arguments relating to RFAs 4, 5, 14 and 16 fail to adequately consider the fact LOTS denied each request. Thus, Plaintiff's intent is to litigate the issue and change "denied" to "admitted." However, it is not the Court's responsibility to question the basis for such denial. Also, the qualifications are proper and necessary given the wording of these requests and the complex, individualized inquiry that underlies whether an insured is entitled to a refund. As explained above, LOTS "obligations" are governed by a host of individual considerations, such as the terms of LOTS' various approved certificates, the particular state laws that govern each contract and individual factual circumstances such as whether another party – including the creditor – made the refund. Thus, no further response is required.

### 4. LOTS' Objections and Denials are Proper

LOTS did not object to "common" terms as the Plaintiff alleges. Refunding unearned premiums depends upon the individual circumstances of each insured's case and involves varying certificate language and other requirements determined on a state-by-state and certificate-by-certificate basis. Credit life insurance and credit disability insurance are heavily regulated at the state level by state governmental agencies in each state.[6] There is a 50 state patchwork of state statutes and regulations governing credit insurance, including notice provisions, requirements for lenders to make refunds to customers/insureds of unearned credit insurance premiums upon an early loan payoff, formulas for calculating refunds, and minimum refund amounts, as well as general state statutory provisions dealing with prejudgment interest.[7] There are also significant state variations in the common law principles underlying contract claims and the defenses thereto.[8]

Plaintiff's objections to RFAs 6, 7, 8, 9, 11, 13, 25, 26, 29 & 30 continue to draw attention to the fact such requests are simply inappropriate for a multi-state class action involving individual issues and a multitude of individual certificates governed under a myriad of state laws and regulations. As such, terms that might seem "common" in an individual case or a particular transaction are anything but "common" when considering them in a purported multi-state class action where each insured's entitlement to a refund will depend upon various individual circumstances arising from and relating to every single particular transaction.

LOTS' response to RFA 6, which includes a properly qualified admission, is appropriate. LOTS also properly explained the terms "agent" and "entities," in relation to the sale of credit insurance, are vague and ambiguous as LOTS' relationship with its producers (including a

---

[6] *See* Motion to Strike, Evidentiary Submission, Exhibits 56 (pp. 41-46), 66-72.

[7] *See Id.,* Exhibits 56 (pp. 41-49), 66-72.

[8] *See Id.,* Exhibits 56 (pp. 46-55), 62-64, 73-79.

02355361.1

multitude of automobile dealers who sell credit insurance) is governed by a host of factors, including the terms of the certificate, master policies and particular state laws and regulations. Accordingly, no further clarification is required to this request the Plaintiff knows relates to a fact in dispute.

LOTS has previously discussed its proper response to RFA 7.

RFA 8 is a prime example of Plaintiff's poor draftsmanship and her ulterior motive behind the RFAs in general. Rather that simply asking if LOTS has the data requested, Plaintiff unnecessarily included "your agents" in the request to complicate the response and bring a central fact in dispute into the picture. LOTS' qualified admission is therefore proper.

RFA 9 is confusing to LOTS because the word "premium" appears to be an improper choice of words. The premium is what an insured pays at the time the insurance is purchased. It is separate and distinct from a refund. In other words, it is confusing to suggest that LOTS' calculates a "premium" when a loan is terminated. Plaintiff should have either excluded the term from the second line of her request, or used the term "refund" as it did in the third line. LOTS was genuinely confused by this request that needed clarification, particularly given the individualized complexities of a situation where, like here, the purported class is made up of individuals who failed to provide LOTS with notice of their early loan terminations. Thus, LOTS' objection is well-taken and should not be modified or struck.

In RFA 11, Plaintiff's use of the connected term "account/agent/producer" is ambiguous on its face. LOTS objection and denial were therefore proper.

LOTS has previously discussed its proper responses to RFAs 13 and 25.

LOTS' response to RFA 26 was sufficient and its explanation was proper given the poorly drafted request that fails to take into consideration the highly individualized nature of the

underlying transaction, including the fact that credit insurance may be sold by thousands of automobile dealerships arising from automobile financing that could also involve thousands of lenders. LOTS' response is therefore sufficient.

Similarly, LOTS' qualified denials to RFAs 29 and 30 are also adequate under the circumstances relating to the Plaintiff's over-generalized requests that use terms and relate to an issue – the possession, custody and control of loan termination dates -- Plaintiff knows is in dispute. Plaintiff's intent with its objections to these requests is to have this Court litigate this issue through RFAs. As LOTS explained in its response, the requests seek information held by third parties – including potentially thousands of automobile financing lenders – that LOTS does not control, does not know the specific information they "maintain" and whether they and/or automobile dealers maintain "current" addresses.

## 5. LOTS has not Waived its Objections by also Asserting a Response

Plaintiff cites to two district court opinions from Florida for its over-simplified argument that LOTS has waived its objections by also asserting a response. In fact, one of the cited cases, *Mann v. Island Resorts Development, Inc.,* 2009 WL 6409113 (N.D. Fla., Feb. 27, 2009), deals with interrogatories, not requests for admissions. LOTS has identified another Florida federal district court opinion in which the court determined coupling an objection with a response is proper. *See Smith v. Orange Co.,* 2006 WL 492579, *2 (M.D. Fla., Sept. 15, 2006). A common theme, however, in all of the cases is that each request is examined on an individual basis. Here, as previously explained, the RFAs were poorly drafted and failed to take into consideration the individual nature of the circumstances surrounding a unearned premium refund where the insured did not give notice of early termination of the debt. As such, LOTS had no choice but to state its objection and respond, as best it could, under such circumstances. LOTS' responses and

13

objections are not confusing to such an extent that it should be required to submit new answers, particularly when it has demonstrated in its Motion to Strike that this case cannot be certified as a multi-state class action.

### 6. LOTS Complied with Rule 36 Regarding Information Not in Its Possession

Plaintiff's argument that LOTS' responses are insufficient for not tracing the exact language of Rule 36 is without merit. LOTS stated what it could not respond to, and provided reasons for its position. As LOTS has previously explained, the dichotomy between it and automobile dealers and lenders is complicated. *See e.g. Corbin*, 258 Ga. App. at 491.[9] The complicated nature is further emphasized by the experiences of other credit insurers in similar Georgia state court litigation.[10] LOTS' responses make it clear that its position is that the requested information is held by third parties and it is not obtainable pursuant to a reasonable inquiry. In reality, what Plaintiff improperly seeks is a determination concerning the accuracy of LOTS' responses. If there was some technical deviance from the literal requirements of the rule that causes some *legitimate* confusion on the Plaintiff's part, LOTS will comply with an Order directing it to clarify its position that has been previously asserted in its Motion to Strike and response to the Plaintiff's Motion to Compel.

### III. CONCLUSION

---

[9] *See* Response to Motion to Compel, pp. 9-12 and 14-16.

[10] *See e.g. Resource Life Ins. Co. v. Buckner*, 2010 WL 2598637 at *12 (Ga. Ct. App. June 30, 2010) ("*Buckner*") (despite spending over $1.6 million and devoting over 88,000 man hours to its efforts to comply with the trial court's discovery orders, Resource Life "produced all 11 items of data for only 4% of its insureds."); *Toole v. JMIC Life Insurance Co.*, SU 2003 CV 246 (Superior Court of Muscogee County, Georgia) ("*Toole*") (defendant spent over $1.4 million and devoted over 41,000 man hours at the pre-certification stage in attempts to comply with discovery orders relating to the collection of data about purported class members.) (*See* LOTS' Response to Motion Compel, Exh. L, pp. 17-18.); *Parker v. Life Investors Insurance Co.,* SU-04-3687-6 (Superior Court of Muscogee County, Georgia) ("*Parker*") (the defendant credit insurance company had "expended $2.5 million (and counting)" at the pre-certification stage in attempting to comply with a discovery order to obtain LTDs that are "in the custody of literally thousands of third parties.") (*See* LOTS' Response to Motion to Compel, Exh. M at 2).

Fed. R. Civ. P. 36 is supposed to be a time saver.  The Plaintiff, however, wants to try the whole lawsuit on paper and, specifically, improperly utilize requests for admissions as to central facts she knows are in dispute.  The *Bishop* and *Adams* cases highlight the individualized nature of Plaintiff's underlying claims, including the significant variations in the insurance certificates and applicable state laws.  Each insured's entitlement to a refund will depend upon the individual circumstances of the insured's particular case because the insurance contracts are not uniform as to what triggers the duty to make the refund (with some contracts requiring the insured to notify the insurer that the loan had been paid off early and others not requiring that notice), and that the contracts without notice provisions give rise to the question of whether an implied duty exists to make the refunds and the extent of that implied duty.  Furthermore, individual state laws would need to be reviewed to determine whether any such implied duty existed.  Accordingly, this case is simply not one in which the issues can be phrased in a simple request that covers every class member, particular certificate and state law relating to credit insurance.

The purpose of Rule 36 is to both facilitate proof and narrow the issues.  Plaintiff's requests do neither.  Instead, they further emphasize what LOTS has always contended – that the case simply involves too many variations in the contracts and the applicable state laws to be a certifiable class action, much less one in which it is proper to serve over-generalized requests such as those served by the Plaintiff at the outset of discovery.  Accordingly, LOTS' responses under these circumstances are permissible and the Court should deny Plaintiff's motion.

If, however, the Court should determine an answer to be insufficient, it should not be deemed admitted (particularly since many of the responses Plaintiff complains about are denials), and LOTS should be given an appropriate amount of time to serve an amended answer.  LOTS has not violated any Court Order, nor is its behavior so contemptible to justify such a

severe sanction.  As Judge Land stated in *Bishop* when accepting the insurer's stipulation as to numerosity and typicality and vacating his prior Order relating to the production of loan termination dates, "[t]he merits of class certification should not be decided based upon discovery rulings."  (LOTS' Response to Motion to Compel, Exh. K, November 19, 2007 Order).

Respectfully submitted,

s/ *Thomas J. Butler*

C. Andrew Kitchen (GA Bar # 271018)
Lee E. Bains (admitted *pro hac vice*)
Jeffrey M. Grantham (admitted *pro hac vice*)
Thomas J. Butler (admitted *pro hac vice)*
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
Suite 2400
Birmingham, AL  35203-2618
Phone 205-254-1000
Fax 205-254-1999

**OF COUNSEL:**
Jerry A. Buchanan (GA Bar # )
Benjamin A. Land (GA Bar # 432825)
Buchanan & Land, LLP
P.O. Box 2848
Columbus, Georgia 31902
Phone: 706-323-2848

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 14th day of May, 2012 , the foregoing has been served upon all counsel of record via the Middle District of Georgia's CM/ECF notification system.

                                        *s/ Thomas J. Butler*
                                        OF COUNSEL

02355361.1