IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| BARBARA ELIZABETH LAWSON, | ) | |
| Individually, as Executor of the Estate of | ) | |
| Jerry Lawson and on behalf of a class | ) | |
| of all persons similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | |
| | ) | File No. 4-06-CV-42 |
| LIFE OF THE SOUTH INSURANCE | ) | |
| COMPANY, a Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE
TO PLAINTIFF'S MOTION REGARDING THE SUFFICENCY OF DEFENDANT'S
ANSWERS AND OBJECTIONS TO PLAINTIFF'S REQUESTS FOR ADMISSION**

**I.    Introduction**

Contrary to LOTS's contentions, Plaintiff's Requests for Admission—if properly

answered—could "establish uncontested facts and . . . narrow the issues for trial." *Perez v.*

*Miami-Dade County*, 297 F.3d 1255, 1268 (11th Cir. 2002).[1]  Plaintiff's RFAs inquire about

---

[1] Plaintiff acknowledges that there is some authority for the proposition that RFAs about central
facts in dispute are beyond the scope of Federal Rule of Civil Procedure 36.  *See, e.g.*, *Pickens v.*
*Eq. Life Assurance Soc.*, 413 F.2d 1390, 1393 (5th Cir. 1969).  The *Perez* court cited to *Pickens*
for the proposition that one purpose of Rule 36 is to relieve the parties of the cost of proving
facts that will not be disputed at trial and also noted that "issues *obviously subject to dispute*
*should be resolved at trial*, not in a discovery motion."  *Perez*, 297 F.3d at 1264, 1269.

This case is distinguishable from both *Perez* and *Pickens*.  First, it is notable that the
*Pickens* case was decided before the 1970 amendments to the Federal Rules of Civil Procedure.
The advisory committee notes to Rule 36 specifically mention that prior to the 1970
amendments, courts were "divided on whether an answering party may properly object to request
for admission as to matters which that party regards as 'in dispute.'"  Fed. R. Civ. P. 36 advisory
committee's note.  However, the committee further explains that following the 1970
amendments, "[t]he proper response in such cases is an answer," *id.*, and *Perez* does not
expressly prohibit a party from seeking an admission regarding a disputed issue.  *See* Fed. R.

issues that have repeatedly arisen and been resolved in other credit insurance class actions. *Compare, e.g.,* Pl.'s Req. for Admis. 21, ECF No. 137-2 ("Please admit that You have obtained an insured's loan termination date from a lender to which an insured's loan has been assigned.") *with Buckner v. Res. Life Ins. Co.*, Order at 2, Oct. 29, 2009, ECF No. 136-16 ("The Court further finds that Defendant can and does obtain its insureds' loan termination dates in the ordinary course of business and that Defendant has the legal right and practical ability to obtain its insureds' loan termination dates to the extent the loan termination dates are not already in Defendant's immediate possession."). It is therefore reasonable and appropriate for Plaintiff to ask LOTS whether it will dispute these issues or whether Plaintiff should be prepared to adduce evidence on such matters. *See* Fed. R. Civ. P. 36 advisory committee's note ("The very purpose of the request is to ascertain whether the answering party is prepared to admit or regards the matter as presenting a genuine issue for trial.").

Unfortunately, however, instead of addressing the issues raised in Plaintiff's motion head-on, LOTS uses its response to both trumpet and hide behind its bald assertions that this case is unsuitable for treatment as a class action. In doing so, LOTS neglects to provide a reasonable explanation why it failed to answer the majority of Plaintiff's RFAs in a manner consistent with Federal Rule of Civil Procedure 36. Plaintiff deserves answers to her Requests and respectfully asks this Court to either (1) require LOTS to answer appropriately or (2) deem LOTS's deficient responses admitted. *See Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981)

---

Civ. P. 36(a)(5) ("A party must not object solely on the ground that the request presents a genuine issue for trial."); *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1248 (9th Cir. 1981) ("[C]ourts have held that a request for admission, and thus an admission itself, is not improper merely because it relates to an 'ultimate fact,' or to an issue of fact that is dispositive of the merits of a case . . . ." (internal citations omitted)). Moreover, the issues raised by Plaintiff's RFAs are not "obviously" in dispute. As noted above, most of Plaintiff's inquiries concern matters which have been raised and/or resolved in credit insurance litigation in other courts.

("It is also clear that an evasive denial, one that does not 'specifically deny the matter,' or a response that does not set forth 'in detail' the reasons why the answering party cannot truthfully admit or deny the matter, may be deemed an admission.");[2] *See also House v. Giant of Md., L.L.C.*, 232 F.R.D. 257, 262 (E.D. Va. 2005) ("Gamesmanship in the form of non-responsive answers, vague promises of a future response, or quibbling objections can result in the request being deemed admitted or in a post-trial award of monetary sanctions without prior opportunity to correct the deficiency.").

## II.    Discussion

Plaintiff discussed LOTS's deficient RFA responses in detail in her original Motion, but LOTS's failure to comply with Rule 36 in good faith is best evidenced by its outright refusal to fully answer a number of Plaintiff's RFAs.  When the subject matter of each of these RFAs is examined, a clear pattern emerges:  LOTS avoids answering those RFAs that would reveal that it already has—or has ready access to—all of the information it needs to determine whether its insureds are entitled to refunds of unearned premiums.[3]

### A.    *LOTS Avoids Answering RFAs About Its Relationship with the Entities Which Sell Its Insurance Products*

[2] The *Asea* court noted that "[a]lthough the district court should ordinarily first order an amended answer, and deem the matter admitted only if a sufficient answer is not timely filed, this determination, like most involved in the oversight of discovery, is left to the sound discretion of the district judge."  *Asea, Inc.*, 669 F.2d at 1247.

[3] Plaintiff notes that these matters have been common points of inquiry in credit insurance class action litigation.  *See, e.g.,* Exh. 1*, Toole v. J.M.I.C. Ins. Co.*, Mar. 8, 2007 Order at 2, ("It is undisputed that the vast majority of the information which Plaintiff has asked that this Court require Defendant to produce is already in the files of Defendant and/or its dealer/agents.  The balance of that information is within the legal possession custody and control of Defendant and is available to Defendant."); Exh. 2, *Parker v. Life Investors*, Aug. 20, 2007 Order at 2, ("It is undisputed that all but one of the datapoints [the loan termination dates, or "LTDs"] Plaintiff seeks for the purpose of discovering the identity of those insureds due refunds are already possessed by Defendant in its own files or by Defendant's dealer/agents.").

LOTS's responses to RFAs 24, 25, 26, 29, and 30 are calculated to obscure the relationship between LOTS and the entities which sell LOTS insurance. In each of those Requests, Plaintiff sought an admission about what types of data LOTS or its agents possess regarding its insureds. In each of its responses, LOTS answered with some variation of language suggesting that it finds the word "agents" vague, ambiguous, and subject to multiple interpretations; that it "does not know" whether its agents, producers, or other third parties maintain information relevant to such requests; and that it has no duty to inquire as to whether any third parties have information or knowledge relevant to such requests. Such responses are deficient.

LOTS's response to RFA 24 is a perfect example of LOTS's failure to properly and completely answer Plaintiff's Requests. In RFA 24, Plaintiff asked:

> If You or Your agents do not have all of the above information identified in Plaintiffs Interrogatory Number 8 in Your possession, custody, or control, please specify which information You deny having within Your possession, custody, or control.

Def.'s Resp. to Pl.'s Req. for Admis. 24, ECF No. 137-2. LOTS responded:

> Denied on the grounds that LOTS does not know if its agents have all of the data points in their care, custody or control. Subject to this objection, LOTS further directs the Plaintiffs to its response to Interrogatory Number 8.

*Id.* This response is plainly incomplete because it does not state whether LOTS *itself* has the requested information in its possession, custody, or control.[4] But LOTS's response to RFA 24 is

---

[4] LOTS's reference to its response to Interrogatory 8 does not clarify matters because the interrogatory response does not specifically identify which of the listed data points, if any, are in LOTS's or LOTS's agents' possession, custody, or control. *See* Def.'s Resp. to Pl.'s Interrog. 8, ECF No. 136-8. The question of whether the requested data points—particularly the loan termination dates—are in the credit insurer's possession, custody, or control has also been frequently litigated in this type of credit insurance class action. *See, e.g., Bishop v. Protective*

also insufficient because it does not state that LOTS inquired as to whether *its agents* possessed the information that would allow LOTS to respond to the RFA. Such inquiry is required under Federal Rule of Civil Procedure 36. *See, e.g.*, *Asea, Inc.*, 669 F.2d at 1247 ("[A] response which fails to admit or deny a proper request for admission does not comply with the requirements of Rule 36(a) if the answering party has not, in fact, made 'reasonable inquiry,' or if information 'readily obtainable' is sufficient to enable him to admit or deny the matter."); *E.H. Tate Co. v. Jiffy Enters.*, 16 F.R.D. 571, 574 (E.D. Pa. 1954) (requiring corporate defendant's president to answer RFAs even where information sought was not in president's personal knowledge if information could "be obtained from reliable sources without imposing undue hardship"); *see also Keh v. Americus-Sumter County Hosp. Auth., No. 1:03-CV-68-2* (*WLS*), 2006 WL 1431531, at *3 (M.D. Ga. May 19, 2006) (citing Asea favorably). LOTS's responses to RFAs 25, 26, 29, and 30 suffer from similar deficiencies.[5]

The Federal Rules of Civil Procedure do not permit LOTS to simply throw up its hands and say "I don't know" in response to an RFA; instead, the Rules require LOTS to investigate and inquire into whether any of its officers, employees, agents, administrators, employees, servants, or other personnel may have information that would allow LOTS to furnish an appropriate response. *See, e.g., Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005) ("Merely because the requested information is not possessed by

---

*Life Ins. Co.*, Order at 12, ECF No. 136-15 ("The Court finds that for purposes of discovery the termination dates of the loans are 'available to Defendant,' 'within Defendant's control,' and 'readily obtainable upon reasonable inquiry.'").

[5] As Plaintiff pointed out in her Motion, she is also skeptical of the legitimacy of LOTS's objections that terms such as "agents" are impermissibly vague. LOTS inconsistently objected to the use of such terms and answered some RFAs which used those same terms even after objecting. *See* Pl.'s Mot. Regarding Req. for Admis. at 12-13, ECF No. 137.

Travelers' personnel does not mean the information is unavailable to Travelers, especially as

Travelers is an assignee of Essex's interests."). LOTS's failure to conduct such reasonable

inquiry is more than a mere "technical deviance from the literal requirements" of Rule 36. *See*

Def.'s Resp. to Pl.'s Mot. Regarding Req. for Admis. at 14, ECF No. 147. LOTS's responses

instead highlight the fact that it has made little, if any, effort to comply with its discovery

obligations.

     B.  *LOTS Avoids Answering RFAs About the Types of Information It Possesses*

     LOTS similarly avoids answering RFAs that would allow Plaintiff to pinpoint the types

of information LOTS possesses about the insurance certificates at issue in this case. Examples of

this strategy can be found in LOTS's responses to RFAs 9 and 21. In RFA 9, Plaintiff asked:

> Please admit that You have computer systems and/or computer programs which
> process and/or calculate the amount of premium due each insured whose loan has
> terminated early when You have the information necessary to process a refund of
> premium.

Def.'s Resp. to Pl.'s Req. for Admis. 9, ECF No. 137-2. LOTS responded:

> Denied as written as the term "premium" as used in this interrogatory is vague,
> ambiguous and subject to multiple interpretations and definitions.

*Id.* In its response brief to this motion, LOTS further explained that it was "confused" by RFA 9

because "[t]he premium is what an insured pays at the time the insurance is purchased. It is

separate and distinct from a refund. In other words, it is confusing to suggest that LOTS'

calculates a 'premium' when a loan is terminated." Def.'s Resp. to Pl.'s Mot. Regarding Req.

for Admis. at 12, ECF No. 147. LOTS's argument is disingenuous, at best. LOTS knows

exactly what this lawsuit is about: its unlawful retention of unearned insurance *premiums*. This

Court should require LOTS to answer this RFA or deem it admitted. *House*, 232 F.R.D. at 262

("Requests for admission are not games of 'Battleship' in which the propounding party must

guess the precise language coordinates that the responding party deems answerable.").

> LOTS's response to RFA 21 is likewise deficient. RFA 21 states:

> Please admit that You have obtained an insured's loan termination date from a
> lender to which an insured's loan has been assigned.

Def.'s Resp. to Pl.'s Req. for Admis. 21, ECF No. 137-2. LOTS responded:

> LOTS objects that this Request is vague as to whether it is asking if LOTS obtains
> insureds' loan termination dates from lenders in the normal course of business, or
> if it is asking if LOTS has ever, in the history of its business, obtained an
> insured's loan termination date from a lender. Subject to this objection, LOTS
> admits that some lenders have sent letters to their customers listing a date that,
> according to the lender, the amount financed was paid in full. Sometimes, LOTS
> is copied on those letters.

*Id.* This response is also disingenuous. Plaintiff is plainly seeking a response as to whether

LOTS has ever obtained loan termination dates from a lender, at any time.[6] LOTS's non-

responsive "qualification" of its response not only recasts Plaintiff's request into something the

Plaintiff did not ask, but it obscures the issue of whether *LOTS itself* has ever affirmatively

sought out loan termination dates from lenders.

> C. *LOTS Avoids Answering RFAs About Its Contractual Obligations to Refund*
> *Unearned Premiums*

> LOTS also avoids answering questions about its interpretation of the insurance contracts

at issue in this case. For example, in RFA 14, Plaintiff asks:

> Please admit that under the terms of the Lawson Policy, Plaintiff is entitled to a
> return or credit of unearned premiums if the debt to which the Lawson Policy
> relates stops before the term of the Lawson Policy expires.

_____

[6] The question of whether insurers have the ability to obtain its insureds' loan termination dates
has been an issue in other similar credit life insurance class actions. *See, e.g., Buckner v. Res.
Life Ins. Co.*, Order at 2, Oct. 29, 2009, ECF No. 136-16.

Def.'s Resp. to Pl.'s Req. for Admis. 14, ECF No. 137-2.  LOTS responded:

> Denied as written.  The terms and conditions of the "Lawson Policy" speaks for itself.

*Id.*  An RFA geared towards determining how a party interprets a contract is perfectly appropriate under Federal Rule of Civil Procedure 36.  *See, e.g.*, *Booth Oil Site Admin. Group v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80 (W.D.N.Y. 2000) ("[A] request directed to another party seeking an admission or denial of a document's meaning or intent by that party as stated in the request relates to a statement [of] fact, and is authorized by Rule 36.").  Plaintiff deserves answers, not excuses, regarding RFAs 4, 5, 14, and 16.  *See House*, 232 F.R.D. at 262 ("A favorite excuse for not answering requests for admission in a contract case is that 'the document speaks for itself.'").

### III.    Conclusion

LOTS's deficient responses to Plaintiff's RFAs do nothing more than further its overall goals of obfuscating the truth and delaying this litigation.  LOTS should be required to answer Plaintiff's Requests, even if doing so will undermine LOTS's position as to class certification or the merits of the underlying cases.  *Cf. Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992) (noting that if a party "is served with a request for admission of a fact that it now knows to be true," late in discovery or when trial is imminent, "it must admit that fact, even if that admission will gut its case and subject it to summary judgment"); *see also Booth*, 194 F.R.D. at 80 ("[T]he fact that an admission, provided in response to a request, may prove decisive to the case is no ground for refusal to respond.").

If LOTS truly believes any issue inquired about in Plaintiff's RFAs is genuinely in dispute, it should simply answer "denied."  If the matter is genuinely disputed, LOTS "runs no

risk of sanctions . . . since Rule 37(c) provides a sanction of costs only when there are no good reasons for a failure to admit." Fed. R. Civ. P. 36 advisory committee's note. What LOTS should *not* do is offer RFA responses so incomplete and evasive that they prompt the filing of Rule 36 motion—and then use its response to such motion as a vehicle not to address its deficient responses, but to attack the propriety of class certification. For these reasons, and for all of the reasons contained in Plaintiff's Motion Regarding the Sufficiency of Defendant's Answers and Objections to Plaintiff's Request for Admission, Plaintiff respectfully requests that the Court grant relief under Rule 36 and either (1) require LOTS to answer appropriately or (2) deem LOTS's deficient responses admitted.

Respectfully submitted, this 29th day of May, 2012.

BUTLER, WOOTEN & FRYHOFER, LLP

*s/ Joel O. Wooten*

James E. Butler, Jr.
Georgia Bar No: 099625
Joel O. Wooten
Georgia Bar No: 776350
Brandon L. Peak
Georgia Bar No: 141605
Kate S. Cook
Georgia Bar No: 280584
PO Box 2766
Columbus, GA 31902-2766
T: 706-322-1990

CHARLES A. GOWER, PC
Charles A. Gower
Georgia Bar No: 303500
Teresa T. Abell
Georgia Bar No: 000383
PO Box 5509
Columbus, GA 31906
T: 706-324-5685

PHILIPS-BRANCH
Ben B. Philips
Georgia Bar No: 575550
P.O. Box 2808
Columbus, GA 31902
T: 706-323-6461

OATES & COURVILLE
Samuel W. Oates, Jr.
Georgia Bar No: 548250
P.O. Box 20
Columbus, GA 31902
T: 706-327-8000

VANSANT & CORRIERE, LLC
Alfred N. Corriere
Georgia Bar No: 188650
PO Box 347
Albany, GA 31702
T: 229-883-6800

**ATTORNEYS FOR PLAINTIFF**

9

## CERTIFICATE OF SERVICE

This is to certify that on May 29, 2012, I electronically filed the within and foregoing *Plaintiff's Reply to Defendant's Response to Plaintiff's Motion Regarding the Sufficiency of Defendant's Answers and Objections to Plaintiff's Requests for Admission* with the Clerk of Court using the CM-ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Lee E. Bains, Jr.
Jeffrey M. Grantham
Charles Andrew Kitchen
Lorrie Lynn Hargrove
Thomas J. Butler
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL  35203-2618

Jerry A. Buchanan
Benjamin A. Land
Trisha Hargrove
BUCHANAN & LAND, LLP
Post Office Box 2848
Columbus, GA 31902

This 29th day of May, 2012.

BUTLER, WOOTEN & FRYHOFER, LLP

*/s/ Joel O. Wooten*
JOEL O. WOOTEN
Georgia Bar No. 776350

10