IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| BARBARA ELIZABETH LAWSON, | ) | |
| Individually, as Executor of the Estate of | ) | |
| Jerry Lawson and on behalf of a class | ) | |
| of all persons similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | |
| | ) | File No. 4-06-CV-42 |
| LIFE OF THE SOUTH INSURANCE | ) | |
| COMPANY, a Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE OR DISMISS PLAINTIFF'S CLASS ACTION ALLEGATIONS OR, IN THE ALTERNATIVE, TO DENY CLASS CERTIFICATION

Defendant Life of the South Insurance Company ("LOTS") continues to bring up the two district court rulings in *Bishop's Property and Investments, LLC v. Protective Life Insurance Company*, 255 F.R.D. 619 (M.D.Ga. 2009) ("*Protective Life*") and *Adams v. Monumental General Casualty Company*, 2009 WL 383625 (M.D.Ga. 2009) ("*Monumental*"). Those decisions reflect one judge's opinion which, though entitled to respect, is not dispositive. Balanced against that opinion are the irrefutable facts that in cases virtually identical to the pending case:

(a)     One Georgia judge has certified a class against each of three credit insurance

companies,[1] two of which class certification orders were upheld by the six

---

[1] Superior Court Judge Douglas Pullen in *Toole v. JMIC Life Insurance Company* ("*JMIC*"), Civil Action No. SU 2003-CV-246 (Superior Court, Muscogee County), in *Buckner v. Resource Life Insurance Company* ("*Resource Life*")*,* Civil Action No. SU 04-CV-241-7 (Superior Court, Muscogee County), and in *Pierce v. Universal Underwriters Life Insurance Company*

judges of two separate panels of the Georgia Court of Appeals;[2] the notice of appeal filed in the third case was withdrawn because the case settled;[3] the seven justices of the Georgia Supreme Court unanimously denied certiorari in one of those cases;[4] and the certiorari petition was attempted to be withdrawn in the other because the case settled.[5] That's a total of fourteen judges who clearly disagreed with the *Protective Life* and *Monumental Life* opinions.

(b)    Two Minnesota judges have agreed to class certification against yet another credit insurance company,[6] which class certification the seven justices of the Supreme Court of Minnesota unanimously declined to review.[7] That's nine more judges who reached a different opinion – for a total of 23.

(c)    Two Georgia judges have also entered issue preclusion sanctions orders against three credit insurance companies for the same misconduct which LOTS has clearly committed and intends to try to defend,[8] the first two of which orders were likewise affirmed by the judges of two separate panels of

---

("*Universal Underwriters*")*,* Civil Action No. SU 03-CV-377 (Superior Court, Muscogee County)*.*

[2] *See J.M.I.C. Life Insurance Co. v. Toole,* 280 Ga. App. 372, 634 S.E.2d 123 (2006) (Judges Miller, Johnson, and Ellington); *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 698 S.E.2d 19 (2010) (Judges Blackburn, Barnes, and Bernes).

[3] *See* Exh. 1, *Universal Underwriters.*, Ga. Court of Appeals No. A07A1891 (appeal dismissed February 29, 2008).

[4] *See* Exh. 2, *JMIC,* 10/30/06 Order denying cert.

[5] *See* Exh. 3, *Resource Life Appellant's Notice of Consent to Appellee's Motion to Remand Based on Settlement*; and June 30, 2010 Court of Appeals Order.

[6] *Lee v. Life Investors Insurance Company* ("*Lee*")*,* MN S. Ct. Case No. A05-1072, District Court, Fourth Judicial Circuit, Judge Cara Lee Neville and Judge William R. Howard.

[7] *See* Exh. 4, *Lee v. Life Investors Insurance Company,* 9/28/05 Order.

[8] *See* Exh. 5, *JMIC* 10/2/07 Order issued by Superior Court Judge Douglas Pullen; Exh.6, *Resource Life* 10/29/09 Order imposing sanctions; and *Parker v. Life Investors Insurance Company*, Civil Action No. SU 04-CV-3687-6 (Superior Court, Muscogee County), 11/24/08 Order issued by Superior Court Judge John D. Allen [Pacer Doc 136-17].

the Georgia Court of Appeals (the third such order was not appealed, as the

case *then* settled).

(d)      Of the eleven cases in which counsel for plaintiffs herein were themselves

involved, *ten settled*[9] – as a direct result of court orders, either favorable to

class certification or imposing sanctions against the defendant, including one

case before the same judge who issued the *Protective Life* and *Monumental*

opinions, and who approved that settlement.[10]   The credit insurance

defendants obtained a favorable order *in only two*.

In every case, the defendant credit insurance company and its counsel pursued almost

identical strategies and tactics – one of which was to obstruct and delay – including repeated

attempts to obtain appeals.[11]   Defendant's most recent Motion to Dismiss, a repeat of

---

[9] *See Carrier v. American Bankers Life Assurance Co. of Fla.,* 1:05-CV-00430 (D.N.H.) (settled
in Superior Court, Muscogee County after district court issued order denying class certification,
but without prejudice and finding lack of evidence regarding numerosity and adequacy only);
*Hansen v. Monumental Life Ins. Co.*, 3:05-CV-01905 (D.Conn.) (settled after order granting
multi-state class certification).   *See also Baker v. American Heritage Life Ins. Co.*, Civil Action
No. 4:05-CV-00128 (M.D. Ga.)*; Perkins v. American National Ins. Co.,* Civil Action No. 3:05-
CV-100 (M.D. Ga.)*; JMIC, supra; Lee, supra; Parker v. Life Investors Ins. Co. of America,* Civil
Action No. SU 04-CV-3687-6 (Superior Court, Muscogee County)*; Carter v. North Central Life,*
Civil Action No. 1:05-CV-399 (D.N.H.) (settled in Superior Court, Muscogee County)*; Resource
Life, supra; Universal Underwriters, supra.*
[10] *Perkins v. American National, supra.*
[11] By way of two examples: in *JMIC*, class certification was granted on October 20, 2004,
approximately one year after the complaint was filed.  The defendant appealed the certification,
which was affirmed by the Georgia Court of Appeals on July 10, 2006 and for which the Georgia
Supreme Court denied certiorari on October 30, 2006.  Rather than continue to litigate the merits
phase of this action, however, the defendant chose instead to quit the credit insurance business
and sell off its interest at a substantial diminution in value, thus dissipating the assets available
for class recovery.  When the trial court entered an order ameliorating some of the effects of the
defendant's conduct, the defendant attempted to stall the entire litigation by mischaracterizing
the nature of the trial court's order and seeking immediate interlocutory review to the Georgia
Supreme Court.  Although the supreme court eventually transferred the case to the court of
appeals, which then dismissed the appeal as improper, the defendant had managed to stall the
litigation for several additional months before settling the case.  *See* Exhs. 7 a - b, *JMIC* 3/16/07

Defendant's 2008 Motion to Dismiss which this Court denied [see Pacer Doc. 48], is nothing more than a continuation of this strategy.  For the same reasons this Court denied Defendant's first Motion to Dismiss [Pacer Doc. 6], the Court should deny Defendant's current Motion.

## I.   Defendant's Current Motion is Not Asserted for any Proper Purpose and Should Be Denied.

"The lady doth protest too much."[12]  LOTS devotes a fourth of its briefing to convincing the Court that it may properly launch a ***third*** attempt to have Plaintiff's claims dismissed for failing to fulfill notice requirements.  *See* Pacer Doc. 6, 6/9/06 Motion to Dismiss; and Pacer Doc. 49, 7/3/08 Motion for Reconsideration of Order Denying Motion to Dismiss.  Predictably, Defendant also string cites a plethora of cases generally holding that, *at some time* a court *somewhere*, under completely different circumstances, dismissed or struck a plaintiff's class claims or preemptively denied class certification.  See Mot. to Dismiss [Pacer Doc. 143] at 2-4; 12-14.  Noticeably absent from LOTS' briefing, however, is a procedural background for this case.  LOTS fails to mention that shortly after the publication of the *Protective Life* and *Monumental* Orders, the very same Orders which LOTS now claims are iron-clad and dispositive of all class claims in this case, LOTS did not again renew its Motion to Dismiss.  It opted instead in early March of 2009 to file its Motion to Compel Arbitration [Pacer Doc. 63] and Motion to Stay pending the Court's ruling [Pacer Doc. 66].  That decision paid off for LOTS: despite ultimately losing the battle, LOTS gained two years and eight months of delay in the war, during

---

Asset Dissipation Order; 1/15/08 COA Op.  Likewise, in *Resource Life*, the defendant's strategy was to dissemble, distract and delay.  This plan worked for a while—over five years elapsed from the filing of the plaintiff's complaint and  the resolution of the case—but the defendant's steadfast refusal to meaningfully participate in discovery coupled with its blatant dissipation of assets eventually resulted in an sanctions  order affirmed by the court of appeals.  *See* Exhs. 8 a-c, *Resource Life* 10/14/09 Asset Dissipation Order; 10/29/09 Order on MFS; 6/30/10 COA Op..
[12] Hamlet, Act III, scene II.

which time LOTS knew full well the documentation for thousands of loan termination dates would be lost.  *See* Pl.'s Mot. Preserve Evid. [Pacer Doc. 107].

Federal Rule of Civil Procedure 23(d) allows Courts to issue any order deemed necessary "to prevent undue repetition or complication in presenting evidence or argument."  Fed. R. Civ. P. 23(d)(1).  Plaintiff respectfully submits that LOTS' resurrection of a twice denied motion, filed more than thirty-three months after the supposedly dispositive *Protective Life* and *Monumental* Orders were issued, is unduly repetitive.   Moreover, LOTS has acknowledged that it filed this Motion as a means to avoid its obligation to comply with Plaintiff's discovery requests.  *See* Def.'s Resp. Pl.'s Mot. Compel [Pacer Doc. 146] at 1; Def.'s Mot. Rule 26 Relief [Pacer Doc. 145].  This admitted strategy is the total embodiment of creating "complication in presenting evidence" pertaining to Plaintiff's Rule 23 claims.  *Id*.   For these reasons alone, Defendant's Motion should be denied.

## II.   There Are No Grounds Supporting the Dismissal, Striking or Denial of Plaintiff's Class Claims.

Applying uniform breach of contract law across the states will not result in a different outcome in this case than if each State's laws were separately applied.  While it can certainly cite each state's laws, LOTS cannot show that the outcome of this case will be any different under those laws than it will be applying Georgia law.  There is therefore no conflict of law impediment to certification of a class in this case.

> A court must make a choice of law determination, in the first instance, when a controversy and the parties thereto have contacts with states other than, or in addition to, the forum state, and the interested other state's substantive laws are in conflict with the forum state; *i.e., they would lead to a different result.*

*Newberg on Class Actions*, § 13:37, p. 438 (4th ed. 2002) (emphasis added).  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985), held that a court must determine whether its state law

5

conflicts *in any material way* with any other law that could apply. If no material conflict between the laws exists, then, the forum state may apply its own law even if there are no significant contacts with the forum state. *Id.*; *Newberg*, § 13:35, p. 434; *see also Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1388 n.17 (11th Cir. 1988) ("We need not decide the choice of law issue, however, because both states have the same standard for waiver…").   Additionally, *Sun Oil Co. v. Wortman*, 486 U.S. 717, 730-31 (1988), held that a forum state could construe and apply the law of another state so long as the clearly established law of the other state is not contradicted.   "'[False] conflict' really means 'no conflict of laws.'   If the laws of both states relevant to the set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict between them."   *Shutts* at 839 n.20 (Stevens, J. concurring) (*quoting* R. Leflar, *American Conflicts Law* § 93, p. 188 (3d ed. 1977) *and citing* E. Scoles & P. Hay, *Conflict of Laws* § 2.6, p. 17 (1982)); *see also Eldon Indust., Inc. v. Paradies & Co.*, 397 F. Supp. 535, 538 (N.D. Ga. 1975).

The questions therefore properly before the Court are: (1) *Are there* conflicts between the states' laws applying to breach of form contracts?; (2) If so, do any of the conflicts *materially* affect the outcome of the subject breach of contract claim?; and (3) As it applies to class certification, do any material differences *predominate* over the issues common to the class? LOTS has not proved there are any material conflicts, let alone any which predominate over issues common to the Class.

### a. Breach Of Contract Law Is Uniform

It is well established that "[b]reach of contract claims are certifiable as appropriate for class action." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 692 (N.D. Ga. 2003).[13]  In Georgia, "[t]he elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken." *Access Equipment* at 839 (citations omitted); *see also Budget Rent-A-Car v. Webb*, 220 Ga. App. 278, 469 S.E.2d 712 (1996).  Plaintiff has shown there is no material difference in the elements for breach of contract among any relevant jurisdictions.  *See* Exh. 9, Table.  Furthermore, even "'[t]he fact that not all contracts are identical is not sufficient to overcome the apparent commonality of issues that they present.'"  *Collins*, 168 F.R.D. at 676 (quoting *Kleiner*, 97 F.R.D. at 694-95).  *See also* Exh. 10 at 11-17.

### b. Differing State Statutes Do Not Preclude Certification In This Case

Any supposed differences in state statutes are irrelevant to Plaintiff's contract law claims which rely exclusively on LOTS' explicit agreement to refund unearned premiums.

> An exception is made to the rule that the statute prevails over the terms of the contract where the provision of the policy which conflicts with the statute is more favorable to the insured. In such case, the policy provision prevails and is enforced.  Similarly, a statute which makes a liability insurer directly responsible to a person injured by the insured, notwithstanding provisions to the contrary in the policy, is obviously for the benefit of the injured person and gives no occasion for disregarding the actual terms of the policy as to rights and liabilities between the insurer and the insured.

*See* 2 Couch on Ins. § 19:3.  *See also* Exh. 11, State Statue Table; Exh. 12, Order, *Carrier v. American Bankers Assurance Co. of Florida*, Civil No. 05-cv-430-JD (D.N.H. Feb. 1, 2008) at 30-31 (finding state statutes requiring creditors to refund unearned premium do not prohibit

---

[13] *See also Upshaw v. Ga. Catalog Sales, Inc.*, 206 F.R.D. 694, 700-01 (M.D. Ga. 2002); *Mick v. Level Propane Gases, Inc.*, 203 F.R.D. 324, 330-31 (S.D. Ohio 2001); *Collins v. Int'l Dairy Queen, Inc.*, 168 F.R.D. 668, 676 (N.D. Ga. 1996); *Kleiner*, 97 F.R.D. at 691-93.

certification of proposed twelve-state class of Iowa, Idaho, Kansas, Maine, Michigan, Montana, North Dakota, New Hampshire, New Jersey, Ohio, Oregon, Rhode Island and Texas); Exh. 10 at 18-20

### c.   Any Notice Requirements in the Subject Certificates Do Not Warrant Striking Plaintiff's Class Claims

For the reasons detailed in Plaintiff's Response to Defendant's first Motion to Dismiss [Pacer Doc. No. 23] and Plaintiff's Response to Defendant's Motion for Reconsideration regarding this Court's denial of its first Motion to Dismiss [Pacer Doc. No. 50], there is no latent notice requirement in any certificate of insurance which is silent on this matter.  To the extent there is express contractual language purportedly addressing notice as a condition of receiving a refund,[14] two things are clear:  (1) the majority of LOTS' certificates contain substantially similar refund provisions containing absolutely no notice requirement, *see* Exh. 13, Table; and (2) LOTS has identified no clauses requiring *pre-suit notice as a condition precedent to receiving a refund*.[15]  *See* Def.'s Brf. [Pacer Doc. 143] at 7-8.  For purposes of this lawsuit, at least two events have provided and will provide LOTS with notice and/or knowledge of a claim for unearned premiums due to early payoff.

First, the filing of this class action Complaint provided LOTS with constructive notice

---

[14] LOTS implies that certain certificates materially differ in their notice requirements because, although the wording of the certificates is uniform, the font type and formatting of the words differs.  *See, e.g., *Def.'s Brf. at 7-8 (noting that some certificates contain bold or underlined language, or the language appears in a different location within the certificate).  Plaintiff is quite frankly confused as to why such deviations would be significant enough to mention, let alone result in individualized inquiries.

[15] Even if the Court finds that some isolated certificates do contain an express condition precedent, these few certificates can easily be excluded from the class.  This is a more appropriate solution than the wholesale denial of class certification.  *See, e.g., In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 141 (2d Cir.2001); *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 39-40 (1st Cir. 2003) (emphasis added); *see also Avery v. Uniroyal Technology Corp.*, 2005 WL 1205607, *5 (M.D. Fla., May 20, 2005).

that all class members may be owed refunds.  In *Toole,* the Georgia Court of Appeals found that

the filing of a class action complaint can provide sufficient notice to allow a credit insurance

unearned premium refund case to proceed as a class action.  280 Ga. App. at 373-74.  Other

courts have also found that the filing of a class action complaint satisfies a notice provision, even

if that provision includes a specific time frame.  *See Powers Law Offices, PC v. Cable &*

*Wireless USA, Inc.* 326 F. Supp. 2d 190, 194 (E.D. Mass. 2004) (holding that filing of class

action complaint satisfied specific 45-day notice requirement for consumer and noting that

"courts have readily found that the filing of a complaint satisfies notice provisions"); *see also*

*Strzakowlski v. General Motors Corp.,* 2005 WL 2001912 (D.N.J. Aug. 16, 2005) (filing of class

action provided notice).  If filing a class action can satisfy a real notice provision that contains a

specific time deadline, surely filing a class action satisfies any concerns over proper notice when

LOTS' notice provisions, to the extremely limited extent they are included in LOTS' form

contracts, do not contain a specific time deadline.  Certainly several courts have determined this

to be true.  *See supra at* 1-3.

Furthermore, by analogy, courts in the vast majority of jurisdictions acknowledge that

filing a class action tolls the statute of limitations for absent class members.  *See State v. Private*

*Truck Council of Am., Inc.*, 258 Ga. 531, 533, 371 S.E.2d 378, 380 (1988) ("when a class action

is filed, the statute of limitations for the action is tolled for all asserted members of the class

during the pendency of the action.  The tolling of the statute of limitations permits class members

to rely on the class action to protect their rights without concern that the statute of limitations on

their individual claims will have run should class certification ultimately be denied."); *but see*

*Casey v. Merck & Co., Inc.*, 283 Va. 411, 722 S.E.2d 842, 845 (2012).[16]  If the filing of a class action complaint is powerful enough to prevent a defendant from asserting a statute of limitations defense against similar claims, surely it is vigorous enough to place that defendant on notice that similar claims exist.

Second, before LOTS is required to refund a penny in compliance with the Court's declaration of the rights of the class members, it undoubtedly will have received specific notice of an early payoff for each and every person the company ends up having to pay through either the reconciliation of lender or credit reporting data with Defendant's own records, or through the self-reporting of class members.

Third, *Protective Life* established that credit insurers such as Defendant have the ability to discover the fact and date of their insureds' loan terminations.  *See, e.g.,* [Pacer Doc. 136-15]*,* 8/31/07 *Protective Life* Order.  Practically speaking, therefore, LOTS has always been able to "find out" about a loan's termination simply by periodically asking lenders to provide this data.  The fact that LOTS has refused and continues to refuse to take any affirmative steps to apprize itself about a loan's early termination to avoid refunding unearned premiums is no small detail when considering its argument that it should be allowed to retain literally millions of dollars of unearned premiums because its insureds did not knock down LOTS' doors demanding a return of their premiums.  LOTS calculatedly and willfully has avoided discovering the very information necessary for it to satisfy a contractual provision beneficial to its insureds but detrimental to it.

---

[16] To Plaintiff's knowledge, Virginia is the only state that has ruled the filing of an out of state class action does not toll the applicable statute of limitations for Virginia class members.  Even so, statutes of limitations issues are procedural and therefore Georgia's statute may be utilized in this Action.  *See Sun Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988) ("This Court has repeatedly held that the Constitution does not bar application of the forum State's statute of limitation to claims that in their substance are and must be governed by the law of a different State.").

To the extent LOTS claims that it is entitled to keep unearned premiums unless it expressly receives notice or knowledge of early termination (and without being required itself to undertake the most minimal of inquiries), this argument cannot stand.  The contracts at issue are insurance contracts which Defendant itself drafted.  Therefore, any conflict or confusion in the insurance contract must be resolved against the interest of the Defendant as drafter of the document, and so any such "notice" provision must be ignored.  *See Travelers Ins. Co. v. Mixon*, 118 Ga. App. 31, 33, 162 S.E.2d 830, 830 (1968).  *See also* Exh. 14, *Contra Proferentum* Law Appendix.  To do so is both logical and just.  Any other holding would allow Defendant to benefit and profit from its deliberate scheme to remain willfully ignorant of early terminations, rather than affirmatively finding out the status of its insured loans so that it could fulfill its contractual promise to pay refunds upon early termination, by retaining unearned premiums to which Defendant is not entitled and to which Defendant can never be entitled.

i.      *The small number of varying notice provisions do not create individualized inquiries.*

LOTS has given only four examples of certificate language addressing some form of "notice," conceding that most certificates do not even arguably require notice as a condition precedent to entitlement to an unearned premium refund.[17]  *See* Def.'s Brf. at 7-8.  The majority of courts considering these general notice provisions have determined the provisions do not substantively impact the asserted breach of contract claim.  *See supra* at 1-3.

Although the Court should not consider the merits of Plaintiff's claim at this stage, it bears noting for the Court's analysis of uniformity that the few certificates provided by LOTS

---

[17] To the extent the Court determines that any certificate identified in LOTS' Briefing contains a true condition precedent, *see* n.15, *supra.* and n.19 *infra.*

clearly and on their face do not impose any time limitation for the receipt of such notice or any condition precedent upon LOTS' *liability* for refunding the unearned premium.

### d.  Variation in the Certificates Concerning Which Entity Should Make Refunds Does Not Defeat Class Certification

Regardless of whether the subject certificates provide LOTS or a creditor are obligated to make the unearned premium refund, *see* Def.'s Brf. [Pacer Doc. 143] at 9, LOTS *indisputably* bears the ultimate responsibility to ensure the unearned premiums *it* is holding are properly refunded to *its* insureds because that is what it contractually obligated itself to do.  *See* Exh. 15, Lawson Certificate at 2; Exh. 13, Table of LOTS Certificates.  Both the subject certificates and common sense mandate this conclusion.  There are only two contracting parties to the subject certificates: *LOTS and the insured*.  LOTS plainly promises in each certificate that its insured will receive an unearned premium refund upon early loan termination.  This duty is non-delegable: LOTS' certificates cannot legally bind any nonparty to fulfill LOTS' own obligation. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").  Therefore, this difference in wording does not destroy commonality or predominance.  Again, the majority of Courts considering this question have agreed with Plaintiff on this point.  *See supra* at 1-3.

### e.  Variation in the Certificates Concerning To Whom Refunds Should Be Made Does Not Defeat Class Certification

Every refund contemplated by the subject certificates is or will be made for the ultimate benefit of the insured; whether refunds pay down an insured's account or go directly into an insured's pocket, LOTS is still obligated to make the refund.  Furthermore, the inquiry regarding *who* should receive the refund is merely academic for purposes of the proposed Class and the

relief sought.  This is because most of the putative Class implicated by Plaintiff's 23(b)(3) claim have, like Plaintiff, terminated their insured loan.  There will therefore be no outstanding account balance to which a refund can be applied.  Likewise, if Plaintiff's (b)(2) class is certified and injunctive relief imposed, LOTS will know, or will be able to know, to whom a refund should be given because LOTS will be making these refunds much closer to the actual loan termination date and will be compelled to have adequate procedures for determining this information.  .

> **f.   Variations or Silence As to the Timing of Unearned Premium Refunds Does Not Preclude Certification**

All Plaintiff is asking on behalf of herself and the putative Class is for LOTS to make a refund of unearned premium *now*.  Allowing LOTS to hide behind its failure to pay "promptly" or within a designated time period in its certificate defies the clear meaning and intent of the certificate language and results in an absurd reading of the contract.  *See, e.g., Aerojet-General Corp. v. Askew*, 511 F.2d 710, 722 (5th Cir. 1975) ("It is elementary contract law, however, that a contract should not be construed to yield absurd results.").  In other words, the word "promptly" or the imposition of a given time limit for LOTS to make such a refund was obviously meant to benefit *insureds*, not LOTS.  LOTS' argument amounts to absurdly claiming that LOTS should be allowed *to permanently retain money* belonging to its insureds *because* LOTS promised to make refunds to some insureds more quickly than to others *even though LOTS failed to do so*.

> **g.   Different Formulas for Calculating Refunds and Minimum Refund Laws Are Easily Applied and Do Not Rise to Individual Issues.**

With the fundamental issue here being so simple, only a few real "choice of law" issues exist with respect to the Plaintiff's breach of contract claim, and those few are easily addressed. None of the minor differences in applicable law concerning the calculation of refunds or *de*

*minimis* amount of refund prevents certification.  *See Steinberg,* 224 F.R.D. at 78 ("Variances in the states' contract laws such as differences in statutes of limitations, do not preclude class certification.")

Applying different methodologies to calculate the refund based on the law of the state in which the policy was issued can likewise be done by computer, and in fact *is* done by computer, by LOTS and other credit insurers.  *See* Exh. 16, at 140-46, *Protective Life* Deposition of L. Hallissey.  No differences in state law affect the only factual issue in this case – whether a class member's loan terminated before the insurance coverage expired.  Once that controlling issue is determined, the proper minimum refund laws and applicable methodology for calculating refunds are easily applied.

### III.     Individualized Inquiries

LOTS asserts that individualized inquiries are needed to determine the exact amount of unearned premiums that must be refunded to each class member.  *See* Def.'s Brf. at 16-18. However, the Eleventh Circuit has already considered, and rejected, a similar argument:

> The final factor expressly specified in Rule 23(b)(3) that courts must weigh in deciding to certify a class action is whether certification will cause manageability problems. This concern will rarely, if ever, be in itself sufficient to prevent certification of a class. Courts are generally reluctant to deny class certification based on speculative problems with case management.  Even potentially severe management issues have been held insufficient to defeat class certification.

*Klay,* 382 at 1272-73 (internal citations and quotations omitted) (citing *In re Thermagenics Corp. Sec. Litig.,* 205 F.R.D. 687, 697 (N.D.Ga.2002) ("Certification cannot be denied because the number of potential class members makes the proceeding complex or difficult.")).

LOTS paints a complicated and horrific picture of this Court having to delve into the personal lives and stories of hundreds of thousands of insureds and their lenders against a

14

backdrop of drastically varying jurisdictions "scattered across the United States."  As in every other credit insurance case litigated by Plaintiff's counsel, and as discovery will show in *this* case if Defendant is made to produce documents responsive to all Plaintiff's requests, determining whether an insured in fact prepaid his or her loan and is due a refund, as well as the amount of that refund, requires nothing more than inputting the loan termination date into LOTS' own computer algorithm *See* Pl.'s Mot. Preserve Evidence [Pacer Doc. 107]; *see also, e.g.,* Exh. 16, Hallissey Depo Excerpts at 140-43; 146.  The issue of whether Plaintiff or Defendant will be responsible for obtaining the loan termination dates is an issue that need not be addressed at this stage of litigation.

     And what are these "critical issues" of differing state law that LOTS insists will result in an inexorable legal morass?  Differing calculations for refunds and variations in *de minimis* refund laws.  As stated above, the Court can easily manage the differing state laws as they apply to the minimum refund amounts and *de minimis* refund amounts.[18]  *See supra* at 13-14.

     a.   **Defendant's Citations to "Recent Controlling Decisions Rejecting Class**
          **Certification" Have No Bearing on the Facts and Analysis of This Case**

     Plaintiff is not intending to move for class certification on her unjust enrichment claim.  Defendant's citation to *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009), is therefore irrelevant to any issue before this Court.  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F. 3d 1159 (11th Cir. 2010), cited by Defendant, concerned class action allegations for contracts between  an HMO and approximately 260 hospitals that were each *individually negotiated.  See id.* at 1171-72.  Because each contract was individually

-----

[18] LOTS also vaguely alludes to an argument made in the *Protective Life* briefing concerning variations in state statutory law regarding whether a creditor and/or an insurer is obligated to refund unearned premium.  *See supra* at 7-8.

negotiated under separate terms and distinct understandings, it is no small wonder the Eleventh

Circuit held that those particular claims would necessitate consideration of extrinsic evidence.  In

spite of Defendant's extolling of *Sacred Heart* as the death knell for all breach of contract class

actions, two subsequent district court orders distinguishing *Sacred Heart* clearly illustrate the

propriety of certifying breach of contract class actions in this Circuit.  In *In re Checking Account*

*Overdraft Litigation*, 275 F.R.D. 666 (S.D. Fla. 2011), the district court certified a nationwide

breach of contract class and noted:

> [In] *Sacred Heart*, . . . there were substantial variations in the terms of over 300
>
> hospital contracts *that were individually negotiated*, leading the court to find that
>
> "the diversity of the material terms is overwhelming." In contrast, the agreements
>
> at issue here are uniform form contracts offered on a take-it-or-leave it basis and
>
> were not the product of any individual negotiation.   ("It is the form contract,
>
> executed under like conditions by all class members, that best facilitates class
>
> treatment.").

*Id. at* 677 (emphasis added).[19]

In *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 2012 WL 602728 (M.D. Fla., Feb. 24,

2012), the district court certified a breach of employment contract case on behalf of Mexican

migrant workers who alleged the defendant-employer did not pay them minimum wage.  *See id.*

at *6.  In response to the defendant's argument that certification was improper "because each

worker's individualized proof of compensation and the hours he worked is required to establish

---

[19] The district court also found that individual inquiries did not predominate over common
questions of fact and law because of the defendant-bank's "standard re-sequencing policy
resulted in uniform conduct directed at all members of the class."  *Id.*  Plaintiff has requested
documents and information from Defendant about precisely this issue of Defendant's
administrative policies and practices; Defendant refuses to produce them.  *See, e.g.,* Def.'s Resp.
Pl.'s Mot. Compel [Pacer Doc. 146] at 24-25, 27-29

liability," the district court observed: "Notably, the Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat class certification." *Id*.  "[I]ndividualized damages issues are of course least likely to defeat predominance where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods." *Id*.  This is exactly the case here.

### b.  Plaintiff's 23(b)(2) Class Allegations Are Proper and Should Stand

A class should be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  Although the subsection contemplates declaratory and injunctive relief, it does not preclude monetary relief:

> This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate···· The subdivision does not extend to cases in which the appropriate final relief relates exclusively or *predominantly* to money damages.

Fed. R. Civ. P. 23(b)(2), advisory committee note (1966) (emphasis added).

In *Cooper*, the Eleventh Circuit held that claims for money damages could be asserted in a (b)(2) class action if the damages were incidental to Plaintiff's claims for equitable and/or declaratory relief.  390 F.3d at 720.  "By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief.... Liability for incidental damages should not ... entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions." *Id.* (alterations in original).

The instant action undeniably seeks to redress a group-wide injury that, even now, is continuing to be perpetrated on unsuspecting insureds who have terminated their underlying insured loans early.  Because LOTS admits that it still does not refund unearned premiums to insureds who terminate their loans early unless LOTS is expressly notified of this occurrence, a significant group of LOTS' insureds continue to have their hard-earned money wrongfully withheld.  Therefore, Plaintiff's claim for money damages are entirely consistent with, and derive from, Plaintiff's asserted claims for declaratory and injunctive relief to prevent LOTS from wrongfully withholding unearned premiums of its insureds in the future.  *Indeed, if such equitable and declaratory relief is not granted, another putative class of insureds will invariably accumulate after the resolution of this putative class's claims.*  Such a result would be contrary to the purpose this class action and would be unacceptable to any plaintiff reasonably concerned about protecting the rights of insureds who in the future also terminate their underlying insured loans prior to the loans' maturity date.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully submits Defendant's Motion to Strike or Dismiss Plaintiff's Class Action Allegations or, in the Alternative, to Deny Class Certification should be denied.

Respectfully submitted, this 4th day of June, 2012.

BUTLER, WOOTEN & FRYHOFER, LLP

*/s/Joel O. Wooten*
James E. Butler, Jr.
Georgia Bar No. 099625
Joel O. Wooten
Georgia Bar No. 776350

Brandon L. Peak
Georgia Bar No. 141605
Kate S. Cook
Georgia Bar No. 280584
P. O. Box 2766
Columbus, Georgia 31902
(706) 322-1990

CHARLES A. GOWER, PC
Charles A. Gower
Georgia Bar No. 303500
P.O. Box 5509
Columbus, Georgia 31906
(706) 324-5685

PHILIPS-BRANCH
Ben B. Philips
Georgia Bar No. 575550
P. O. Box 2808
Columbus, Georgia 31902
(706) 323-6461

OATES & COURVILLE
Samuel W. Oates, Jr.
Georgia Bar No. 548250
P. O. Box 20
Columbus, Georgia 31902
(706) 327-8000

VANSANT & CORRIERE, LLC
Alfred N. Corriere
Georgia Bar No. 188650
P.O. Box 347
Albany, GA 31702
229-883-6800

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

This is to certify that on June 4, 2012, I electronically filed the within and foregoing

*Plaintiff's Response To Defendant's Motion To Strike Or Dismiss Plaintiff's Class Action*

*Allegations Or, In The Alternative, To Deny Class Certification* with the Clerk of Court using the

CM-ECF system which will automatically send e-mail notification of such filing to the following

attorneys of record:

> Lee E. Bains, Jr.
> Jeffrey M. Grantham
> Charles Andrew Kitchen
> Thomas J. Butler
> Lorrie Lynn Hargrove
> MAYNARD, COOPER & GALE, P.C.
> 1901 Sixth Avenue North
> 2400 AmSouth/Harbert Plaza
> Birmingham, AL  35203-2618
>
> Jerry A. Buchanan
> Benjamin A. Land
> Trisha Hargrove
> Buchanan & Land, LLP
> Post Office Box 2848
> Columbus, GA 31902

This 4th day of June, 2012.

> BUTLER, WOOTEN & FRYHOFER, LLP
>
>
> */s/ Joel O. Wooten*
> JOEL O. WOOTEN
> Georgia Bar No. 776350