Exhibit "5"

FILED

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY

2007 OCT -2 P 4: 45

STATE OF GEORGIA

M. LINDA PIERCE
CLERK OF SUPERIOR COURT
MUSCOGEE COUNTY GEORGIA

| | | |
|---|---|---|
| KEN TOOLE, Individually and on behalf of a class of all persons similarly situated, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action File No: SU 2003 CV 246 |
| J.M.I.C. LIFE INSURANCE COMPANY, a foreign corporation, | * * * | |
| Defendant. | * | |

## **ORDER**

Before the Court is Plaintiff's "Motion for Sanctions for Defendant JMIC's Wilful Failure to Comply With This Court's March 5 and March 8 Discovery Orders." Also before the Court is Defendant JMIC's "Motion For an Extension of Time to Compile the List of Potential Class Members and Related Database."[1] The Court has thoughtfully and extensively considered the briefs and exhaustive arguments of counsel. This Court finds that Defendant JMIC has violated this Court's March 5 and March 8, 2007 Orders. Plaintiff's Motion is therefore GRANTED in part as described herein, but otherwise ruling upon such Motion is reserved. Defendant's Motion is DENIED.

---

[1] This Court notes that Plaintiff's Motion was ripe and originally scheduled to be heard on July 31, 2007. At that time JMIC had utterly failed to produce any information to Plaintiff. Nevertheless, Plaintiff consented to JMIC's request to postpone the July 31, 2007 Hearing to engage in settlement negotiations. Those settlement negotiations were unsuccessful. The Court is mindful of Plaintiff's willingness to postpone the July 31, 2007 Hearing and understands that JMIC had completely failed to comply with the Court's March 5 and 8, 2007 Orders on the dates Plaintiff's Motion was filed and scheduled to be heard. JMIC's belated and incomplete production on August 1, 2007 does not alter this Court's analysis on Plaintiff's Motion for Sanctions. *See Bryant v. Nationwide Ins. Co.*, 183 Ga. App. 577, 578, 359 S.E.2d 441, 443 (1987) ("Once a motion for sanctions has been filed, their imposition *cannot* be precluded by a belated response made by the opposite party.") (emphasis added).

It appears to this Court that JMIC has deliberately and consistently engaged in a course of conduct which was intended to obstruct compliance with this Court's March 5 and 8, 2007 Orders in an attempt to show that the approach contemplated by this Court's Orders will not work. JMIC's attempts have failed since this Court is convinced that the approach will work. This Court's conviction is strengthened by the fact that two other judges presiding over credit insurance class actions have subsequently ordered credit insurers to engage in virtually the same process this Court ordered in its March 5 and 8, 2007 Orders. *See* August 31, 2007 Order in *Bishops Property v. Protective Life Ins. Co.*, Case No. 4:05-CV-126 (M.D. Ga.) (Honorable Clay D. Land) and August 13, 2007 Order in *Parker v. Life Investors Ins. Co. of Am.*, SU-04-CV-3687-6, Superior Court of Muscogee County, Georgia (Honorable John D. Allen). This Court's belief in the methodology set forth in its March 5 and 8, 2007 Orders is further solidified by the undertakings and experience of the Attorney General of Texas and the fact another credit insurer, American National Insurance Company ("ANICO"), has agreed to settle a credit insurance class action in federal court based on the approach ordered by this Court.

Because the approach advocated by Class Counsel and adopted by this Court in its March 5 and 8, 2007 Orders would, had JMIC attempted in good faith to timely comply, lead to the identification of many insureds due refunds of unearned premium and allow calculation of the amounts due each insured, it must be followed. This Court is mindful that JMIC has not proposed any alternative approach to get refunds to the Class Members, despite the fact that the Court certified a Class after Plaintiff demonstrated JMIC is holding unearned premium refunds which belong to JMIC's insureds. Where, as here, JMIC is indisputably holding money which belongs to its insureds, this Court has a duty to the Class to act in the Class' best interests. It is with that duty in mind that this Court approved, and now must enforce compliance with, a

methodology for identifying those Class Members due a refund and getting refunds to as many Class Members as can be found.

The excuses offered by JMIC for its delays in creating the database, inputting into it information retained within JMIC's files, and communicating with dealers to get additional information are not persuasive to the Court. It is undisputed that JMIC failed to produce any of the required information to Plaintiff on June 5, 2007, as this Court's March 5 and 8, 2007 Orders clearly required it to do. That JMIC has not timely complied with this Court's Orders is primarily the result of JMIC's decision to unnecessarily make compliance with this Court's Orders as cumbersome as possible. In addition, although it has been obvious to all since Plaintiff's Motion was first filed on January 12, 2007, and from arguments at the Hearings and in briefs submitted by the parties, that the most important datapoint of all is the loan termination date, JMIC failed to complete its reviews of the insureds' certificates which are in JMIC's own files so as to identify the lenders until August 1, 2007, almost two months after JMIC was ordered to complete the process of obtaining its insureds' loan termination dates and produce that information to Plaintiff. JMIC had more than sufficient time to do that, yet failed to timely complete the process of examining its own files to identify its insureds' lenders. Even now, some 12% of the lenders remain un-identified in the database produced by JMIC on August 1, 2007. More than six months after this Court gave JMIC 90 days to complete the process, JMIC has not even requested loan termination dates from a single lender.

JMIC's Motion for more time, filed on the day compliance was due, is unpersuasive. This Court has concluded that JMIC has not put forward its best efforts to promptly obtain the information it was ordered to produce. This Court is also convinced that JMIC has attempted to make cooperation by dealers burdensome. JMIC has attempted to offload on to dealers the

burden of inputting datapoints that JMIC admits it already has. There is simply no excuse for that. As Plaintiff has argued, that clearly was an attempt to subvert this Court's Orders. In addition, JMIC caused a substantial delay in even contacting dealers by proposing to send to the dealers a form letter which would have put even greater burdens on dealers and would have required they do things not required by this Court's Orders or necessary for the approach adopted by the Court. After Class Counsel rightly objected to JMIC's proposed letters, JMIC waited 21 days, until April 13, 2007, before filing a motion seeking approval of its proposed letters. There is no doubt JMIC engaged in this course of conduct with the willful intention of frustrating this Court's Orders.

JMIC's current actions, coupled with its previous actions and inactions, cause this Court to lack faith that JMIC will ever comply with this Court's March 5 and 8, 2007 discovery Orders. Yet this Court's Orders must be complied with and someone trustworthy must obtain the remaining information this Court's March 5 and 8, 2007 Orders required JMIC to obtain and produce. The circumstances establish, to the satisfaction of this Court, that getting that work done cannot be entrusted to this Defendant. JMIC has a vested interest in dealers and lenders *not* cooperating to provide information: for every insured due a refund who is identified, JMIC may have to pay out money. This Court has concluded that JMIC has attempted to provoke such non-cooperation. It is obviously too much to expect that this particular Defendant will act contrary to its own financial interests, no matter what the Court's Orders require.

JMIC has repeatedly refused to provide any assurance that it will complete the process Ordered by this Court and actually produce the discoverable evidence as ordered, or that it will do so by any date certain, or that whatever it does produce will be in a form admissible in evidence. It was clear to this Court at the September 24 hearing that JMIC has intended and still

intends to produce whatever it ever does produce and then object to the admissibility of the evidence it produces. That is outrageous. Most of the information JMIC has been ordered to produce comes from its own files. The balance would come either from its own dealer/agents' files or is loan termination date information which JMIC was obligated to maintain at all times, as this Court has noted. The obvious purpose of this Court's Orders was to require production of discoverable and admissible evidence. Clearly JMIC has no intention of ever doing that. As a result, despite the passage of nearly seven months since this Court's Orders were entered, JMIC's actions have not moved this case any closer to resolution or trial. Clearly that is precisely what JMIC intended. That is unacceptable.

This Court is convinced that JMIC does not intend to obey this Court's Orders and obtain and produce the information required by this Court's Orders. An example is JMIC's conduct with respect to its former dealers within the Jay Automotive Group ("JAG"). Upon receipt of a letter from JMIC asking for certain information about a list of insureds to whom JAG dealerships sold JMIC credit insurance, JAG endeavored to obtain loan termination date information from lenders. That effort was substantially successful. JMIC's response has been to argue that JAG should not have contacted lenders, to attack the veracity of JAG's claims about its success in getting loan termination information from lenders, and to argue that the loan termination date information obtained by JAG is not admissible in evidence. Regardless of whether JMIC's criticisms of the JAG efforts and results are meritorious or not, the point is that JMIC has sought to disprove that such information was obtained or could be obtained from lenders. But JMIC was under this Court's Order to obtain just that information. In short, JMIC's response to evidence that what this Court ordered to be done can be done has been to protest that JAG is wrong and that it cannot be done. Rather than attempting to comply with the Court's Orders in

good faith, JMIC is still trying to support arguments made and rejected by this Court before it issued its March 2007 Orders. Such a defendant cannot be trusted to do that which the Court ordered.

Accordingly, JMIC has left the Court with no real option other than to select and appoint a Special Master and empower him or her to supervise compliance with the Court's March 5 and 8, 2007 Orders. This Court directs the Special Master to employ Rust Consulting, Inc. ("Rust Consulting") as a Litigation Administrator to obtain the remaining information that is not in the most current and complete version of JMIC's August 1, 2007 database and complete the process set forth in this Court's March 5 and 8, 2007 Orders. The Court is convinced that Rust Consulting has expertise which JMIC lacks which will enable Rust to more completely and efficiently do the work Ordered by this Court. Rust is a well-known national consulting firm which is familiar with the credit insurance business and is already engaged in administering three settlements of substantially identical cases, involving credit insurers ANICO, American General, and North Central. Rust has been approved to serve as settlement administrator in those cases, without objection by those credit insurers, by the Superior Court of Muscogee County (Judge John D. Allen) and the United States District Court for the Middle District of Georgia (Judge Clay D. Land). JMIC does not challenge Rust's capabilities or qualifications.

In addition to obtaining the remaining information, the Special Master and Rust Consulting are hereby Ordered to obtain any additional documentation necessary to substantiate the admissibility of the information obtained pursuant to this Court's March 5 and 8, 2007 Orders. JMIC shall within ten days of this Order identify what documents it believes are necessary to establish the admissibility of information obtained from lenders, including a particular insured's loan termination date.

JMIC is Ordered to make available its most current and complete version of the August 1, 2007 database to the Special Master and Rust Consulting. Rust Consulting will use that database to obtain the missing information and complete the process outlined in this Court's Orders. JMIC is further Ordered to fully cooperate with the Special Master and Rust Consulting and to provide to them all information obtained by JMIC with respect to the datapoints JMIC was ordered to produce, including the loan termination dates, irrespective of format. JMIC shall within ten business days of entry of this Order state what documentation or evidence it believes is necessary to establish the admissibility of that information contained in the said August 1, 2007 database. The Court notes that such information came mostly from JMIC's own files, with some having been obtained from JMIC's own dealer/agents, a fact which the Court considers very pertinent to any attempt by JMIC to argue that the database it has created is not admissible in evidence.

The August 1, 2007 database JMIC produced to Plaintiff is itself incomplete because it does not contain the most crucial piece of information JMIC was ordered to obtain and produce, its insureds' loan termination dates. The August 1, 2007 database is also materially incomplete in that it does not contain, amongst other things, approximately 91,000 (or 12%) of JMIC's insureds' lenders names and addresses. That information must be obtained. Accordingly, this Court hereby authorizes Rust Consulting and the Special Master to obtain that information by accessing JMIC's records or files, if JMIC cooperates in that regard, or by conducting a credit reporting analysis with a reputable credit reporting agency of their choosing, or both. JMIC shall within ten business days of entry of this Order state what documentation or evidence it believes is necessary to establish the admissibility of information so obtained about the names and addresses of lenders which is missing in the August 1 database.

7

Because JMIC employee Bill Coffman has testified that JMIC now has a computer image of all potential class members' certificates, which contain the class members' lender names and addresses (which Mr. Coffman says can be viewed on an ordinary computer), this Court Orders JMIC to produce to the Special Master and Rust Consulting all of those computer images. To verify that the computer images are accurate and the lender name and addresses have been precisely inputted into the database, JMIC is Ordered to produce to the Special Master or Rust Consulting any paper or microfiche certificates Rust Consulting or the Special Master request within (5) days of such request. JMIC shall within ten business days of entry of this Order state what documentation or evidence it believes is necessary to establish the admissibility of that information so provided to the Special Master and Rust Consulting. The Court notes that this particular information will come from JMIC's own files, a fact which the Court considers very pertinent to any attempt by JMIC to argue that the information is not admissible in evidence.

The Court recognizes that JMIC is continuing to receive responsive information from some of its dealer/agents. To reduce any potential confusion, JMIC is hereby Ordered to submit all information and computer discs it receives from its dealer/agents to Rust Consulting within (5) days of receipt so that Rust Consulting can enter that information into the database and/or contact the dealer to obtain or verify the information. Should the Special Master conclude that JMIC is not fulfilling this obligation, the Special Master is to notify JMIC and Class Counsel and timely bring this matter to the attention of the Court.

This Court's Orders only excepted from the List of Class Members insureds to whom Defendant previously paid an unearned premium refund or death or disability benefit. (*See* March 5, 2007 Order at (A)(1)(a) and (b)). To ensure that JMIC did not exclude insureds who did not fall into one of the above two categories, JMIC is Ordered to provide the Special Master

and Rust Consulting with a list of all persons to whom JMIC claims to have paid a refund or benefit and provide adequate proof of each such claim that a refund or benefit was actually paid. If there are any other insureds whom JMIC has excluded from the August 1 database, JMIC shall provide similar lists and proof with respect to each such insured. For any insureds whom Rust Consulting determines should not have been excluded from the List of Class Members either because (1) they did not fall into one of the two categories of insureds excepted from the Court's March 5, 2007 Order or (2) because JMIC has failed to produce adequate proof to substantiate that the insured should be excepted from the List of Class Members, this Court Orders Rust Consulting to include those insureds in the final List of Class Members. This directive shall be without prejudice to JMIC's right to challenge any such decision before the Special Master and to then take the matter up with this Court if necessary.

To the extent lenders need more time to complete the tasks contemplated by this Court's March 5 and 8, 2007 Orders, the Special Master is empowered to grant additional time. To the extent any lenders resist cooperating in completion of the tasks contemplated by this Court's Orders, the Special Master is empowered to issue subpoenas and retain such local counsel in other states as is necessary to enforce the same.

Should the Special Master and Rust Consulting conclude that the Court's Orders need to be varied or modified in any respect in order to achieve the goal of identifying insureds due a refund and calculating the amount due, and obtaining the most current address possible for each such insured, then the Special Master shall report such recommendation to the Court, and copy Class Counsel and JMIC counsel. Class Counsel and JMIC shall respond to such recommendation within five (5) business days, and the Court will then promptly decide whether to adopt the recommendation.

Any bills or invoices from Rust Consulting, or from any counsel or service the Special Master deems it necessary to employ, shall be submitted first to the Special Master and copied to Class Counsel and to JMIC counsel. If Class Counsel or JMIC dispute any such bill or invoice, they shall submit that dispute to the Special Master within five (5) business days. As to any such dispute with respect to the amount of any such bill or invoice, the Special Master shall decide such dispute. This directive shall be without prejudice to JMIC's right to challenge any such decision by the Special Master with this Court if necessary.

The Court notes with respect to the issue of costs all the many claims made by JMIC in their briefs and affidavits and concludes that completing the tasks contemplated by this Court's Orders will require the expenditure of funds, whether the work is done by JMIC or by others as directed herein. It is the judgment of this Court that appointing a Special Master and employing Rust Consulting will assure that such expenditure of funds is productive and efficient, rather than wasteful.

As the Court has previously noted in its March 8, 2007 Order, JMIC should have obtained and maintained all the information which this Court's Orders require be reconstructed, for otherwise JMIC could not have possibly fulfilled its contractual and statutory duties to refund unearned premiums upon early termination of insured loans. JMIC failed to do so, and as a result of that failure, JMIC has, over the years, simply kept unearned premiums indisputably belonging to its own insureds. JMIC has obviously benefited financially as a result, a fact this Court considers pertinent to JMIC's complaints about how much money it has spent thus far, and which this Court will consider in connection with deciding whether JMIC or Plaintiff must pay costs associated with the remedy established by this Order. The financial cost and burden of reconstructing that information which JMIC was obligated to retain rightly falls on JMIC, rather

than on dealers and lenders to which the Special Master and Rust Consulting must now turn to obtain some of the needed information. The Special Master and Rust Consulting are directed to advise any lenders who request reimbursement to keep records of their reasonable administrative costs and to assure such lenders that those costs will be paid by Order of this Court. Determination who shall pay those costs will, however, await further ruling by the Court. JMIC and Class Counsel are directed to file a memorandum with respect to that issue within 20 days.

With respect to the issue of who shall pay the fees and expenses of the Special Master and Rust Consulting, the Court reserves ruling. JMIC and Class Counsel are directed to file a memorandum with respect to that issue within 20 days.

To be clear, the Special Master shall resolve and any all disputes arising pursuant to this Order by written findings. Either JMIC or Class Counsel may challenge such findings before this Court. In addition, the Special Master shall resolve any and all discovery disputes arising after entry of this Order. Either JMIC or Class Counsel may challenge such findings before this Court.

The Court finds that the remedy imposed by this Order is appropriate under Georgia law, and is narrowly tailored to the non-compliance by JMIC. In fact, the Court finds that this remedy does not "punish" JMIC at all: it simply ensures that what JMIC should have done, but did not do, in fact gets done. Stated another way, this remedy simply provides that the directives within this Court's March 5 and 8, 2007 Orders will be faithfully accomplished.

This Court has not considered whether JMIC should be held in contempt of Court, and has made no findings or conclusions in that regard. This Order does not hold JMIC in contempt of Court. Similarly, this Court is not imposing any sort of "receivership" upon JMIC, nor does this or any prior Order of this Court require an "accounting" by JMIC or of JMIC, nor does this

Court impose any "injunction" against JMIC. This is and remains a discovery matter, and the Court's Order is intended to obtain compliance with the Court's discovery Orders of March 5 and March 8, 2007 by the only means apparent to the Court.

The Court reserves for future and further consideration other possible remedies and sanctions, including the imposition of costs and attorneys fees on JMIC. Finally, this Court notes that no more obstruction of the Court's Orders by JMIC will be tolerated. If there is any further misconduct, an appropriate remedy will be fashioned by the Court.

SO ORDERED this 2 day of October, 2007.

Honorable Douglas C. Pullen
Judge, Superior Court of Muscogee
County, Georgia


Prepared by Plaintiff's Counsel:

Joel O. Wooten
Georgia Bar No. 776350
Butler, Wooten & Fryhofer, LLP
P.O. Box 2766
Columbus, GA 31902
(706) 322-1990