Exhibit "8 b"

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

FILED IN OFFICE

2009 OCT 29 A II: 44

M. LINDA PIERCE
CLERK OF SUPERIOR COURT
MUSCOGEE COUNTY GEORGIA

| | | |
|---|---|---|
| DOROTHY BUCKNER, Individually and on behalf of a class of all persons similarly situated, | * * * * | |
| Plaintiff, | * * | |
| | * | Civil Action File |
| v. | * * | No. SU 04 CV 241-7 |
| RESOURCE LIFE INSURANCE COMPANY, a foreign corporation | * * * | |
| Defendant. | * | |

## ORDER ON PLAINTIFF'S MOTIONS FOR SANCTIONS

Pending before the Court are Plaintiff's Motions for Sanctions. After independently considering the briefs, arguments of counsel, record evidence, and the Report of the Special Master, the Court hereby ORDERS as follows: [1]

Throughout the five years this action has been pending, Defendant has continuously sought to delay this matter by refusing in good faith to comply with its discovery obligations. Instead of complying with its discovery obligations and doing what this Court has ordered, Defendant has taken positions on matters pending before this Court that are directly refuted by evidence it has been withholding. Defendant has likewise violated its oath and its obligations under the Civil Practice Act.

Neither this Court nor the judicial system can tolerate a party disregarding its oath, the Civil Practice Act, and the rule of law. For the below reasons, each of which the Court finds

---

[1] Although the Court referred certain matters to the Special Master and the Special Master recommended that Defendant be sanctioned for its discovery abuses and non-compliance, the Court has undertaken its own independent review of Plaintiff's Motions for Sanctions and issues this Order based on its own independent consideration of the record evidence.

independently warrant the sanction outlined below, this Court hereby GRANTS Plaintiff's Motions for Sanctions.

I.     FIRST INDEPENDENT BASIS FOR SANCTIONS.

Plaintiff filed this action and served her first set of discovery on Defendant Resource Life Insurance Company ("Resource Life") on January 23, 2004 – nearly six years ago. Plaintiff's First Interrogatories and First Requests for Production of Documents and Things requested that Defendant provide Plaintiff with certain discovery that is relevant to class certification. Defendant initially refused to produce certain information to Plaintiff and on November 15, 2005, Plaintiff moved to compel the discovery. Plaintiff's Motion to Compel was argued on September 20, 2006 and ultimately granted on August 7, 2007. The Court's August 7, 2007 Order compelled Defendant to produce certain data points sought by Plaintiff within sixty (60) days of this Court's Order. Defendant failed to produce the compelled discovery within sixty (60) days and also failed to timely move for an extension of time. Defendant belatedly moved for an extension of time on October 12, 2007, *after* compliance with this Court's August 7, 2007 Order was due. When it moved for an extension of time, Defendant did not disclose to Plaintiff or the Court that it had at that time done very little to comply with this Court's Order. Defendant instead falsely insinuated that it had diligently been working to comply with this Court's August 7, 2007 Order.

On November 13, 2007, Plaintiff filed a Motion for Sanctions requesting that this Court sanction Defendant for its failure to comply with this Court's Order compelling Defendant to produce the relevant discovery. It is undisputed that at that time Defendant had not complied with the August 7, 2007 Order. On March 27, 2008, this Court held a Hearing on Plaintiff's Motion for Sanctions and gave Defendant an extension of time until May 1, 2008 to finally

2

comply with the August 7, 2007 Order. That gave Defendant a total of nine (9) months to comply with the Order; yet Defendant again did not fully comply with the Order by May 1, 2008. Despite the fact that this Court extended Defendant's deadline in which to comply with the August 7, 2007 Order until May 1, 2008, Defendant never followed up with its agents to ensure that it had all of the information responsive to this Court's Order in advance of the May 1, 2008 deadline. This Court held a Hearing on Plaintiff's Motion for Sanctions on June 26, 2008 and again gave the parties additional time to brief the issues.

The Court thereafter referred this matter to Special Master Walter C. McMillan, Jr., a retired Superior Court Judge of the State of Georgia. Special Master McMillan authored an extensive Report on April 6, 2009 that was filed with the Clerk of Court on April 22, 2009. After reviewing the same briefs that have been presented to this Court and holding a Hearing, Special Master McMillan recommended that Defendant be sanctioned for a number of the discovery abuses it has committed in this case. Defendant's failure to comply with the Court's August 7, 2007 Order was one basis of the Special Master's recommendation. Some of the other bases outlined below were also cited by the Special Master as reasons Defendant should be sanctioned. Defendant filed exceptions to the Special Master's Report and Plaintiff filed a Response. This Court has considered the parties' briefs and appreciates the time, effort, and analysis of Special Master McMillan. This Order, however, is the product of the Court's own consideration and analysis of the briefs, record evidence, and arguments of counsel at several hearings, including a full-day hearing conducted by the Court on October 14, 2009.

As of the date of this Order and in spite of this Court's admonitions that it would consider sanctioning Defendant if it did not produce the relevant information set forth in the August 7, 2007 Order, Defendant has still not produced all of the information it was ordered to produce to

3

Plaintiff. Defendant has instead produced all of the data points it was ordered to produce for only approximately 4% of its insureds. These basic data points about Defendant's insureds are central to this litigation, just as they should be central to the Defendant's ordinary business operations. This Court has given Defendant every opportunity to comply with the August 7, 2007 Order. Defendant has failed to take advantage of those opportunities despite the fact that it has proven that it can obtain information from its dealer/agents when it so desires.

The reasons prompting Defendant's failure to comply with the August 7, 2007 Order are well documented in the record and will not be fully restated herein. It is the finding of this Court that Defendant could have complied with the August 7, 2007 Order if it would have faithfully attempted to do so. Defendant's failure to comply with the August 7, 2007 Order was not accidental or unavoidable, it was either willful or the result of a conscious indifference to the consequences. This Court finds Defendant's failure to comply with the August 7, 2007 Order is the first independent reason Defendant should be sanctioned in the manner set forth below.

II.    SECOND INDEPENDENT BASIS FOR SANCTIONS.

On December 15, 2006, Plaintiff served her Second Continuing Interrogatories and Second Requests for Production of Documents and Things on Defendant. Plaintiff's discovery requested that Defendant produce the loan termination dates for Defendant's insureds that purchased credit insurance and did not receive a refund of unearned premium. When considered together with the information this Court compelled Defendant to produce in its August 7, 2007 Order, Defendant's insureds' loan termination dates enable Plaintiff and the Court to determine which of Defendant's insureds' loans terminated early (prior to their scheduled maturities) without receiving a refund of unearned premium. Defendant's insureds' loan termination dates are thus integral pieces of information relevant to establishing class certification.

4

In response to Plaintiff's Second Continuing Interrogatory No. 8 requesting Defendant's insureds' loan termination dates ("LTDs"), Defendant served a Verified Interrogatory Response representing that it had no responsive LTDs to produce to Plaintiff. (*See* 01/17/07 Def. Resp. to Pltff.'s Sec. Cont. Int. No. 8) ("[Defendant] has no information to provide in response to this interrogatory."). Defendant did not assert a specific work product objection or otherwise notify Plaintiff that it was withholding responsive LTDs.[2] Defendant supplemented its interrogatory responses two months later on March 8, 2007 and again represented that it had no LTDs responsive to Plaintiff's Interrogatory No. 8, and again failed to assert a specific work product objection or otherwise notify Plaintiff that it was withholding LTDs from Plaintiff.

Plaintiff thereafter filed a Motion for Court Order Requiring Defendant to Obtain Loan Termination Dates on August 17, 2007. In response to Plaintiff's Motion, Defendant again affirmatively represented to the Court that it had no LTDs and could not obtain them. The Court and Plaintiff were consequently led to believe that the representations in Defendant's Verified Interrogatory Responses and in Defendant's briefs filed with the Court and arguments to the Court were true. Those representations were not true.

This Court first learned that Defendant's representations were false during a hearing held on another issue on August 13, 2008.[3] In fact, as Defendant confirmed, Defendant had possessed LTDs for some of its insureds since 2005. Absent concealment of its acquisition and possession of the LTDs, Defendant could not have plausibly argued (as it has done repeatedly)

---

[2] "A general claim of privilege . . . is insufficient to preserve a claim as to a document which has been falsely declared not to exist." *Orkin v. McIntosh*, 215 Ga. App. 587, 591 (1994).

[3] Defendant did not voluntarily disclose this information to the Court for the purpose of confessing and rectifying its false representations. To the contrary, Defendant disclosed this information merely because Defendant thought it would be helpful to Defendant's arguments on another matter then before the Court.

5

that it could not obtain LTDs, and that argument was central to Defendant's opposition to Plaintiff's pending motion for class certification.

LTDs are arguably the most important pieces of evidence in this case. Whether LTDs for Defendant's insureds can be obtained so that it can be determined which insureds' loans terminated early is a crucial question with respect to the class certification issue. Defendant's concealment of the LTDs in its possession made possible Defendant's argument that LTDs could not be obtained and thus that a class should not be certified because the class was not ascertainable and a class action would not be manageable. If LTDs can be obtained, then the identity of those insureds due refunds can be ascertained, and many of Defendant's arguments against class certification evaporate. In other words, Defendant's concealment of the LTDs in its possession facilitated the making of arguments to the Court that Defendant knew were false.

Although the LTDs Defendant obtained in 2005 were relatively few in number, the fact that Defendant had them, could obtain them, and could obtain them from insureds' lenders – which was one of the methodologies which Plaintiff argued made a class action manageable – was crucial evidence. But the LTDs obtained by Defendant in 2005 were not the only evidence concealed by Defendant's false responses to number 8 of Plaintiff's Second Continuing Interrogatories seeking LTDs. Just before the October 14, 2009 hearing, Plaintiff learned that Defendant had obtained thousands of LTDs as a result of similar litigation pending against Defendant in Texas which had been filed by the Attorney General of Texas. Defendant did not supplement its discovery responses to notify Plaintiff it had such responsive discovery. Because of a "protective order" Defendant had negotiated in that litigation, there were constraints on Defendant sharing those LTDs with Plaintiff in this case without notifying the lenders which provided those LTDs, but Defendant neither advised Plaintiff and the Court of the fact

Defendant had or could obtain those LTDs, nor attempted to give the notice which would allow Defendant to divulge the evidence itself to Plaintiff in response to Plaintiff's discovery. Plaintiff had to find out about the existence of these LTDs, again obtained from lenders, on her own.

Disclosure of the Texas LTDs was required by the same discovery, number 8 of Plaintiff's Second Continuing Interrogatories, which required disclosure of the LTDs Defendant obtained in 2005. That discovery was served upon Defendant on December 15, 2006 – almost three years ago. It is this Court's view that Defendant's concealment of the Texas LTDs is but more evidence of Defendant's intent in providing false responses to Interrogatory number 8, and more evidence that Defendant's arguments that it did not have and could not obtain LTDs was untrue. While this Court does not base any sanction on Defendant's non-disclosures regarding the Texas LTDs, that conduct by Defendant does serve to further suggest that Defendant's non-disclosures and false representations were not unintentional or innocent.

Where, as here, a party such has Defendant has violated its oath for the purpose of obtaining an unfair advantage over its opponent, the Court must act. The Georgia appellate courts have made clear that the civil justice system cannot tolerate a party who disregards the oath upon which our judicial system is predicated. *See Metro Atlanta Rapid Transit Auth. v. Doe*, 292 Ga. App. 532, 532-34 (2008) (affirming the trial court's order striking the defendant's answer for concealing key information the defendant swore in verified discovery responses did not exist); *Santora v. American Combusion, Inc.*, 225 Ga. App. 771, 773 (1997) (holding that the trial court did not err in entering the ultimate sanction of dismissal when the plaintiff "willfully attempted to conceal from his opponent [a single] document that, at least facially could have a major impact on this litigation."); *Orkin v. McIntosh*, 215 Ga. App. 587 (1994) (affirming imposition of sanctions against a party who served a false interrogatory response).

As the Court of Appeals held in *Orkin*,

[t]o condone such conduct would force parties to assume the falsity of every sworn interrogatory response. Such a rule would allow the unscrupulous to conceal documents from opposing parties by the simple expedient of denying their existence, without fear of penalty if the deception were by some chance discovered.

251 Ga. App. at 591. And as the Court of Appeals confirmed in *Doe*,

[a]n interrogatory answer that falsely denies the existence of discoverable information is not exactly the equivalent of no response. It is *worse* than no response. . . . An intentionally false response to a document production request (particularly concerning a pivotal issue in the litigation) authorizes a trial court to impose the sanctions permitted by OCGA § 9-11-37(d) for a total failure to respond. Accordingly, the trial court here was authorized to strike [the defendant's] answer for its intentionally false response. . . .

292 Ga. App. at 536-37.

This Court finds that Defendant's concealment of LTDs was either willful or the result of conscious indifference to the consequences and is a second independent basis for imposition of the sanction detailed below.

III.    SANCTION IMPOSED BY THIS COURT.

Because Defendant has chosen concealment, non-compliance, and obfuscation, this Court hereby imposes the following sanction that is appropriately tailored to cure Defendant's discovery abuse. This Court finds that Defendant engaged in the above discovery abuses so that Plaintiff would not be able to determine which of Defendant's insureds' loans terminated prior to their scheduled maturities and so that Defendant could make arguments against class certification that the concealed evidence disproved. The failures, concealment, and delay in fact seriously prejudiced Plaintiff by imposing additional costs and delays, and perhaps most importantly by making it substantially less likely that Plaintiff would ever be able obtain the evidence to which

8

she was entitled both by this Court's Order and the rules of discovery.[4] *See, generally, Brannen v. State*, 274 Ga. 454, 458 (2001) ("Delay is not an uncommon defense tactic. As the time . . . lengthens, witnesses may become unavailable or their memories may fade.").[5]  As the *Brannen* case makes clear, delay is particularly harmful to the party "which bears the burden of proof." *Id. See United States v. Fountain*, 840 F.2d 509, 513 (7th Cir. 1988) (delay harms the party with the burden of proof because "the degradation of evidence generally cuts against the party with the burden.").  Thus, where a party without the burden of proof has caused delay in a manner which violates both a court order and the discovery rules, and is particularly likely to make it difficult for the opposing party to meet the burden of proof, the Court should take that into consideration in devising an appropriate sanction.

This Court finds that all of Defendant's "non-refunded" insureds, meaning those insureds who are members of the class outlined in Plaintiff's Complaint for whom Defendant's records show that there has been no refund of unearned premium, shall be presumed to have terminated early, that is prior to their scheduled maturities. Defendant shall have the opportunity to rebut this presumption by producing, within one-hundred and twenty (120) days of this Order, proof that the insureds' loans did or did not terminate early. Such proof shall come from the insureds,

---

[4] In particular, and as an example, the failure to provide the data points ordered produced by this Court in its Order of August 7, 2007 made it impossible for Plaintiff to run credit report analyses to determine early loan payoffs. It is undisputed that the credit reporting agencies dispose of their data under a regularly adopted document retention policy.  Thus, the failure to timely comply with this Court's Order of August 7, 2007 has seriously prejudiced Plaintiff's ability to obtain LTDs for some class members.

[5] *See Veazey v. Young's Yacht Sale & Service, Inc.*, 644 F.2d 475, 478 (5th Cir. 1981) ("Delay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade, and witnesses die or move away. If the delay is unjustified, the court can and must act to redress the balance...."). The *Veazey* court affirmed the imposition of the ultimate sanction of dismissal where the plaintiff was responsible for the delay.

the lenders who held the loans, or from a reliable credit reporting agency ("CRA") analysis conducted at Defendant's cost.[6] If Defendant can adduce proof that some of the insureds' loans did not terminate early, then those insureds will be excluded from any class.

If the foregoing efforts by Defendant produce proof that some of the loans did terminate early, then the date of loan termination established by that proof will be accepted by the Court, and the amount of refund due (if any) shall be calculated based upon that LTD. If Defendant cannot obtain proof that a loan did or did not terminate early for any reason, including because the documentary evidence has been destroyed or cannot be located because it is too old, those loans for which proof can no longer be obtained shall be presumed to have terminated early and the amount of the refund owed to each insured whose loan has been presumed to have terminated early shall be $491.75, which Defendant states is the average refund paid to insureds whose loans terminated early in the ordinary course of its business.

Plaintiff sought the sanction of default judgment. This Court has carefully considered that option, and, for the present, rejects it. In the opinion of the Court formed after presiding over this matter and these discovery issues for years, the foregoing sanction is warranted and necessary, and that no lesser sanction would be sufficient to account for the gravity of the Defendant's misconduct and non-compliance. It is Defendant whose misconduct has delayed this action for years and it is Defendant and not Plaintiff or any class member that should suffer the consequences caused by its delay and obfuscation. As noted above, the Court finds that each

---

[6]. *See J.M.I.C. Life Ins. Co. v. Toole*, 280 Ga. App. 372, 377 (Ga. Ct. App. 2006)("the Equifax records on which Toole relies are admissible under Georgia's business records statute,") To the extent that Defendant has any questions about what the Court expects to be done, Defendant is directed to seek such guidance from the Court, by copy to Plaintiff, in advance of conducting the CRA analysis.

of Defendant's discovery abuses outlined above in and of itself authorizes the imposition of this

sanction.

SO ORDERED, this _29_ day of _October_____ , 2009.


_____
Douglas C. Pullen
Judge, Superior Court of Muscogee County



Prepared by:

Joel O. Wooten
Georgia Bar No. 776350
Brandon L. Peak
Georgia Bar No. 141605
Butler, Wooten & Fryhofer, LLP
P.O. Box 2766
Columbus, GA 31902
(706) 322-1990

11

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

DOROTHY BUCKNER, Individually          *
and on behalf of a class of all persons  *
similarly situated,                    *
                                       *
        Plaintiff,                     *
                                       *      Civil Action File No:
v.                                     *      SU04CV241-7
                                       *
RESOURCE  LIFE INSURANCE               *
COMPANY, a foreign corporation         *
                                       *
        Defendant.                     *

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the above and foregoing Order via

email and by depositing same in the United States mail with adequate postage affixed thereto and

properly addressed to insure delivery to:

            Mr. Jerry A. Buchanan
            Mr. Benjamin A. Land
            Buchanan & Land, LLP
            P.O. Box 2848
            Columbus, GA 31902

            Mr. Joel S. Feldman
            Mr. Bruce Braverman
            SIDLEY AUSTIN LLP
            One South Dearborn Street
            Chicago, IL 60603

            Mr. Thomas M. Byrne
            Sutherland, Asbill & Brennan, LLP
            999 Peachtree Street, N.E.
            Atlanta, GA  30309-3996

This _29_ day of October, 2009.

                        BUTLER, WOOTEN & FRYHOFER, LLP

                        By: _____
                            Attorney for Plaintiff