IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| BARBARA ELIZABETH LAWSON and JERRY LAWSON, Individually and on behalf of a class of all persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LIFE OF THE SOUTH INSURANCE COMPANY, a corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) CASE NO. 4:06-cv-00042 ) ) ) ) ) |

### DEFENDANT LIFE OF THE SOUTH'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE OR DISMISS PLAINTIFF'S CLASS ACTION ALLEGATIONS OR, <u>IN THE ALTERNATIVE, TO DENY CLASS CERTIFICATION</u>

**Jerry A. Buchanan**
**Benjamin A. Land**
BUCHANAN & LAND, LLP
P. O. Box 2848
Columbus, Georgia 31902
Phone:  706-323-2848

**Lee E. Bains, Jr.**
**Jeffrey M. Grantham**
**Lorrie L. Hargrove**
**C. Andrew Kitchen**
**Thomas J. Butler**
MAYNARD, COOPER & GALE, P.C.
2400 Regions/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618
Phone:  205-254-1000
Fax:  205-254-1999

ATTORNEYS FOR DEFENDANT, LIFE OF THE SOUTH INSURANCE COMPANY

**TABLE OF CONTENTS**

I.   THIS COURT SHOULD STRIKE AND/OR DISMISS PLAINTIFF'S CLASS ALLEGATIONS, OR DENY CLASS CERTIFICATION, BASED ON THE AUTHORITY OF *BISHOP* AND *ADAMS*. ........................................................................ 2

    A.   State Court Class Certification Decisions Have No Bearing on This Civil Action Pending in Federal Court. ........................................................ 2

    B.   Plaintiff Disingenuously Argues That LOTS Has Already Made this Motion. ........................................................................................................ 4

II.  JUST AS THIS COURT CONCLUDED IN *BISHOP* AND *ADAMS*, THERE ARE SUBSTANTIAL REASONS TO DISMISS OR STRIKE THE CLASS ALLEGATIONS, OR DENY CLASS CERTIFICATION. ........................................................................ 5

    A.   Substantial and Material Variations in Applicable State Laws and LOTS's Contracts Defeat Certification. ..................................................... 5

        1.   This Court may not apply Georgia substantive law to the claims by out-of-state class members involving out-of-state transactions with the out-of-state defendant LOTS. ....................... 5

        2.   Plaintiff has not met her burden of showing no material variations in the applicable state law of the fifty states. ................ 7

        3.   Material Variations in the Contracts Also Defeat Certification. ........................................................................................ 8

    B.   The Necessity of Individualized Inquiries as to "Hundreds of Thousands" of Alleged Class Members Defeats Certification. ................ 10

    C.   This Court Should Reject a Rule 23(b)(2) Certification, as this Court did in *Bishop* and *Adams*. ............................................................. 10

CONCLUSION ........................................................................................................... 10

CERTIFICATE OF SERVICE ................................................................................... 11

Defendant, Life of the South ("LOTS"), respectfully submits this reply brief in further support of its Motion to Strike or Dismiss Plaintiff's Class Action Allegations, or, in the Alternative, to Deny Class Certification (D.E. 142) ("Motion") and in reply to Plaintiff's Response (D.E. 153) ("Response").  LOTS's Brief (D.E. 143) ("Brief") in support of its Motion established the following four points:

1. A motion to strike or dismiss Plaintiff's class action allegations is an appropriate procedural vehicle for addressing the class action issues in this case.

2. In the alternative, a motion to deny class certification is an appropriate procedural vehicle for addressing the class action issues in this case.

3. This Court should strike or dismiss Plaintiff's class action allegations, or deny class certification, because the Middle District of Georgia has already denied class certification in two virtually identical cases. *Bishop's Prop. and Investments, LLC v. Protective Life Ins. Co.,* 255 F.R.D. 619 (M.D. Ga. 2009) ("*Bishop*"); *Adams v. Monumental Gen. Cas. Co.,* 2009 WL 383625 (M.D. Ga. 2009) ("*Adams*").

4. There are numerous additional reasons to deny class certification in this case, including recent controlling decisions reversing district courts that had certified class actions.  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d 1159 (11th Cir. 2010) ("*Sacred Heart*"); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ("*Vega*"); *Wal-Mart Stores v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541 (2011) ("*Wal-Mart*").

Plaintiff's Response does not dispute the first two points – a motion to strike or dismiss Plaintiff's class allegations, or a motion to deny class certification, are appropriate procedural vehicles to deal with the class action allegations in this case at this time.

Plaintiff's Response does, however, dispute the latter two points.  First, Plaintiff claims that this Court should disregard Eleventh Circuit precedent, and this Court's holdings in *Bishop* and *Adams* applying that precedent in virtually identical cases, because: (1) state court judges have certified unearned premium cases; and (2) this Court, Plaintiff misleadingly argues, has already decided LOTS's Motion.  Second, Plaintiff argues that class certification should not be denied because the contracts and applicable law are materially similar – an argument this Court

rejected in *Bishop* and *Adams*.  Plaintiff's arguments have no merit for the reasons discussed in this reply brief.

Plaintiff's Response does not dispute that the Eleventh Circuit has repeatedly rejected the certification of a nationwide class action asserting common law claims.[1]  This Court should either strike or dismiss Plaintiff's class allegations, or deny class certification, just as this Court did in the virtually identical *Bishop* and *Adams* cases.

**I.    This Court Should Strike and/or Dismiss Plaintiff's Class Allegations, or Deny Class Certification, Based on the Authority of *Bishop* and *Adams*.**

Plaintiff makes no effort to distinguish the virtually identical *Bishop* and *Adams* cases.[2]  Instead, Plaintiff hopes to distract this Court from two on-point decisions with irrelevant state court decisions and a misleading case history argument.

**A.    State Court Class Certification Decisions Have No Bearing on This Civil Action Pending in Federal Court.**

Plaintiff argues that this Court should not follow two decisions from this same federal court denying class certification under **Federal** Rule 23 in virtually identical cases because state court judges have certified classes in other unearned premium cases.  *Every* decision listed on pages 1-2 and footnotes 1-8 of Plaintiff's Response is a state court decision, interpreting a state court Rule 23.  State courts, which are not bound by Eleventh Circuit or United States Supreme Court precedent interpreting Federal Rule 23, could decide a class certification issue differently. *Smith v. Bayer Corp.*, ___ U.S. ___, 131 S. Ct. 2368, 2379, 2382 (2011) (ruling that "[t]he issues in the federal and state [purported class actions] differed because the relevant legal standards differed" and explaining that "A federal court and a state court apply different law. That means

---

[1] *See* Brief, p. 16, n.48.

[2] In fact, Plaintiff recently clarified in discovery that Plaintiff is only seeking certification of the breach of contract claim, just as the plaintiffs did in *Bishop* and *Adams.  See* Defendant's Supplemental Submission in Support of its Motion ("Supplemental Submission"), Exhibit 1 (Plaintiff's Amended Response to Defendant LOTS's First Requests for Admission No. 8).

they decide distinct questions").[3]  Because state courts apply **state** law, while this Court must follow Eleventh Circuit and Supreme Court **federal** law, such state court decisions are irrelevant to how this federal court should apply **Federal** Rule 23 to this case.[4]  Plaintiff's Counsel tried this same "state courts are certifying these cases" argument with this Court in *Bishop* and *Adams*;[5] in both cases, this Court denied certification under **Federal** Rule 23.[6]

Plaintiff's counsel also argue that they have obtained favorable class action settlements in several unearned premium cases, including a case that was pending in this Court.[7]  They tried that same argument in *Bishop* as well, which this Court flatly rejected because the defendant in the settled case did not dispute the plaintiff's contention that the defendant had an affirmative duty to determine loan termination dates, and thus eliminated the need for the Court to make

---

[3] For example, Plaintiff cites to *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 698 S.E. 2d 19 (2010) ("*Resource Life*") and *J.M.I.C. Life Ins. Co. v. Toole*, 280 Ga. App. 372, 634 S.E. 2d 123 (2006) ("*J.M.I.C.*").  The *Resource Life* opinion did not cite a single Eleventh Circuit or United States Supreme Court decision in its class certification analysis and the *J.M.I.C.* opinion cited only one for a non-determinative issue.

[4] *See Samuel v. United Health Services,* No. 06-7234, 2010 WL 2428107, at *14 (E.D. La. 2010) (denying class certification under Federal Rule 23 while recognizing that similar class actions had been certified in state court, and holding that such state court decisions "are not binding" and that the court was "bound to follow relevant Fifth Circuit precedent on the issue of class certification"); *Rivers v. Chalmette Med. Ctr., Inc.,* No. 06-8519, 2010 WL 2428662, at *13 (E.D. La. 2010) (same).

[5] *Bishop,* D.E. 231, pp. 8-9 (Supplemental Submission, Exhibit 2); *Adams,* D.E. 156, pp. 9-10 (Supplemental Submission, Exhibit 3).

[6] Although Plaintiff's counsel cited the *J.M.I.C.* decision in support of their motion for class certification in *Bishop* (*Bishop* D.E. 231, pp. 8, 25 (Supplemental Submission, Exhibit 2)), this Court nevertheless denied class certification.  *Bishop*, 255 F.R.D. at 627.

[7] Plaintiff cites only one federal district court that granted class certification in a litigated unearned premium case – an out-of-Circuit opinion that did not cite a single Eleventh Circuit case.  *Hansen v. Monumental Life Ins. Co.,* No. 3:05-CV-01905 (D. Conn. March 6, 2008) ("*Hansen*").  Tellingly, Plaintiff did not submit the *Hansen* opinion to this Court (despite submitting all of the state court opinions).  (The *Hansen* class certification decision (D.E. 102) is attached as Exhibit 4 to LOTS's Supplemental Submission.)  In an effort to deal with the manageability problem of applying the varying laws of fifty states, plaintiff's counsel in *Hansen* sought only a 14-state class, although they had originally alleged a nationwide class.  *Compare Hansen* D.E. 1 ¶¶ 35, 40(a) (Supplemental Submission, Exhibit 5) with *Hansen* D.E. 77, p. 1 (Supplemental Submission, Exhibit 6).  Plaintiff does not tell this Court that the Connecticut district court denied class certification as to five of those requested states (Delaware, Texas, Colorado, Kansas and New Jersey) because, among other reasons, the applicable state laws varied substantially.  The *Hansen* court refused to include Delaware, Texas, Colorado and Kansas in the class because Delaware and Texas mandated a refund only after notice of prepayment was provided to the insurer, while Colorado and Kansas made it the responsibility of the creditor, rather than the insurer, to make the refund.  Supplemental Submission, Exhibit 4, p. 15.  LOTS has identified numerous states with these same issues.  *See* Submission (D.E. 144), Exhibits 58-61, 66-70.  In granting class certification as to the remaining nine states, the Connecticut district court did not cite any Eleventh Circuit cases in its opinion.

3

such individual determinations for each class member.[8]  This Court should reach the same conclusion here for the same reason.[9]

The Eleventh Circuit has identified applying the laws of multiple different states as a management obstacle for a plaintiff to overcome by providing an "extensive analysis" of the state law variations along with a plan for effectively managing them.[10]  A settlement-only class certification is not persuasive authority to certify a litigated nationwide class because the settlement-only class did not have the issue of whether applying the law of fifty different states presented an "intractable management problem." *See Amchem*, 521 U.S. at 620.

### B.    Plaintiff Disingenuously Argues That LOTS Has Already Made this Motion.

Plaintiff mistakenly (and misleadingly) argues that LOTS's Motion has already been denied twice by this Court.[11]  Plaintiff refers to two motions:  (1) LOTS's motion for judgment on the pleadings (D.E. 6) and (2) LOTS's motion to reconsider this Court's denial of that motion (D.E. 49).  Those two motions sought dismissal of the named Plaintiff's individual claims on the merits and did not challenge the class action allegations.  Similarly, this Court's Orders ruling on those two motions simply addressed Plaintiff's *individual* claims and did not address the class action allegations.  (D.E. 48, 89 pp. 7-8).

Plaintiff next seems to argue that this Court should deny LOTS's Motion because LOTS first filed a motion to compel arbitration.  If LOTS had filed its Motion before filing its motion to

---

[8] *Bishop,* 255 F.R.D. at 627, n. 6.

[9] The Supreme Court has recognized that a district court confronted with a request for settlement-only class certification "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("*Amchem*").  As a result, the approval of a settlement class is not persuasive authority for certifying a litigated class.  *See e.g., In re Ford Motor Co. Vehicle Paint Litig.,* 182 F.R.D. 214, 225 (E.D. La. 1998) (denying certification of proposed class and rejecting plaintiffs' argument that class certifications had been approved in settlements on the basis that under *Amchem*, a settlement-only class certification did not need to address manageability issues).

[10] *Sacred Heart,* 601 F.3d at 1180; *see also Klay v. Humana,* 382 F.3d 1241, 1262 (11th Cir. 2004) ("*Klay*").

[11] Response, pp. 4-5.

4

compel arbitration, then Plaintiff would have likely argued that LOTS had waived any right to arbitrate.[12]  In fact, this Court recognized that the arbitration issue was a "controlling issue" to be resolved before any motion concerning class allegations.  (D.E. 89, pp. 5-6) (ruling that with the motion to compel arbitration pending, Plaintiff's motion for class certification was "premature," because the arbitration issue needed to be decided first).  With the arbitration issue now decided, LOTS properly filed its Motion.

**II.     Just as this Court Concluded in *Bishop* and *Adams,* There are Substantial Reasons to Dismiss or Strike the Class Allegations, or Deny Class Certification.**

Plaintiff argues that LOTS has not shown there are material differences in the laws of the fifty states or the contracts in question to defeat certification.  This Court already rejected those same arguments in *Bishop* and *Adams.*  There is no reason to decide otherwise in this case.

    **A.     Substantial and Material Variations in Applicable State Laws and LOTS's Contracts Defeat Certification.**

        **1.     This Court may not apply Georgia substantive law to the claims by out-of-state class members involving out-of-state transactions with the out-of-state defendant LOTS.**

Plaintiff's counsel argue, as they argued unsuccessfully in *Bishop* and *Adams*, that this Court should apply Georgia substantive law to the claims of this fifty-state class.[13]  This Court is prohibited by the United States Constitution from applying Georgia's substantive law to the breach of contract claims (and related claims for prejudgment interest) by out-of-state purported class members involving out-of-state transactions with the out-of-state defendant LOTS.[14]

---

[12] *See Krinsk v. SunTrust Banks, Inc.,* 654 F.3d 1194, 1201 (11th Cir. 2011) ("[A] party that substantially invokes the litigation machinery prior to demanding arbitration may waive its right to arbitrate.")(citation omitted).

[13] Response, pp. 5-6; *Bishop*, 255 F.R.D. at 625 ("the Court would be required to examine the law of each state where the contracts were issued"); *see also Sacred Heart*, 601 F.3d at 1175-85 ("the laws of each of the six relevant states" would have to be applied to a breach of contract claim for the six-state purported class).

[14] *See, e.g., Home Ins. Co. v. Dick*, 281 U.S. 397, 410 (1930); *John Hancock Mutual Life Insurance Co. v. Yates*, 299 U.S. 178, 179 (1936); *Hartford Accident & Indem. Co. v. Delta & Pine Land Co.*, 292 U.S. 143, 149-50 (1934); *Steele v. G.D. Searle & Co.*, 483 F.2d 339, 348 n.25 (5th Cir. 1973) ("*Steele*"); *Allstate Insurance Co. v. Hague*, 449

Plaintiff mischaracterizes the United States Supreme Court's decision in *Shutts* and ignores other controlling decisions dealing with the constitutional issue.[15] The Eleventh Circuit has explained that, "even if Georgia law would require application of its own common law rules to some claims involving purchases in other states, the law of Georgia could be applied consistent with due process only if the particular transaction had some significant relation to Georgia."[16]

In addition to the constitutional limitations on the choice of law analysis, this Court must apply the substantive law of the 50 States to the breach of contract claims by out-of-state purported class members involving out-of-state insurance transactions with the out-of-state defendant LOTS based on Georgia's choice of law rules.[17] Georgia has a standard rule that insurance contracts are governed by the law of the State in which the insurance policy was delivered. There are also significant variations among both the 50 States' statutory schemes and common law principles applicable to credit insurance policies. When Georgia's choice of law rule for insurance policies and each State's highly developed body of statutory and case law are

---

U.S. 302, 310-311 (1981) ("*Allstate*"); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 823 (1985) ("*Shutts*"). These controlling constitutional decisions are discussed in Exhibit 56 (pp. 30-36) to the Submission (D.E. 144).

[15] In *Shutts*, the United States Supreme Court reversed the Kansas court's decision to apply Kansas substantive law to all of the transactions at issue in the purported nationwide class action and rejected the Kansas court's position that in a nationwide class action a state court may apply forum law "unless compelling reasons exist for applying a different law." 472 U.S. at 821 (quoting *Shutts v. Phillips Petroleum Co.*, 235 Kan. 195, 221, 679 P.2d 1159, 1181 (1984)). The United States Supreme Court held that "when considering the permissible constitutional limits on choice of substantive law", a state "may not take a transaction with little or no relationship to the forum and apply the law of the forum." *Id*. The Supreme Court stated that the forum state "must have a 'significant contact or significant aggregation of contacts' to the claims asserted **by each member of the plaintiff class** . . . in order to ensure that the choice of [the forum's substantive] law is not arbitrary or unfair. *Allstate*, 449 U.S. at 312-313." *Id*. at 821-822 (emphasis added).

[16] *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 n.6 (11th Cir. 1987) (citing *Shutts*), *cert. denied*, 485 U.S. 959 (1988); *see also Klay*, 382 F.3d at 1263 ("plaintiffs' breach of contract claims necessarily implicate the contract law of all fifty states (since members of the putative class practice in every jurisdiction in the country)"); *see generally Steele*, 483 F.2d at 348 ("a state . . . can be constitutionally precluded by the Due Process and Full Faith and Credit Clauses from applying its own law if it lacks sufficient contact with the parties or the event giving rise to the litigation."); *Sacred Heart*, 601 F.3d at 1175-1184.

[17] Georgia's choice of law rules and the varying state laws at issue are discussed in detail in Exhibits 56 (pp. 37-49), 66-75 to the Submission (D.E. 144); *see generally Andrews v. American Telephone & Telegraph Co.*, 95 F.3d 1014, 1024 (11th Cir. 1996) ("even where state laws differ only in nuance, nuance can be significant, leaving [the] district court with the 'impossible task of instructing a jury on the relevant law.'") (citation omitted).

6

considered, 50 separate bodies of law must be applied to determine the breach of contract claims raised in this purported nationwide class action.[18]

### 2. Plaintiff has not met her burden of showing no material variations in the applicable state law of the fifty states.

The Eleventh Circuit has explained that, "the burden of showing uniformity or the existence of only a small number of applicable standards (that is 'groupability') among the laws of the fifty states rests squarely with the plaintiffs."[19]  In order to satisfy her burden, a plaintiff must provide an "extensive analysis" of state law and must prove that there are no material variations among the law of the states.[20]  Based on the constitutional limitations on the choice of law analysis and Georgia's choice of law rules, it is necessary to analyze the substantive law of 50 jurisdictions on all aspects of Plaintiff's claims for breach of contract and prejudgment interest and LOTS's defenses.[21]

Plaintiff has failed to carry her burden of proof in the context of the choice of law analysis.  Instead of providing the Court with an "extensive analysis" of the variations in state law, Plaintiff submits a chart merely showing the elements for a breach of contract claim in the

---

[18] *See Bishop*, 255 F.R.D. at 625.  Plaintiff's Response cites three decisions on the choice of law issue that either support LOTS's position or are inapposite.  Response, pp. 5-6.  In *Sun Oil Co. v. Wortman*, 486 U.S. 717, 729-30 (1988), the Supreme Court dealt with a "due process attack upon the [state] court's application of its own statute of limitations" and reconfirmed that *Shutts* "held that Kansas could not apply its own law to claims for interest by nonresidents concerning royalties from property located in other states" – i.e., the trial court could not apply the forum state's substantive law to the claims by out-of-state class members involving out-of-state transactions.  In *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1388 n.17 (11th Cir. 1988), the choice of law issue was "not addressed by either side" in the individual case challenging an arbitrator's award so the court's passing comment in a footnote about Florida and New York law on the waiver of punitive damages issue is irrelevant here.  *Cf., Sacred Heart*, 601 F.3d at 1180-83 (discussing variations in state law as to waiver defense to breach of contract action).  In *Eldon Industries, Inc. v. Paradies and Company*, 397 F. Supp. 535, 538 (N.D. Ga. 1975), the court in that individual case rejected the "false conflict" contention, advanced by Plaintiff here, and explained that the "better practice requires that this court make a preliminary determination, under conflict of laws rules applied by the Georgia courts" of which state's substantive law should be applied.

[19] *Klay*, 382 F.3d at 1262.

[20] *Klay*, 382 F.3d at 1262; *see also Sacred Heart*, 601 F.3d at 1180.

[21] These burden of proof issues relating to the varying substantive law of the fifty states are discussed in detail in Exhibit 56 (pp. 49-56) to the Submission (D.E. 144).  *See also Bishop*, 255 F.R.D. at 624.

fifty states.[22] This is not an "extensive analysis" of *variations*. Plaintiff's counsel tried this same approach unsuccessfully in *Bishop* and *Adams*.[23] Plaintiff has made no effort whatsoever to "prove through 'extensive analysis' that there are no material variations among the laws of the [50] states" (*Klay*, 382 F.3d at 1262) on several key aspects of this case, including the lender's statutory obligation to refund unearned premiums, statutory notice provisions,[24] condition precedent, implied notice requirements,[25] and the covenant of good faith and fair dealing. Plaintiff also made no effort to show the absence of material variations among the laws of the 50 states as to: (1) prejudgment interest, (2) parol evidence rule/use of extrinsic evidence, and (3) LOTS's affirmative defenses. *See Sacred Heart*, 601 F.3d at 1175-1184.

### 3. Material Variations in the Contracts Also Defeat Certification.

LOTS has identified *numerous* contractual notice variations in its contracts.[26] These notice provisions are found in *numerous* LOTS contracts throughout the United States. Plaintiff argues that the majority of LOTS's contracts have no notice provision.[27] Even if true, this Court in *Bishop* already found that argument unpersuasive in light of the difficulties posed by implied notice in the contracts.[28]

---

[22] Response, p. 7; Exhibit 9 thereto.

[23] *Bishop,* D.E. 231, p. 17 and n.11 (Supplemental Submission, Exhibit 2); *Adams,* D.E. 156, p. 18 and n.14 (Supplemental Submission, Exhibit 3).

[24] The Connecticut federal court in *Hansen* refused to certify a class to include states where the duty to refund was statutorily placed on the lender, as well as states where the duty to refund was statutorily triggered after the insurer received notice of the prepayment. *See supra* p. 3, n.7.

[25] This Court, in denying class certification in *Bishop* and *Adams,* found the issue of an implied duty to be critical, and noted that while the plaintiff bore the burden of showing uniformity of the various state laws, plaintiff had not supplied the court with authority "regarding the uniformity of state law on the issue of when the Court may imply a term into a contract." *Bishop,* 255 F.R.D. at 624-25. In *Adams,* the plaintiff sought only a nine-state class, but this Court nonetheless held: "Plaintiff has not pointed the Court to any authority suggesting that the law of the nine states is uniform with regard to implying contractual duties." *Adams,* 2009 WL 383625, at *4, n.8.

[26] Plaintiff's assertion that LOTS has only identified four contractual notice variations in its contracts (Response, p. 11) is simply inaccurate. *See* Brief, pp. 7-8.

[27] Response, p. 8.

[28] *See Bishop,* 255 F.R.D. at 624 ("Some contracts require the insured to notify Defendant . . . . Most of the contracts appear to be silent on this issue, giving rise to the question whether an implied duty exists . . . .").

8

02372994.8

Plaintiff next argues that the notice provisions are irrelevant, as the filing of this purported class action provided LOTS with notice.[29] This argument, again, was tried by Plaintiff's counsel and rejected by this Court in *Bishop* and *Adams*.[30]

Plaintiff then argues that the contracts do not require *pre-suit notice* as a condition precedent to receiving a refund, an argument also rejected by this Court in *Bishop*.[31] Plaintiff ignores the fact that where contracts make the refund contingent on LOTS receiving notice, there is no breach of contract, and thus no lawsuit, until LOTS has received that notice and not made a refund.

Plaintiff next makes a variety of arguments as to why variation in the contracts should not defeat class certification.[32] Plaintiff's counsel unsuccessfully made all of these same arguments to this Court in *Bishop*.[33]

---

[29] Response, pp. 8-9.

[30] *Bishop,* 255 F.R.D. at 627 ("the fact that the named Plaintiff may have satisfied a notice condition precedent in his contract [by filing the lawsuit] does not mean that he may do so on behalf of every other member of the class"); *Adams,* 2009 WL 383625, at *11; *see also* Submission (D.E. 144), Exhibit 56, pp. 88-90. Simply because the filing of a purported class action tolls the statute of limitations does not mean that every action of a named plaintiff in an uncertified class action can be imputed to the unnamed class members as well.

[31] *Bishop,* 255 F.R.D. at 625.

[32] Response, pp. 12-14.

[33] *Bishop,* D.E. 259, pp. 5-9 (Supplemental Submission, Exhibit 7). Plaintiff cites two recent, but completely inapposite, district court decisions certifying a class in a breach of contract case. Significantly, **both cases involved only one form contract**. *See In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 676 (S.D. Fla. 2011); *Garcia-Celestino v. Ruiz Harvesting, Inc.,* 2012 WL 602728, at *6  (M.D. Fla. Feb. 24, 2012). *In re Checking* involved claims that the defendant bank improperly assessed checking overdraft fees, something entirely within the bank's control, with the bank's own records establishing class membership. As this Court concluded in *Bishop,* so many individualized inquiries are necessary because the event triggering a refund (early payment of the loan) is not within the defendant's control, the contracts vary, and Plaintiff wants to imply into the contracts LOTS's duty to discover the early loan payoff despite the insured being in the best position to know when that happens. *Bishop,* 255 F.R.D. at 623, 626. In *Garcia-Celestino,* the individualized inquiries argued only went to damages, whereas in this case, there are individualized inquiries as to a variety of issues, including ascertaining who is a class member, whether LOTS had a duty as to that class member, etc. *Bishop,* 255 F.R.D. at 626-27; *see* Brief, pp. 16-18.

9

**B.     The Necessity of Individualized Inquiries as to "Hundreds of Thousands" of Alleged Class Members Defeats Certification.**

LOTS identified a number of individualized inquiries that would be necessary in this case and that defeat class certification.[34] Plaintiff claims they are speculative.[35] This Court in *Bishop* and *Adams,* however, found them to be very real.[36]

**C.     This Court Should Reject a Rule 23(b)(2) Certification, as this Court did in *Bishop* and *Adams*.**

Plaintiff's 23(b)(2) arguments are cut-and-pasted, word-for-word, from plaintiff's briefs in both *Bishop* and *Adams*.[37] This Court rejected those 23(b)(2) arguments in *Bishop* and *Adams*, and should do the same here.[38]

## CONCLUSION

On the authority of *Bishop* and *Adams* – two decisions from this Court denying class certification in virtually identical cases – and controlling Eleventh Circuit authority, this Court should grant LOTS's Motion to Strike or Dismiss Plaintiff's Class Action Allegations, or, in the Alternative, to Deny Class Certification.

Respectfully submitted,

/s/ *Lee E. Bains, Jr.*
Lee E. Bains, Jr.
One of the attorneys for Defendant

---

[34] Brief, p. 16.

[35] Response, p. 14. *See generally* Complaint (D.E. 1-2) ¶ 26 ("estimat[ing] the number of class members is in the hundreds of thousands.").

[36] *Bishop,* 255 F.R.D. at 626-27; *Adams,* 2009 WL 383625, at *4. The "complicated and horrific picture" LOTS paints with the individualized inquiries needed to determine the loan termination date has been confirmed by another defendant's experience in a settled case, including incurring over $9 million in costs in data collection, creating the class list, etc., requiring approximately 60,000 hours of work and subpoenas to 750 lenders. *See* Supplemental Submission, Exhibit 8; D.E. 133-2, pp. 14-15.

[37] *Bishop* D.E. 231, pp. 29-30 (Supplemental Submission, Exhibit 2); *Adams,* D.E. 156, pp. 28-29 (Supplemental Submission, Exhibit 3). The fact that the 23(b)(2) section of the three comparable briefs in the three cases is word-for-word identical underscores the virtually identical nature of the three cases, and why this Court's ruling in this case should be no different from its ruling in *Bishop* and *Adams*.

[38] *Bishop,* 255 F.R.D. at 627 n.5; *Adams,* 2009 WL 383625, at *4; *see also* Submission (D.E. 144), Exhibit 56 (pp. 79-83); *Wal-Mart*, ___ U.S. ___, 131 S. Ct. at 2557.

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July, 2012, the foregoing Defendant Life of the South's Reply Brief in Support of its Motion to Strike or Dismiss Plaintiff's Class Action Allegations or, in the Alternative, to Deny Class Certification has been filed with the Clerk of this Court and that the Court's electronic filing system will send notification of such filing to all counsel/parties of record.

/s/ *Lee E. Bains, Jr.*
OF COUNSEL