**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | |
|---|---|
| BARBARA ELIZABETH LAWSON, *individually and on behalf of a class of all similarly situated persons*, and as executor of the Estate of Jerry Lawson, | : : : : : |
| Plaintiff, | : : |
| v. | : Case No. 4:06-cv-42 (WLS) : |
| LIFE OF THE SOUTH INSURANCE, COMPANY, | : : : |
| Defendant. | : : |

**<u>ORDER</u>**

Before the Court is Defendant's Motion to Strike or Dismiss Plaintiff's Class Action Allegations or in the Alternative, to Deny Class Certification (hereinafter "Motion to Strike) (Doc. 142), which the Court **GRANTS** for reasons fully explained below.

**<u>PROCEDURAL and RELEVANT FACTUAL BACKGROUND</u>**[1]

Plaintiff and her husband, Jerry Lawson, who is now deceased (hereinafter collectively "the Lawsons"),[2] filed the instant putative class action against Defendant on March 13, 2006, in the Superior Court of Muscogee County, Georgia, based on the following set of facts. (Doc. 1-1.) The Lawsons purchased a 2000 Chevrolet Blazer on or about December 30, 2002, in Morrow, Georgia, and received financing in the form of an installment loan from Chase Manhattan Bank. Contemporaneously, the Lawsons purchased a single, one-time premium credit insurance policy to cover the car loan amount in the event of their death or disability. The

---

[1] The majority of the factual background underlying Plaintiff's claims is adopted from the Court's June 19, 2008 Order denying Defendant's Motion for Judgment on the Pleadings. (<u>See</u> Doc. 48.)
[2] This case was originally brought by Plaintiff and Mr. Lawson. (Doc. 1-2.) Since the commencement of this case, however, Jerry Lawson has died, and Plaintiff, in her capacity as the executor of Jerry Lawson's estate, has substituted herself for Mr. Lawson as a party plaintiff. (Doc. 130.)

1

credit insurance policy premium was calculated to cover the entire sixty-month period of the car loan, and would terminate on the earliest of (1) the date of termination of the indebtedness prior to the maturity date due to voluntary prepayment, (2) the date of termination of the indebtedness prior to the maturity date due to involuntary prepayment such as foreclosure or default, or (3) the scheduled maturity date of the indebtedness.  (Doc. 1-3.)

Based on the terms of the policy, any unearned premium was to be refunded to the Lawsons—or more specifically, to their creditor—if the car loan was paid off early.  Although the Lawsons caused the Chase Manhattan car loan to be paid in full on or about April 21, 2005, prior to the scheduled expiration date of the loan (Doc. 1-2 ¶¶ 7-16), Defendant did not return the unearned premium to the Lawsons (Doc. 1-2 ¶ 16).  The Lawsons, however, never notified Defendant that they paid the Chase Manhattan car loan in full.

In the present suit, Plaintiff claims her entitlement to a return of the unearned premium from April 21, 2005, through the term remaining on the loan at the time of its termination.  (Doc. 1-2 ¶ 15.)  Based on this claim, she alleges breach of contract, unjust enrichment, and negligence, among others, on her behalf and on the behalf of all similarly situated persons (a) who are residents of the United States, (b) who purchased or will purchase credit life insurance, credit disability insurance, and/or any single premium credit insurance product from Defendant; (c) whose underlying loan stopped or could stop prior to the expiration of the term of indebtedness; and (d) who were not paid or might not be paid a refund of unearned premium. (Doc. 1-2 ¶¶ 3, 22.)  Pursuant to these claims, Plaintiff seeks, among other relief, individually and for the purported class, compensatory damages for breach of contract, negligence, and willful, wanton, and intentional misconduct in the amount of the owed unearned premiums, plus interest; injunctive relief requiring Defendant to ensure future insureds' receipt of refunds to which they are entitled; and punitive damages.  (Doc. 1-2 ¶¶ 35–41.)

Defendant removed the action to this Court on April 12, 2006, pursuant to the Class Action Fairness Act ("CAFA") of 2005. (Doc. 1.) Defendant answered the Complaint on April 17, 2006. (Doc. 2.) The case remained stayed from June 2010 (Doc. 106) until November 2011 (Doc. 123), when the Eleventh Circuit affirmed this Court's March 31, 2010 Order denying Defendant's Motion to Compel Arbitration (Doc. 121). After lifting the stay, the Court held a scheduling and discovery conference with the Parties on February 2, 2012. (Doc. 126.)

Thereafter, the Parties entered the discovery period (Doc. 126), and in the interim, on May 11, 2012, Defendant filed the instant Motion to Strike (Doc. 142). Plaintiff filed a response thereto on June 4, 2012 (Doc. 153), and following the grant of an extension (Doc. 153), Defendant filed its reply on July 2, 2012 (Doc. 160). Briefing on Defendant's Motion to Strike is therefore complete and said Motion is ripe for the Court's review.

## DISCUSSION

### I. The Parties' Arguments

In its Motion to Strike, Defendant moves this Court, pursuant to Fed. R. Civ. P. 23(d)(1)(D), to enter an order striking or dismissing Plaintiff's class action allegations. (Doc. 142). In support of its Motion, Defendant primarily relies on two Middle District of Georgia cases, Bishop's Property & Invs., LLC v. Protective Life Ins. Co., 255 F.R.D. 619 (M.D. Ga. 2009), and Adams v. Monumental Gen. Cas. Co., No. 4:05-cv-132 (CDL), 2009 WL 383625 (M.D. Ga. Feb. 12, 2009), where class certification was denied on facts substantially similar to those now before the Court in this case. (Doc. 142 at 1; Doc. 143 at 4). Alternatively, for all of the reasons proffered in support of striking or dismissing class allegations, Defendant, pursuant to Fed. R. Civ. P. 23(c)(1), requests the Court to deny class certification, which Defendant argues it can preemptively request. (Doc. 142 at 2, 16 (citations omitted)).

3

Defendant argues that, according to Bishop and Adams, class treatment in this case is inappropriate, where "'each insured's entitlement to a refund will depend upon the individual circumstances of the insured's case,'"—namely, whether the insured was required to notify the insurer of the early pay off. (Doc. 143 at 8 (quoting Bishop, 255 F.R.D. at 621–22).) Defendant states that because individual issues will predominate over common ones in such circumstances, "variations in the contracts and the applicable state law [regarding their inclusion of notice provisions] defeat[ ] class certification." (Doc. 143 at 9, 10.)

Defendant notes, for example, that some of its contracts contain notice provisions as a condition precedent to its refund obligation, while others do not contain any notice provision whatsoever. Additionally, other contracts, contends Defendant, place the burden of notice on the insured while others place it on the creditor. (Doc. 143 at 10.) Defendant further explains, among other distinctions among the policies, that the contracts vary as to (1) who is obligated to make the refund—for example, with some requiring Defendant to make the refund, while others requiring the creditor to do so or for Defendant to make the refund to the creditor, who in turn will make the refund to the insured—and as to (2) whom the refund must be given—whether to the debtor, the creditor, or the creditor who will credit the debtor's account. (Doc. 143 at 10-13 (noting further distinction as to timing, formula calculation, and minimum amount of refund).) As a result of these variations in the contractual provisions, an individualized examination of each putative class member's case is required—a process that "is not amenable to a uniform or formulaic application" in a class action suit. (Doc. 143 at 14, 15 ("Such wide variation dooms Plaintiff's proposed class.").)

Finally, Defendant explains that Eleventh Circuit precedent requires this Court to reject "certification of a nationwide class action based on common law claims because of the complicated choice of law issue." (Doc. 143 at 19.) It bases this position on "this Court['s

4

inability to] . . . apply the substantive law of Georgia to the common law claims . . . by out-of-state purported class members involving out-of-state transactions with the out-of-state defendant LOTS."  (Doc. 143 at 18, 19 ("[T]his Court must apply the laws of 50 states to the breach of contract claims . . . .").)  According to Defendant, these choice of law issues, as well as the individualized determinations of class eligibility required of the Court, compel the denial of class certification, as they undermine Plaintiff's ability to satisfy her burden to prove the requirements of Rule 23(a)(2)-(3) and (b)(3).  (Doc. 143 at 18, 21–22 (citing Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159 (11th Cir. 2010), and Vega v. T-Mobile USA, Inc., 564 F.3d 1256 (11th Cir. 2009), where Eleventh Circuit reversed grant of Rule 23(b)(3) class certification due to variations among contracts and state laws on interpretation of contractual provisions)).

In response, Plaintiff cites several state cases, "virtually identical to the pending case," where courts—both within and outside of Georgia—certified classes against credit insurance companies.  According to Plaintiff, these state court cases mandate the Court's disregard of Adams and Bishop, Defendant's primary authority for its Motion to Strike.  (Doc. 153 at 1 n.1, 2.)  Plaintiff further argues that Defendant's Motion to Strike is asserted for an improper purpose, as Defendant failed to bring this motion earlier in the case and instead opted to file a Motion to Compel Arbitration.  (Doc. 153 at 4–5.)  As a result, Plaintiff contends that Defendant has gained two and a half years to resurrect a twice-denied motion in the form of the present Motion to Strike.  (Doc. 153 at 5.)  Accordingly, Plaintiff submits that Defendant's Motion to Strike must be denied to avoid undue repetition in this case.  (Doc. 153 at 5.)

Plaintiff next asserts that no conflict of laws exists to impede class certification in this case.  (Doc. 153 at 7.)  She first explains that Georgia law on breach of contract claims—the elements of which are uniform throughout the states—are appropriate for class action

5

certification, and that even if there is some variation among the laws of the states, Defendant fails to show whether the differences are material. (Doc. 153 at 6-7.) She then argues that variations of the notice provisions do not warrant striking Plaintiff's class allegations because Defendant's certificates of insurance do not require pre-suit notice of owed unearned premiums; even if they did, the filing of the class action complaint satisfies such a notice requirement; and notice provisions do not substantively impact the asserted breach of contract claim. (Doc. 153 at 10–11.)

Plaintiff then asserts that because Defendant's certificates legally bind no one but Defendant to fulfill its obligation to refund the unearned premium, variation among the certificates as to which entity should refund the unearned premiums is immaterial and therefore does not destroy commonality or predominance. (Doc. 153 at 12.) She also maintains that variations as to whom refunds should be made do not defeat class certification, as Defendant still is obligated to refund the owed payments, regardless of whether refunds pay down an insured's account or are paid directly to insured himself. Doc. 153 at 12-13).

Finally, Plaintiff explains that if and when the class is certified, Defendant will be forced to institute adequate procedures to determine the proper individuals to whom it must make the refunds. (Doc. 153 at 12.) Plaintiff notes that different formulas for calculating refunds and minimum refund laws are easily applied and do not rise to individual issues. (Doc. 153 at 13.) According to Plaintiff, the Court can easily manage differing state laws on the minimum amounts of unearned premiums owed to each class member, since this determination can be made by inputting loan termination dates into Defendant's own computer algorithm. (Doc. 153 at 13.) Having discussed the Parties' assertions, the Court now turns to the appropriate standard of review for motions to strike class allegations.

## II. Analysis

### a. Standard of Review for Motions to Strike/Dismiss or Deny Class Allegations

"A district court must conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class." Vega, 564 F.3d at 1266 (citation and internal quotation marks omitted). To obtain class certification, a named plaintiff must (1) satisfy each requirement of Rule 23(a), and (2) satisfy at least one of the requirements of Rule 23(b). Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004), *abrogated in part on other grounds*, Bridge v. Phoenix Bond & Indemn, Co., 553 U.S. 639 (2008). While the burden of proof to establish the propriety of class certification rests with the named plaintiff, Lumpkin v. E.I. Du Pont de Nemours & Co., 161 F.R.D. 480, 481 (M.D. Ga. 1995), a review of Eleventh Circuit law reveals that a defendant, as well as a plaintiff, may move for a determination of class certification. Accord Foxx v. Ocwen Loan Servicing, LLC, 2012 WL 2048252, *9-10 (M.D. Fla. June 6, 2012) (granting defendant's motion to dismiss class allegations based on plaintiff's failure to comply with local and federal rules' class action pleading requirements); Lumpkin, 161 F.R.D. at 482 (granting motion to strike class allegations based on plaintiff's failure to show numerosity, commonality, typicality, and adequacy of representation or that further discovery would substantiate class action).

The availability of such a procedural device to either the plaintiff or defendant is supported by the federal procedural rules on class certification. Fed. R. Civ. P. 23 provides that "[*a*]*t an early practicable time* after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1). Fed. R. Civ. P. 23(d)(1)(D) also permits a court to require the amendment of pleadings to eliminate allegations about the representation of absent persons. Fed. R. Civ. P. 23(d)(1)(D). The district court therefore has broad discretion in making class action determinations upon a

party's motion for or against class certification under Rule 23(c)(1) or (d)(1)(D).  Lumpkin, 161 F.R.D. at 481.

"Dismissal at th[e pleading] . . . stage[, however,] is an *extreme remedy* appropriate only where a defendant demonstrates '*from the face of the complaint that it will be impossible to certify* the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove.'"  Oginski v. Paragon Properties of Costa Rica, LLC, Nos. 10–21720–CIV, 11–60647–CIV, 2011 WL 3489541, *3 (S.D. Fla. Aug. 9 2011) (emphases added) (quoting Romano v. Motorola, Inc., No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007)) (concluding that court's dismissal of class allegation prior to discovery acknowledges impossibility of class certification based on pleadings); see also Vega, 564 F.3d at 1279 ("*[T]he complaint, as pled*, cannot sustain class action certification as a matter of law." (emphasis added)).  For a court to inquire into certification prior to discovery, "the issues [must be] . . . plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."  Lumpkin, 161 F.R.D. at 481 (quoting General Tele. Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982)) (finding no "basis for further pursuit of a class action" and that needless delay and expense would result if court awaited further discovery).

The Court finds that the issues for class certification are sufficiently represented in the pleadings, as the analysis below reveals.  Any further pursuit of discovery on class certification issues is not necessary, for the Court is able to assess the interests of the putative class members—that is, their desire to receive a refund of the unearned premium upon their early payoff—from Plaintiff's Complaint and Defendant's Answer.[3]  And given the procedural history

---

[3] Thus, the Court finds that Defendant's Motion is not brought for an improper purpose or at an improper time. Contrary to Plaintiff's assertion, it would not have been proper for Defendant to file its Motion to Strike prior to the

8

of this case, now is the most practicable time for a class certification determination.[4] Since the Court has found that a motion to strike/dismiss or deny class allegations is an appropriate procedural vehicle to address class certification, the Court now establishes the federal requirements for certifying a class in federal court.

A class is appropriate only if, pursuant to Rule 23(a),

> (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly.[5]

Fed. R. Civ. P. 23(a). Failure to prove any of the four Rule 23(a) requirements and at least one of the alternative requirements of Rule 23(b) precludes class certification. See Walewski v. ZeniMax Media, Inc., No. 6:11-CV-1178-ORL-28, 2012 WL 834125, at *2 (M.D. Fla. Jan. 30, 2012) ("[T]here is no need for inquiry under Rule 23(b) if Rule 23(a) has not been satisfied."), *adopted by* 2012 WL 847236 (M.D. Fla. Mar 13, 2012).

Defendant's Motion to Strike, as well as Plaintiff's response brief thereto, primarily focuses on Plaintiff's inability to satisfy the Rule 23(b)(3) requirements—namely, the

---

Motion to Compel Arbitration, as the arbitration issue was a "controlling issue" that should have been resolved prior to any determination of a class certification. (See Doc. 89 at 5–6). Furthermore, Defendant has never attempted to argue against class certification prior to this Motion. In its Motion for Judgment on the Pleadings, Defendant argued that Plaintiff was required to give notice of her early payoff status prior to filing suit. (See Doc. 48). It never mentioned Plaintiff's inability to certify the proposed class; the present Motion to Strike is the first time Defendant has raised the arguments herein. Defendant is therefore not attempting to raise an issue that is *res judicata*. In fact, since this case was on appeal and the stay was not lifted until November 2011, this Motion is likely one of the first opportunities Defendant has had to move to strike the class allegations.

[4] Since this case was on appeal until November 2011 and the stay was not lifted until November 2011, this Motion is likely one of the first opportunities Defendant has had to move to strike the class allegations.

[5] The Court notes that every decision on which Plaintiff relies in her brief opposing the Motion to Strike is a state court decision based on state procedural rules for class certification and not on Rule 23 of the Federal Rules of Civil Procedure. Such decisions, however, are irrelevant to this Court's application of Fed. R. Civ. P. 23 to the putative class claims, as this Court must follow Eleventh Circuit and U.S. Supreme Court precedent regarding Rule 23. In re Netbank, Inc. Securities Litigation, 259 F.R.D. 656, 662 (N.D. Ga. 2009) ("[Rule 23] governs the certification and management of class actions in the federal courts."). Thus, a state court could rule differently on class certification than a federal court could in a very similar case, as neither court is bound by the rules of the other.

"predominance" requirement. Accordingly, the Court first addresses the "predominance" prong of Rule 23(b)(3). It then addresses the propriety of certification under Rule 23(b)(2).[6]

### b. Certification Under Rule 23(b)(3)

The first requirement of Rule 23(b)(3)[7] requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Common issues of fact and law predominate if they have a *direct impact on every class member's entitlement to injunctive and monetary relief*," Bishop, 255 F.R.D. at 623, and "on every class member's effort to establish liability," Klay, 382 F.3d at 1255 (emphasizing that class certification is appropriate where the resolution of class-wide issues furthers each individual class member's underlying claim against defendant). "Simply put, if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues . . . are important[, but] . . . [i]f . . . the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs . . . relatively undisturbed, then common issues are likely to predominate." Klay, 382 F.3d at 1255.

### i. Variations Among Contracts

"Serious drawbacks to the maintenance of a class action are presented where initial determinations such as liability *vel non*, turn upon highly individualized facts." Rustein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1236 (11th Cir. 2000). Breach of contract actions, for example, are often ill-suited for nationwide class certification, as the substantive variation of "relevant terms . . . among the contracts" rarely results in common questions predominating.

---

[6] The Court does not address whether certification is proper pursuant to Rule 23(b)(1), as the facts do not implicate, and the Parties do not suggest, that the failure to certify this case as a class action creates a risk of inconsistent adjudications or of impeding the ability of class members not parties to possible individual adjudications to protect their interests. See Fed. R. Civ. P. 23(b)(1). In fact, given the individualized inquiries required of each putative class member's case, as discussed herein, separate actions by the putative class members against Defendant appear to be the most effective route to litigate the individual claims. See infra pp. 10-15.

[7] Because the findings reached herein on the predominance prong, the Court does not address the second prong of Rule 23(b)(3)—the superiority of a class action to other available methods of adjudication.

Sacred Heart, 601 F.3d at 1172. "[P]laintiffs [in a breach of contract class action] still must introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." Klay, 382 F.2d at 1265. Simply put, "[n]o one set of operative facts establishes liability," id., and the viability of most putative plaintiffs' claims depends on the resolution of case-specific factual inquiries, Rustein, 211 F.3d at 1235 (citing Jackson v. Motel 6 Mutipurpose, Inc., 130 F.3d 999, 1006 (11th Cir. 1997)). But see Sacred Heart, 601 F.3d at 1171 ("It is the form contract, executed under like conditions by all class members, . . . best facilitates class treatment."); *see, e.g.*, In re Checking Account Overdraft Litigation, 275 F.R.D. 666, 677 (S.D. Fla. 2011) (certifying class where "agreements at issue . . . are uniform form contracts offered on a take-it-or-leave it basis and were not the product of individual negotiation").

Adams, 2009 WL 383625, and Bishop, 255 F.R.D. 619, which are factually and legally indistinguishable from the present action,[8] are cases in point. In Adams and Bishop, the named plaintiffs, on behalf of themselves and a putative class of all persons similarly situated, alleged that the defendants breached their contracts with their insureds by failing to refund their credit insurance premiums when the insureds paid off their underlying loans before the loan termination dates. Adams, 2009 WL 383625, at *1; Bishop, 255 F.R.D. at 621. As in this case, no proof existed in either case that the defendants had a consistent and uniform duty to refund the unearned premiums in light of absence of the insureds' requests for refunds. According to Adams, 2009 WL 383625, at *2, *4, and Bishop, 255 F.R.D. at 623, "the event that trigger[ed] the refund—early payoff—was not something within the defendant's control."

---

[8] As in this case, to purchase the life insurance at issue in Adams and Bishop, the insured paid a single premium at the point of sale, and if the insurance was terminated before its scheduled end date, the insureds were entitled to an unearned premium. The only difference between Adams and Bishop is that Adams was a purported nine-state class action, while Bishop was a purported nationwide class action.

Since the defendants had no knowledge that the refunds were owed, each class member's entitlement to a refund of the unearned premium was dependent upon individual circumstances regarding: "(1) when and under what circumstances Defendant's failure to make the refund constitute[ed] breach of the insurance contract, and (2) whether the alleged breach [wa]s consistent and uniform as to each of Defendant's insureds such that class treatment [wa]s possible." Adams, 2009 WL 383625, at *4; see also Bishop, 255 F.R.D. at 623–24 ("[T]he Court will first have to examine each contract to determine whether the parties addressed the issues of how and when Defendant owed the refund of the unearned premium and whether Defendant's failure to pay it constitutes a breach under the parties' agreement."). These inquiries, however, held the Court, caused individual issues to predominate over common ones and thus, could not be answered on a class-wide basis. Accord Bishop, 255 F.R.D. at 622.

Class certification, held the Court, would not have been an obstacle in these cases if the individual insurance contracts and/or state law answered said inquiries in a consistent, uniform manner, but they did not. Bishop, 255 F.R.D. at 624; Adams, 2009 WL 383625, at *9. Given the material variations in the credit insurance policies and as discussed below, applicable state law on breach of contract claims, the Court found class certification under Rule 23(b)(2) and (b)(3) inappropriate in Adams as well as in Bishop. Adams, 2009 WL 383625, at *1; Bishop, 255 F.R.D. at 622, 627 n.5. Based on its own review and analysis and the reasoning of Adams and Bishop and other Eleventh Circuit precedent, this Court reaches the same conclusion here.

In the present case, Plaintiff cannot ask the Court to assume that Defendant breached the individual insurance contracts of each putative class member upon the early payoff of the underlying loan when Defendant was never notified of the early payoff and never learned of it. Rather, the Court must make factual determinations to decide whether a duty exists in the absence of a refund request and if it does exist, whether (and when) the breach occurred. Adams,

12

2009 WL 383625, at *1 ("[W]here an insured has not requested a refund and [the d]efendant is not aware that one is owed, each insured's entitlement to a refund will depend upon the individual circumstances of the insured's case."). Yet, the sheer number of factual determinations with respect to Defendant's duty to issue the refund that the Court would be forced to make, is incongruent with the nature of a class action suit.

To illustrate, some of Defendant's insurance contracts provide for an insured's right to a refund or an account credit of the unearned premium, but do not require the insured to notify Defendant. (See, e.g., Doc. 144-2 at 51–54). Others explicitly inform the insured that he must contact the insurer to inform it of early payoff (id. at 10, 37), while others instruct the insured's creditor, and not the insured, to notify Defendant of the early termination of credit insurance due to early payoff or otherwise (id. at 98).

The required period within which a refund must be made also differs among the credit insurance contracts. Some contracts state that a refund must be made "promptly" (see, e.g., Doc. 144-3 at 98) or "promptly" within thirty days of the notice of early payoff (id. at 33), while others require payment of the refund with no designation of a required time period within which to do so (id. at 107). The contracts further vary as to the minimum refund amount: some of Defendant's contracts state that refunds under $10 will not be made (see, e.g., Docs. 144-2 at 5, 144-3 at 112), and others set the minimum amounts at $1, $3, or $5 (see, e.g., Docs. 144-4 at 4, 6, 12).

As a result of these and other variations among the contract provisions, which the Court finds to be material,[9] the resolution of the overarching common issue of whether and when

---

[9] Class actions can be maintained even where class members' claims are based on different contracts if relevant contractual terms raise common questions of law and fact and *do not differ materially*. *See* Sacred Heart, 601 F.3d at 1171 (citing Allapattah Services v. Exxon Corp, 333 F.3d 1252, 1248 (11th Cir. 2008), as example of propriety of class certification in breach of contract action, where gas dealers each had different contracts with Exxon that "included express language to the effect that any breach of a provision by either party of a failure to carry out the

13

Defendant has (or will have) a duty to refund an unearned premium "breaks down into an unmanageable variety of individual legal and factual issues." Klay, 382 F.3d at 1264. For example,

> Does liability arise the moment the underlying loan is paid in full, regardless of whether Defendant has been notified of the payoff? Does liability arise within some reasonable period of time after the loan is paid? If so, what is that reasonable period of time, and is it uniform for each putative class member and under each applicable state's law? Does liability only arise upon being notified of the payoff? Does liability arise if Defendant has access to information that would put a reasonable person on notice that the loan has been paid off? Does liability arise at that point in time when a reasonably prudent insurer employing a reasonably prudent investigation system would have discovered the early payoff? If so, is that point in time uniform for each class member and under each applicable state's law?

Bishop, 255 F.R.D. at 625. The answers to such inquiries for each class member's claim are neither uniform nor clear. See, e.g., Sacred Heart, 601 F.3d at 1171–72 ("[D]iversity of material terms [in more than 300 contracts, which were individually negotiated, renders certification] . . . overwhelming."); Klay, 382 F.3d at 1261, 1263 (finding certification inappropriate because although questions of contract law raised relatively simple issues common to all breach of contract claims, number and language of contracts alone left individualized issues to predominate).

Individualized information about "hundreds of thousands" potential class members and of the circumstances of their contract negotiation, the language of each contract, and each insured's relationship and course of dealing with Defendant would be required to determine Defendant's

---

contract provisions 'in good faith' was conclusively deemed to be substantial" and thus a breach). Here, however, the contract provisions discussed herein and by Defendant in its motion brief—as to the notice provisions, the parties responsible for the issuance of the refund, and the like—indicate that Defendant's contracts from across the nation differ in ways that would require separate determinations of liability for each class member's claim against Defendant. Otherwise stated, because of the factual variations in the contract terms, whether Defendant has (or will have) a duty to refund an unearned premium and whether Defendant has breached (or will breach) said duty to a potential class member is answered differently in each case. For example, where a contract does not include an explicit requirement that the insured give notice to Defendant of the early payoff, the occurrence of Defendant's duty to refund is uncertain; on the other hand, in a contract that requires the insured to notify Defendant of the early payoff, Defendant is automatically obligated to refund the unearned premium.

14

duty to the potential class members.  All of this information would then need to be analyzed in light of various insurance contracts issued by Defendant across the nation.  As stated by Defendant, however, "[t]hose individualized insured-by-insured inquiries preclude certification of this purported class action." (Doc. 143 at 21.)

Even if the Court were to find a duty in every contract to issue the refund to insureds, this same problem of individualized inquiries presents itself on the issue of Defendant's breach, some of which include:

> Does Defendant breach its duty by failing to refund an unearned premium within 7 days of an early payoff?  15 days? 60 days? Does it matter if Defendant is notified of the early payoff?  Does it matter if Defendant waits until the loan's scheduled termination date and then investigates whether the loan was paid off early, and upon finding that it was, makes a refund with interest?  There are a myriad of possibilities that depend upon the individual circumstances of each case.

Bishop, 255 F.R.D. at 626–27.  A class-wide proceeding simply will not generate common answers to these questions, since, as a result of the material variations in the contracts, a range of circumstances must be considered to determine whether a breach occurred.

### ii.  Variations Among State Laws

Further complicating the issue of class certification in this case are variations among the state laws on credit insurance policies.  If individual credit insurance contracts are silent on Defendant's duty to refund as well as Defendant's breach, the Court must determine whether it must impose an implied duty on Defendant that was not expressly contemplated in the credit insurance contracts.  Bishop, 255 F.R.D. at 625.  To do so, the Court must analyze applicable statutory schemes and/or common law principles from the fifty states to determine the breach of contract claims raised in this purported nationwide class action.[10]

---

[10] In multi-state class action litigation, the Court "applies the choice of law rules of the state where the case is filed," which is Georgia in this case. In re Checking Account Overdraft Litigation, 734 F. Supp. 2d 1294, 1296 (S.D. Fla.

15

"To support class certification, the implied duties must be substantially similar and uniformly ascertainable" among the states. Bishop, 255 F.R.D. at 624, 625. The Court finds that they are not, in view of the Court's obligation to examine the law of each state where the contracts were issued as well as the individual circumstances of each case to determine (1) whether an implied duty exists and (2) whether the duty, once implied, was breached for each insured. Such an examination raises too many "variations in state law [that] . . . swamp any common issues and defeat predominance. See Bishop, 255 F.R.D. at 624 ("[C]lass certification is impossible where the fifty states truly establish a large number of different legal standards governing a particular claim." (internal quotation marks omitted)).

The Court's review of applicable bodies of state law on credit insurance law reveal that substantial, material differences exist among the applicable state laws with regard to statutory requirements on notice provisions, the calculation of the refund amounts, and statutory minimum refunds, among other requirements. (See Doc. 144-5 at 48 to 51, 102 & accompanying notes; Doc. 144-7 at 24 to 77 (tables comparing relevant state statutory provisions on credit insurance policies)). Like the material variations among the provisions of Defendant's various contracts, see supra p. 13–14 & n.9, these state laws differ, for example, as to whether the lender, creditor, or insurer is obligated to refund the unearned premium; whether the debtor is required to provide notice of early payoff; and the formula for calculating the unearned premium.[11] (See Doc. 144-7 at 24 to 77).

---

2010); see also Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996) (citation omitted) (class action suit explaining that district court sitting in diversity "appl[ies] the choice of law rules of the forum state"). And under Georgia law, to interpret the various credit insurance policies, the Court must apply the laws of the state where the policies were purchased, unless there is material similarity among the laws. Bishop, 255 F.R.D. at 624 (citing Phillips Petroleum Co. v. Shutts, 797, 821–22 (1985)).

[11] Even if material differences in the statutory and common laws of the states do not exist, too many inquiries with respect to the existence, nature, and extent of Defendant's duty and breach in each individual case are raised by the variations of the contract provisions for the Court to certify the class, as discussed above. *See supra* pp. 13-15.

16

"The burden of showing uniformity or the existence of only a small number of applicable standards . . . among the laws of the . . . states rests squarely with the plaintiff[ ]." Klay, 382 F.3d at 1262; Sacred Heart, 601 F.3d at 1180 ("Undeniably, it falls to the plaintiff to demonstrate the homogeneity of different states' laws, or at least to show that any variation they contain is manageable."). Yet, Plaintiff has failed to meet this burden, as she has not shown that the variations among the state laws are immaterial or that the application of the varied laws to the subject claims would be manageable. In fact, Plaintiff has not even conducted, as she is required to do, a comparison of the laws on credit insurance policies of the various states in which members of the putative class purchased the credit life insurance policies to establish whether any material variations exist.[12] Sacred Heart, 601 F.3d at 1180 ("Notably, in cases implicating the law of all fifty states, 'the party seeking certification must . . . provide an *extensive analysis* of state law variations to reveal whether these pose insuperable obstacles.'" (citation omitted)).

Accordingly, for all of the foregoing reasons, variations among the contract provisions, as well as the variation among state contract laws on credit insurance policies, render this case unsuitable for class action treatment pursuant to Rule 23(b)(3). The Court now discusses certification pursuant to Rule 23(b)(2).

### c. **Certification Pursuant to Rule 23(b)(2)**

Rule 23(b)(2) permits class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). However, class certification pursuant to Rule 23(b)(2) suffers from the same

---

[12] At best, Plaintiff has only provided a list establishing that breach of contract claims in all fifty states require proof of the same elements of a valid contract, performance, breach, and damages. (Doc. 153-13). However, the Eleventh Circuit has ruled that uniform relevant law does not always mandate class certification, particularly where individualized issues of fact exist as to the occurrence of a breach or other element of the cause of action. See, e.g., Klay, 382 F.3d at 1263–65.

17

deficiencies from which class certification pursuant to Rule 23(b)(3) suffers. See supra pp. 10-15. "Defendant's actions must be gauged in light of the circumstances surrounding each putative class member's contract to determine whether an implied duty to discover the early payoffs existed . . . ." For this reason, as previously held in essentially identical cases, "class-wide relief is not appropriate [under Rule 23(b)(2)]." Bishop, 255 F.R.D. at 627 n.5; Adams, 2009 WL 383625, *12 n.5. In addition, Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages," which is the form of relief Plaintiff requests on behalf of herself and of the putative class members on her breach of contract and negligence claims. See Wal-Mart Stores v. Dukes, 131 S. Ct. 2541, 2557 (2011).

Pursuant to the foregoing, Defendant has sufficiently demonstrated, and Plaintiff has not sufficiently rebutted, that relevant, material differences among the insurance policy contracts and applicable state laws make Rule 23(b)(2) and (b)(3) class certification in this breach of contract action virtually impossible and clearly impractical. Thus, the Court need not reach whether the purported class meets the requirements of Rule 23(a) and **GRANTS** Defendant's Motion to Strike (Doc. 142).

### b. The Court's Jurisdiction

Having concluded that Plaintiff's counsel cannot certify the proposed class under the Class Action Fairness Act and Rule 23 of the Federal Rules of Civil Procedure, the Court finds it prudent to address the Court's subject matter jurisdiction over the remaining claims. At the time of removal, jurisdiction was predicated on the Class Action Fairness Act. (Doc. 1 at 2.) Left remaining after the non-certification are non-diverse parties and a variety of state-law claims. (Doc 1-2 at 7.) The amount in controversy on those claims does not exceed $75,000. There are no federal claims.

Nevertheless, the Court retains subject matter jurisdiction over the case. This is so because the Eleventh Circuit treats non-certification as a change in jurisdictional fact. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009). "[J]urisdictional facts are assessed at the time of removal; and post-removal events (including non-certification, de-certification, or severance) do not deprive federal courts of subject matter jurisdiction." *Id.* (citation omitted). *See also United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1092 (9th Cir. 2010); *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 761 (7th Cir. 2008); *Mills v. Foremost Ins. Co.*, No. 806-CV-986-EAK-AEP, 2011 WL 440163, at *4 (M.D. Fla. Jan. 31, 2011). Accordingly, the denial of certification for the proposed class does not oust the case from this Court.

## **CONCLUSION**

In sum, the Court agrees with Plaintiff that the subject credit insurance policy contracts uniformly provide insureds their right to a refund of the unearned premium upon early termination of the insurance coverage. However, the lack of uniformity among the contracts and state law as to what *triggers the duty* to make the refund precludes class certification in this case. The pleadings do not indicate—and no further discovery would prove—that Defendant owed the same duty to every putative class member to refund the unearned premium or that it breached each contract in the same way, if at all. Even if Plaintiff had the opportunity to prove that Defendant failed to refund the unearned premium upon Plaintiff's commencement of this suit, each individual class member's breach of contract claim is still not substantially advanced, as the class members would still have to prove whether and when Defendant's duty to refund the unearned premium arose and how Defendant breached that duty.[13]

---

[13] Accordingly, in contrast to Plaintiff's argument, the filing of the class action complaint does not necessarily satisfy any notice requirement as to all putative class members; rather, it is only sufficient notice for the individual who filed the suit. Bishop, 255 F.R.D. at 627 (citing J.M.I.C. Life Ins. Co. v. Toole, 634 S.E.2d at 123, 127 (Ga. App 2006)). And as noted above, even if the class action suit provides sufficient notice on behalf of all insureds, the mere filing of the putative class action does not eliminate the necessity of having to examine each individual claim

For these reasons, Defendant's Motion to Strike (Doc. 142) is **GRANTED**. Plaintiff's class allegations, including those for breach of contract; negligence; unjust enrichment; willful, wanton, and intentional misconduct; and bad faith and stubborn litigiousness,[14] are hereby **STRICKEN** from the pleadings. Further, the parties are hereby **ORDERED** to confer and report to the Court jointly, in writing within **twenty-one (21) days**, regarding the necessity of further discovery and how they believe the case should proceed.

All remaining pending motions—Plaintiff's Motion to Compel (Doc. 136), Plaintiff's Motion Regarding Sufficiency of Defendant's Answers (Doc. 137), Defendant's Motion for Rule 26 Relief (Doc. 145), Plaintiff's Motion for a Hearing (Doc. 157), Plaintiff's Motion for Extension of Time to File Dispositive Motions (Doc. 163)—are thus **DENIED WITHOUT PREJUDICE**.

**SO ORDERED**, this __28th__ day of September 2012.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,
UNITED STATES DISTRICT COURT**

---

to determine the extent of Defendant's duty to discover the termination of the loans and the extent of any corresponding breach.

[14] Despite the legal differences among the elements of these causes of action, these claims also lack predominance and are thus inappropriate for class treatment. Their resolution, like the resolution of breach of contract claims, requires extensive individualized inquiries into the cases of each class member.